**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Groupe SEB USA, Inc. and Meyer Corporation, U.S., <br><br> *Plaintiffs*, <br><br> v. <br><br> Caraway Home, Inc., <br><br> *Defendant*. | Case No. _____ <br><br> **COMPLAINT (with Jury Demand)** |

Plaintiffs Groupe SEB USA, Inc. ("SEB") and Meyer Corporation, U.S. ("Meyer" and, with SEB, "Plaintiffs"), by and through their undersigned counsel, for their complaint against Defendant Caraway Home, Inc. ("Caraway" or "Defendant"), allege as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is an action for false advertising, commercial disparagement, unjust enrichment, and trade libel arising from a pattern of false and deceptive advertising that Caraway has conducted for years. By its actions, Caraway has caused immense and continuing harm to consumers, to Plaintiffs, and to other cookware and bakeware companies in the marketplace. It is time for Caraway's long history of false and deceptive advertising to end and for Caraway to be held fully accountable.

2.      Plaintiffs are proud sellers of cookware and bakeware that is very familiar to, and popular with, consumers throughout the United States. Plaintiffs offer cookware and bakeware ranging from budget to premium product lines, and Plaintiffs' products are trusted by amateur home cooks and professional chefs alike.

1

3.     Because Plaintiffs serve cooks of all needs and preferences, Plaintiffs sell cookware and bakeware made with many different materials, including stainless steel, cast iron, aluminum, and copper. Much of Plaintiffs' cookware and bakeware also includes non-stick coating, generally made from a polymer commonly referred to as PTFE.

4.     PTFE is fundamentally safe and improves the quality and performance of many cookware and bakeware products. PTFE-coated products can be cleaned faster, make cooking and baking easier by avoiding food sticking to the pan or baking sheet, and are economical for consumers during a time when cost is of increasing importance. Using PTFE-coated cookware and bakeware, under normal conditions, has never been proven to pose any health risks or have any measurable risk of contaminating consumers' food, homes, or bodies.

5.     Rather than trying to compete fairly with Plaintiffs, Caraway has targeted advertising at individuals by falsely claiming its products are safer for consumers simply because they do not contain Per- and Polyfluoroalkyl Substances, or "PFAS." PFAS is not a single chemical; rather, it is an umbrella category encompassing thousands of different compounds—including PTFE—that share some common features but that otherwise vary dramatically. Because many PFAS tend to be durable in their environments, many advocates derogatorily refer to PFAS as "forever chemicals." But, again, while some types of PFAS can be harmful to humans when used under ordinary conditions, PTFE is not. Thus, Caraway plants, and preys on, consumer fears based on problems associated with *some* PFAS chemicals to deceive targeted consumers into believing they must purchase products that do not contain *any* chemical, even if it is completely safe, simply because it happens to be a type of PFAS.

6.     Fundamental to Caraway's marketing are false assertions that its products are allegedly superior to competitor brands because Caraway products are free from "PFAS," "PTFE,"

and "forever chemicals." Through Caraway's advertising, it frequently juxtaposes its products in contrast with purported "toxic cookware" that Caraway falsely claims will "fill the air in your home with harmful, toxic fumes and forever chemicals that you can ingest."

7.      Caraway raises the stakes in these advertisements, because it wants consumers to know "This isn't just about the taste and nutrition of your meals—**it's about the very air you breathe in your kitchen.**"

8.      Moreover, Caraway shamelessly relies on these false scare tactics to prompt consumers to buy Caraway's products, claiming that, if consumers buy competitors' products, they are opening themselves up to cancer, respiratory issues, and unspecified gut and kidney diseases. Caraway leans into this theme as its supposed origin story, with its founder claiming that he was sick with the "Teflon Flu" after overheating a "non-stick . . . PTFE (aka Teflon) coated pan." Falsely advertising that a product causes cancer is every bit as nefarious and unlawful as falsely advertising that a product cures cancer.

9.      Caraway's motives are as shameless as its advertising campaign. Caraway's proposed substitute "safe" pans are substantially more expensive than pans utilizing PTFE. Caraway's advertisements have had the intended impact. In the growingly competitive cookware and bakeware industry, Caraway's false and deceptive advertising has, in no small way, negatively impacted Plaintiffs' sales.

10.     Caraway is on notice of the falsity of its advertisements. Indeed, in a proceeding just last year, the National Advertising Division ("NAD") of the Better Business Bureau concluded that Caraway's advertisements were baseless. In particular, the NAD concluded that "PTFE is safe under typical use conditions," and the so-called evidence Caraway put forward to substantiate its claims was "a poor fit for the challenged claims" about the safety of "traditional" (PTFE-based)

non-stick cookware.[1] Similarly, the NAD recommended that Caraway stop telling its "Teflon Flu" origin story "in a context that would suggest that competitor cookware is toxic or is likely to cause Teflon Flu." August 2025 NAD Ruling at 14. And the NAD recommended that Caraway avoid making certain claims that "convey[] the message that competitor non-stick cookware is toxic," including "no forever chemicals here," and "make everyday meals healthier without harmful chemicals."

11.     Rather than contest the NAD's findings as it had a right to do, Caraway "agreed to comply with NAD's recommendation" that it take down advertisements that did not comply with NAD's findings.[2] In doing so, Caraway has all but admitted that many of its advertising claims are unsubstantiated.

12.     Despite its promise, Caraway still has not taken down many of the relevant advertisements. In fact, Plaintiffs have identified several *new* advertisements, first displayed in January 2026, that flagrantly violate the spirit and letter of the NAD proceedings and Caraway's obligations under state and federal law. In other words, despite there being no evidence to support Caraway's assertions, Caraway has continued with advertisements that have the explicit and implicit effect of telling the marketplace that Plaintiffs' products are toxic. Caraway has left Plaintiffs no choice but to bring this lawsuit to put a real and final end to false advertising that even Caraway has agreed should end.

13.     Plaintiffs are not the only parties harmed as a result of Caraway's false advertising. Based on its claims that PTFE-coated cooking vessels somehow cause cancer and are otherwise

---

[1] NAD Case #7444, decided August 4, 2025, at 10 and 7, attached hereto as Exhibit A (hereinafter, "August 2025 NAD Ruling").

[2] NAD Case #7444C, decided December 10, 2025, at 3, attached hereto as Exhibit B (hereinafter, "December 2025 NAD Compliance Proceeding").

toxic to users, Caraway has been able to charge higher prices for more expensive ceramic-coated cookware and bakeware—harming consumers and other PTFE product manufacturers, as well as Plaintiffs. Caraway's decision to continue running false advertisements, despite the NAD's decision against Caraway, has compounded the enormous financial harms that Plaintiffs have suffered.

14.     Caraway's behavior is unlawful and just plain wrong. Through this legal action, Plaintiff seeks to halt Caraway's pattern of false advertising and consumer deception.

## JURISDICTION AND VENUE

15.     This is an action for false advertising under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. ("Lanham Act"), New York's statutory laws prohibiting unfair, deceptive, or abusive acts and practices and false advertising, and common law unfair competition and trade libel.

16.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 2201.

17.     This Court also has supplemental jurisdiction over the related New York state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because they form part of the same case or controversy as the federal claim under the Lanham Act.

18.     Venue is proper in this District under §§ 1391(b)(1), (b)(2), and (c) because a substantial part of the events or omissions giving rise to this action have occurred and/or will occur within this District, and Caraway resides in this District.

## PARTIES

19.     SEB is a New Jersey corporation with its principal place of business located in New Jersey. SEB sells small appliances and cookware and bakeware products under many different brand names, and it is the largest cookware seller in the United States market.

20.     Meyer is a Delaware corporation with its principal place of business located in California. Meyer and its affiliates collectively comprise the second largest cookware and bakeware manufacturer and seller in the U.S. market, and Meyer distributes its products throughout the United States and the world under various brands.

21.     Caraway is a privately held Delaware corporation with its principal place of business located in New York. Caraway was founded in 2019 and primarily sells cookware and bakeware, specifically ceramic-coated, stainless steel, and enameled cast iron.

### DEFENDANT'S FALSE, MISLEADING, AND DECEPTIVE ADVERTISING ACTIVITIES

**A.**     ***SEB and Meyer Sell a Wide Variety of Safe, Popular Cookware and Bakeware Products to All Types of Consumers***

22.     Consumers in the United States are very familiar with the brands of cookware and bakeware proudly sold by SEB and Meyer. These brands and their respective offerings range from budget to premium product lines and are trusted by amateur home cooks and professional chefs alike.

23.     The most well-known brands sold by SEB include All-Clad and T-Fal. T-Fal is popular for offering affordable, entry-level cookware and bakeware that nevertheless focus on reliability and quality across the country, while All-Clad is a more "premium" brand for consumers who are able and willing to pay a higher price for a higher-performing, more durable product.

24.     Meyer's brands include Anolon, Circulon, Farberware, and Rachael Ray, as well as an eponymous brand that also bears the name Meyer.

25.     Rachael Ray, Farberware, and Meyer's house brand are all affordable, budget-friendly brands that nevertheless focus on reliability, quality, and style. Circulon is a classic mid-range brand, focusing on durability and trustworthiness. And Anolon offers high-performance, luxury cookware and bakeware for consumers willing to pay a little more.

26.    SEB and Meyer brands serve cooks of all needs and preferences. Across their product spectrums, Plaintiffs sell cookware and bakeware made from stainless steel, cast iron, aluminum, and copper.

27.    Most cookware, including many of Plaintiffs' products, also features a coating on the cooking surface that prevents food from sticking and makes cleanup easier. Some of Plaintiffs' products, like those made of stainless steel or cast iron, can be sold and used without a non-stick coating. A substantial percentage of bakeware, including many of Plaintiffs' products, features non-stick coating as well.

28.    When needed, non-stick coatings are made with many different materials. By far the most common and effective non-stick coatings are made primarily from PTFE. PTFE is combined with binders and resins to ensure long-lasting durability before being applied to the cookware or bakeware substrate. Other terms for PTFE-based coatings are "traditional non-stick" or simply "non-stick," a testament to how successful, widespread, and trusted PTFE-based coatings are.

29.    So much cookware and bakeware across the United States is coated with PTFE for simple reasons: it is safe, economical, and remarkably effective. Uncoated cookware, like the kind made from stainless steel or cast iron, can be difficult for inexperienced cooks to use without food getting stuck to the pan. And, while other coatings like ceramic and enamel can be effective (though less effective than PTFE), they are significantly more expensive, do not retain their non-stick properties as long as PTFE-based cookware and bakeware, and make those products much more expensive for consumers.

30.    By contrast, PTFE-coated products can be cleaned faster and with less effort than any other commonly used material. PTFE is slick, and even the most amateur of home chefs can

prepare their meals of choice without their food sticking to the pan. And, despite Defendant's falsehoods to the contrary, PTFE is a fundamentally safe chemical.

31.    In contrast to Caraway's misrepresentations, the science on PTFE is clear. While some PFAS can be used in making some non-stick cookware coatings, they are joined together in large molecules (polymerized) and are tightly bound to the cookware, so very little is capable of getting into food, according to the United States Food and Drug Administration ("FDA").[3] Even if microscopic quantities of PTFE are accidentally ingested (for instance, by using a heavily damaged pan), PTFE ingestion has not been shown to cause health issues. PTFE, unlike non-polymeric PFAS molecules, has a very high molecular weight, which prevents the polymer from crossing cellular membranes, making gastrointestinal absorption effectively impossible and preventing any potential for toxicity in normal use.

32.    It is true that, if heated to extreme temperatures, PTFE can degrade into other molecules, some of which can contribute to temporary nausea when inhaled. But ordinary use of PTFE-coated cookware and bakeware simply cannot release these fumes into the air or cause illness. PTFE degradation at any level is a theoretical impossibility below 500° Fahrenheit and does not become scientifically measurable until heated to over 680° Fahrenheit, a temperature that would almost never be reached intentionally on any kind of stovetop cookware, cannot be reached at all in a standard residential oven, and is well above the recommended temperature limit even for Caraway's own products. There is no cooking oil in existence that can reach 680° Fahrenheit, and any pan-cooked food or baked goods prepared at such a temperature would be rendered inedible. Moreover, other than broiling (which non-stick manufacturers advise against), most

---

[3] Questions and Answers on PFAS in Food, U.S. Food and Drug Admin., https://www.fda.gov/food/process-contaminants-food/questions-and-answers-pfas-food (last updated Dec. 19, 2025).

forms of cooking occur at temperatures of 450°F or below.[4] Health symptoms only emerge after several hours of sustained exposure, meaning that users would have to continuously ignore the obvious warning signs (smoke, odor, ruined food, etc.) while continuing to overheat their PTFE-based cookware in order for any harm to materialize.

33.     Significantly, no federal regulator has ever concluded that cooking with PTFE-coated cookware or bakeware poses health risks. In fact, the FDA authorizes the use of PTFE in coating, based on data demonstrating negligible migration.[5] Likewise, the Consumer Product Safety Commission has rejected calls for warning labels on PTFE-based non-stick cookware and bakeware.

34.     Using PTFE-coated cookware and bakeware under ordinary conditions has never been shown to pose any health risks and has no measurable risk of contaminating consumers' food, homes, or bodies.

35.     Authoritative reviews conclude that fluoropolymers, such as PTFE, are chemically inert, practically insoluble, non-bioavailable, and non-toxic and that they meet internationally recognized criteria for "polymers of low concern," distinguishing them from non-polymeric PFAS with very different hazard profiles. These conclusions are grounded in extensive physical-chemical research, toxicology, and human clinical data, including the six decades-long, safe history of PTFE in cookware and bakeware.

### B.     *Since Its Inception, Caraway Has Lied About PTFE*

36.     Instead of competing with Plaintiffs' PTFE-coated products on an even playing

---

[4] August 2025 NAD Ruling at 8.

[5] Authorized Uses of PFAS in Food Contact Applications, U.S. Food and Drug Admin. https://www.fda.gov/food/process-contaminants-food/authorized-uses-pfas-food-contact-applications (last updated Jan. 3, 2025).

field, Caraway itself was founded on a false premise: that PTFE-coated cookware makes consumers sick. This original sin has clouded Caraway's marketing since Caraway started doing business in 2019.

37.    There is no evidence that PTFE coatings break down, degrade, or release under ordinary use, and there is no evidence they cause any negative health consequences. However, Caraway's marketing strategy is centered around smearing PTFE as a serious risk to consumer health.

38.    Caraway's own "Origin Story" on its website proudly claims that the company spawned a "Non-Toxic Kitchen Revolution" in order to combat "Teflon Flu" caused by a "non-stick PTFE (aka Teflon) coated pan." "Teflon Flu" is a marketing buzzword that refers to temporary nausea symptoms that simply do not occur under ordinary use of traditional non-stick cookware.

## The Origin Story

"A few years back I accidentally overheated a non-stick PTFE (aka Teflon®) coated pan and got sick with Teflon® Flu (let me tell you…not fun). After looking into the problem, I found that it only took **2.5 minutes for Teflon® coated pans to heat to 500°F and begin releasing toxic chemicals** into the air.

With most of the non-stick kitchenware market at the time featuring PTFE, I knew there had to be an alternative."
– Jordan Nathan, Founder

As of February 13, 2026, this advertisement was still publicly available on Caraway's website.

39.    Beginning with that founding tale, Caraway developed a clear message based on a series of objectively false statements about PTFE-coated cookware. Caraway tells consumers that traditional non-stick cookware will emit fumes into the air and release similar chemicals into the food directly, even under ordinary use. Caraway's advertising claims that these fumes and chemicals are toxic, harmful, and dangerous.

40.    Caraway broadcasts these false claims broadly and repeatedly. They are

prominently plastered on the company's website. They are spread far and wide on social media as paid advertising. They are spread through text-based posts, images, and video commercials. They are emailed directly to consumers.

41.    These ads have saturated the market, making it a near certainty that anyone searching for safe, reliable cookware or bakeware will come across Caraway's message and be exposed to false and disparaging messages about the safety of any non-stick cookware or bakeware that does not come from Caraway.

C.    ***Caraway's Ads Falsely Claim That Their Competitors' Traditional Non-Stick Cookware and Bakeware Release Toxic Chemicals Into the Air and Into Food, Triggering Multiple Dangerous Health Conditions***

42.    Caraway's central (but false and misleading) claim is that, when heated, traditional non-stick cookware and bakeware will degrade, seeping PFAS (including PTFE) into food and air. These advertisements are carefully calibrated to scare consumers into believing that the use of traditional (PTFE-based) non-stick cookware and bakeware will expose consumers and their families to harmful substances and make them sick.

43.    Many of Caraway's ads directly compare its products with images of traditional PTFE-coated cookware, like the ones sold by Plaintiffs. Caraway falsely labels its competitors' PTFE-coated products as "Toxic Cookware" that will "fill the air in your home with harmful, toxic fumes and forever chemicals that you ingest, such as PFAS and PTFE." For example, Caraway has published this advertisement on various social media platforms, such as Facebook and Instagram, where it was available as recently as January 13, 2026:



44.     Other Caraway advertisements claim, explicitly, that PTFE-coated cookware, when overheated to an unspecified degree, will "release toxic fumes that can be harmful to your family's health. . . . the very air you breathe in your kitchen." For example, as recently as February 13, 2026, Caraway's website states the following:

## 70% of non-stick cookware contains PTFE or Teflon.

When overheated, these chemicals release toxic fumes that can be harmful to your family's health. This isn't just about the taste and nutrition of your meals—it's about the very air you breathe in your kitchen.

45.     Indeed, Caraway's website hammers into consumers the idea that traditional non-stick cookware is harmful. For example, Caraway's website explicitly asserts that "[t]raditional non-stick pans" are dangerous because they "often use chemicals like PTFE (Teflon) and PFOA," which "release toxic fumes that can be harmful to pets and humans":



46.     Caraway's website directly promotes its own products as allegedly superior because its cookware does not have PTFE coatings and that, therefore, Caraway consumers can "prioritize health with every bite" and have "peace of mind on a plate":



47.     Caraway's website similarly claims that its bakeware is superior because its cookware is not made with PTFE and therefore has a "NON-TOXIC COATING":

**Features & Benefits** —

- NON-TOXIC COATING: Made without PTFE, PFOA, PFAS, lead, and cadmium.
- EFFORTLESS NON-STICK: Food slides off for fast, frustration-free cleanup.
- EVEN HEATING: Aluminized steel core delivers rapid, even heating and durability.
- OVEN SAFE UP TO 550°F: Designed for every recipe, sweet or savory.

48.     Caraway's advertisements also tie these general statements to specific consumer health concerns. For example, Caraway posted a social media video advertisement that stated

"Caraway pans . . . are non-toxic, and as someone with asthma, that's very important to me, so that my kitchen and my air stay [as] clean as possible."

49.    Caraway has also distributed these false and misleading statements through email. These advertisements improperly suggest that traditional non-stick cookware contains "toxic chemicals" that will "leach into your food." For instance, Caraway distributed this advertisement to consumers via email on October 1, 2025:



50.    Caraway's bakeware-related email marketing is no less deceptive. Caraway

promotes its bakeware sets as superior because baked goods "taste sweeter without forever chemicals," directly claiming that chemicals from traditional non-stick bakeware will contaminate your food. For instance, Caraway distributed this advertisement to consumers via email on September 16, 2025:



51.    Similarly, in a video advertisement posted on November 6, 2025, which was still available as of February 13, 2026, Caraway claimed that "most non-stick cookware contains harmful chemicals, like Teflon, which can actually release into the air and your food, especially

when exposed to high heat[.]"[6]

52.    Caraway's false and misleading messages explicitly connect the use of traditional non-stick cookware and bakeware to health risks. Any reasonable consumer encountering these messages will come away with the impression that, by simply cooking or baking with traditional non-stick products, particularly PTFE-coated ones, they are exposing themselves and their families to cancer, respiratory issues, and unspecified gut and kidney diseases.

53.    Some of Caraway's health claims are subtle, while others are more explicit. But all of them are reasonably interpreted to suggest that customers should buy Caraway products because traditional non-stick cooking vessels are toxic and will make customers sick.

54.    Caraway constantly promotes its own products as "non-toxic," "PFAS-free," "safe," and "healthy." While Caraway's products are probably safe, this nevertheless sends a clear (but false) message that consumers who do *not* switch to Caraway's products will be exposed to chemicals that are toxic, unsafe, and unhealthy.

55.    For example, one social media ad from Caraway promotes its "non-toxic cookware—because your health is worth the investment" and describes itself as "Cookware that puts your health first." Unmistakably, this ad creates the impression that consumers who care about their health should pay a premium to buy Caraway pans because they will avoid the "toxic" products sold by Caraway's competitors, like Plaintiffs. Caraway has published this advertisement on various social media platforms, such as Facebook and Instagram, where it was available as recently as January 13, 2026:

---

[6] Caraway, Facebook (Nov. 6, 2025, 9:52 p.m.),
https://www.facebook.com/carawayhome/videos/sitewide-savings-up-to-20-off/2078383926281534/.



56.    In another typical Facebook ad, Caraway claims that users should trust Caraway, and only Caraway, to keep "you and your family safe from forever chemicals . . . heavy metals, PFAS, PTFE, and every other harmful acronym." This was available on various social media platforms as recently as January 13, 2026:



57. This message creates a clear comparison between Caraway and its competitors: Caraway keeps you safe, while traditional non-stick cookware is, by implication, unsafe, due to "heavy metals, PFAS, PTFE, and every other harmful acronym." Any consumer encountering this message would come away believing PTFE is "harmful," and it must be avoided in order to be "safe from forever chemicals."

58. Caraway's email-based marketing also makes the claim that Caraway's "cookware makes meals safer, cleaner, and worry-free" because it is "[n]on-toxic and PTFE-free." By contrast, according to Caraway, cookware that contains PTFE-based coating *is* toxic, is not safe, and is not clean. For example, Caraway distributed this advertisement to consumers via email on September 13, 2025:



59. On Caraway's website, the claims get even more explicit, specific, and misleading. Caraway's website states, in no uncertain terms, that, after just "150 seconds," a "traditional non-stick pan" can "release dangerous chemicals" that "enter our body and take decades to leave,

potentially causing health risks like cancer or respiratory issues." Caraway attempts to back up these claims by adding links to various articles and studies, but none of its sources come anywhere near to supporting the pervasive health risks that Caraway suggests. Any consumer coming across the webpage would reasonably conclude that scientific research has confirmed that Teflon will give you cancer and respiratory issues.



**What's hiding in your kitchen:**

PTFE (aka Teflon®) & microplastics enter your home-cooked meals from the tools you use to prepare your food.

**150 Seconds**

How long it takes for a traditional non-stick pan to release dangerous chemicals when used on high heat.

2019 GOOD HOUSEKEEPING INSTITUTE STUDY

**Forever Chemicals**

Chemicals that enter our body and take decades to leave, potentially causing health risks like cancer or respiratory issues.

GUARDIAN | AMERICAN CANCER SOCIETY

60.    This webpage even suggests that the American Cancer Society backs up Caraway's claim that using traditional non-stick pans causes cancer. But the "American Cancer Society" hyperlink on Caraway's website does not link to an American Cancer Society webpage at all. It takes users to a press release from the American Academy of Pediatrics, not the American Cancer Society. The press release nowhere even mentions the American Cancer Society, and it nowhere suggests that PTFE-coated pans cause cancer. It instead merely reports on a recommendation to test children for exposure to PFAS and provides strategies for families looking to reduce PFAS exposure.

61.    Contrary to this claim in Caraway's own marketing, the American Cancer Society

states that there are no proven risks to humans using PTFE cookware.[7] Rather, the American Cancer Society considers the use of fluoropolymer-coated cookware safe. And the International Agency for Research on Cancer has repeatedly investigated the carcinogenicity and toxicity of PTFE, finding it has no toxicological impact and cannot be classified according to its carcinogenicity.

62.    On information and belief, Caraway has run other social media ads for years suggesting that studies show PTFE is harmful to gut health and kidney function. Most of these ads have since been discontinued, but the damage to the reputation of traditional non-stick cookware and bakeware companies remains.

### D.    *Caraway Knows Its Ads Are False*

63.    Caraway is not simply mistaken about the claims it is making. Caraway is well aware that its entire marketing campaign is focused on pushing false and/or misleading claims about traditional non-stick cookware in an effort to make its own, more expensive product somehow seem superior. Caraway knows that PTFE coatings do not degrade and release chemicals into the air and food and do not cause any health issues under ordinary use.

64.    Caraway's knowledge of the falsity of its advertising is most clear in the wake of the August 2025 NAD Ruling. But Caraway has been on notice for its entire existence that its ads are false.

65.    Caraway is no doubt aware that the overwhelming weight of scientific authority is against its claims. Caraway prominently claims on its website that its founder, Jordan Nathan, undertook "two years of rigorous research and testing" after his alleged Teflon flu experience.

---

[7] PFOA, PFOS, and Related PFAS Chemicals, Am. Cancer Soc'y, https://www.cancer.org/cancer/risk-prevention/chemicals/teflon-and-perfluorooctanoic-acid-pfoa.html (last updated May 31, 2024).

During those two years, Mr. Nathan surely would have come across the fact that PTFE is non-toxic, inert, non-bioavailable, and does not release into the air or food under normal conditions.

66.     Even if Mr. Nathan did not properly review the scientific literature on PTFE, there were plenty of other opportunities for Caraway to learn that its ads were dangerously false during these "two years of rigorous research." Years before Caraway began its campaign of scare tactics and misinformation, the NAD decided a dispute on extremely similar grounds as the August 2025 NAD Ruling. In 2012, the NAD reviewed a complaint against a different seller of non-PTFE-coated non-stick cookware, GreenPan, for its misleading ads about PTFE-coated cookware.[8]

67.     In the October 2012 NAD Ruling, GreenPan had implicitly claimed that its pans were "healthier, safer and better-performing than other non-stick cookware," that its "products are healthier, safer and better for the environment than all PTFE products," that "[a]ll PTFE non-stick coatings are unsafe," and that "[a]ll PTFE non-stick coatings are made with PFOA and/or are unsafe." Just like Caraway claims today, GreenPan had suggested that PTFE decomposed when heated, leading to myriad health issues caused by direct exposure.

68.     The NAD undertook a review of the available scientific evidence and found that GreenPan's ads were unfounded. The NAD made clear that overheating PTFE to the kind of temperatures that could cause decomposition was highly unlikely to ever occur through typical household use.

69.     It is inconceivable that Caraway was unaware of the October 2012 NAD Ruling when it began its campaign of smearing the traditional non-stick cookware and bakeware industry. Caraway's marketing is slick, professional, and sophisticated. It is prepared and distributed by

---

[8] NAD Case #5519, decided October 31, 2012, attached hereto as Exhibit C (hereinafter, "October 2012 NAD Ruling").

professionals who are or should be familiar with the NAD and its rulings. A directly on-point ruling by the NAD, reviewing nearly identical claims by a company that makes a nearly identical product, surely would have caught Caraway's attention.

70.    Even if Caraway had successfully kept its head in the sand about its false and misleading ads, it was made fully aware in August 2025. In the August 2025 NAD Ruling, the NAD concluded that Caraway "did not meet its burden of providing a reasonable basis for claims that competing non-stick cookware is toxic" and recommended discontinuing claims like "Most traditional cookware is made with forever chemicals" and "Studies show PFAS are harmful to your gut health and kidney function" when used to disparage competitors.

71.    And, while Caraway has today ceased some of the ads referenced in the NAD complaint, it certainly has not stopped its campaign of misinformation, as evidenced by the advertisements shown in this Complaint. Many of these messages are still being perpetuated through advertisements available as of the date of filing. And Caraway kept even more misleading and disparaging ads in circulation for months after the August 2025 NAD Ruling, and even after the December 2025 NAD Compliance Proceeding, in order to capitalize on the holiday rush.

72.    For instance, in the August 2025 NAD Ruling, the NAD determined that Caraway failed to substantiate its claim that consumers would be exposed to certain fumes during ordinary use of traditional non-stick cookware. In its decision, the NAD further explained that, even if cookware temporarily exceeds manufacturers' recommended temperatures, such as during preheating, while searing, or while overheating, the formation of toxic gas is not an instantaneous process but, rather, takes four to five hours to develop, and consumers using cookware typically do not use their pans this way.

73.    However, Caraway continues to make claims in advertisements and on its website

that claim the use of traditional non-stick cookware and bakeware can expose consumers to harmful chemicals in their food and in the air.

E.    ***Caraway's Deceptive Advertising Scheme Has Irreparably Harmed SEB and Meyer***

74.    Caraway's advertising campaign has been remarkably effective. After just a few short years in the market, Caraway has gone from an unknown startup to a major competitor in the cookware and bakeware industry. But Caraway's success is built on lies and false scare tactics. Those false and misleading claims and comparisons have embedded themselves in the minds of consumers, convincing them that the only way to ensure their safety is to buy non-PTFE cookware and bakeware from Caraway.

75.    Caraway's advertising scheme has reached millions of consumers across the country. For those convinced by Caraway's deceptive ads, PTFE-coated kitchen appliances are irreparably smeared as a toxic, carcinogenic product that have no business in the home.

76.    Caraway has profited immensely from its false and misleading advertising. Caraway's rapid growth can only be attributed to its strategy of scaring customers into buying its products.

77.    At the same time, SEB and Meyer have suffered. Since Caraway began its campaign of falsely depicting traditional non-stick cookware and bakeware as dangerous, Plaintiffs' PTFE-coated products have seen their sales plummet.

78.    On top of the decline in sales, Plaintiffs have been forced to engage in counter-measures to protect their businesses from Caraway's falsehoods. Plaintiffs have spent a substantial amount on advertising to combat Caraway's false advertising and assure consumers of the safety of PTFE-coated cookware and bakeware, promoting accurate and independent scientific research on the safety of PTFE, and investing in efforts through the NAD to hold Caraway accountable and

recapture lost market share.

79.    Even if Caraway were to pull down every false and misleading statement today, Plaintiffs' injuries will continue indefinitely. Consumers have already been poisoned by Caraway's advertising scheme, and a sizable portion of the public has been permanently convinced of the fictitious dangers of PTFE-coated cookware and bakeware.

<u>**COUNT I**</u>
**(False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a))**

80.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the preceding paragraphs of this Complaint.

81.    Caraway, on or in connection with goods used in interstate commerce, has made and continues to make false and/or misleading statements of fact and false and/or misleading representations of fact as to the nature, characteristics, and/or qualities of its goods. Caraway has also made false and/or misleading statements of fact and representations of fact as to the goods of its competitors, including SEB and Meyer.

82.    Caraway's false and/or misleading statements of fact and/or misleading representations of fact were made, and continue to be made, in commercial advertising in a manner material to the public's decision to purchase Caraway's products rather than those of competitors, including SEB and Meyer.

83.    Such acts by Caraway constitute false and/or misleading statements, descriptions, and representations of fact in commercial advertising and are a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.    As a proximate result of Caraway's willful conduct, SEB and Meyer have suffered irreparable harm, including irreparable harm to their reputations and goodwill and the reputations of their products, for which they have no adequate remedy at law, and SEB and Meyer will

continue to suffer irreparable injury unless and until Caraway ceases making false and/or misleading statements in connection with, and in advertising, its products.

85.    Unless Caraway's activities cease, Caraway will unjustly profit from sales of its products that are based on consumer reliance on the false and/or misleading statements that it has made and is making about its competitors' products. SEB and Meyer have suffered and will continue to suffer economic harms, including losses in sales as proximately caused by Caraway's deceptive actions.

86.    SEB and Meyer have suffered and will continue to suffer economic harms and injuries to their commercial interests, including losses in sales, which have been and are being proximately caused by Caraway's actions and misrepresentations.

87.    Pursuant to 15 U.S.C. § 1117, SEB and Meyer are entitled to actual damages to be determined at trial, to have such damages trebled, to disgorgement of Caraway's profits, and to be reimbursed for the costs of this action and its related attorneys' fees.

## COUNT II
### (Commercial Disparagement Under the Lanham Act, 15 U.S.C. § 1125(a))

88.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the preceding paragraphs of this Complaint.

89.    Caraway, on or in connection with goods used in interstate commerce, made and continues to make false comparisons of its products as compared to those of competitors, including SEB and Meyer.

90.    Caraway's false statements of fact and false comparisons were made and continue to be made in commercial advertising in a manner material to the public's decision to purchase Caraway's products rather than those of competitors, including SEB and Meyer.

91.    Such acts by Caraway constitute false statements, descriptions, and representations

26

of fact in commercial advertising and are a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.    As a proximate result of Caraway's willful conduct, SEB and Meyer have suffered irreparable harm, including irreparable harm to their reputations and goodwill and the reputations of their products, for which they have no adequate remedy at law, and SEB and Meyer will continue to suffer irreparable injury unless and until Caraway ceases making false statements and comparisons in connection with, and in advertising, its products pursuant to 15 U.S.C. § 1116.

93.    Unless Caraway's activities cease, Caraway will unjustly profit from sales of its products that are based on consumer reliance on the false and deceptive comparisons that it has made and is making about its products as compared to those of its competitors, including SEB and Meyer.

94.    SEB and Meyer have suffered and will continue to suffer economic harms, including losses in sales as proximately caused by Caraway's actions and misrepresentations.

95.    Pursuant to 15 U.S.C. § 1117, SEB and Meyer are entitled to actual damages to be determined at trial, to have such damages trebled, to disgorgement of Caraway's profits, and to be reimbursed for the costs of this action and its related attorneys' fees.

## <u>COUNT III</u>
### (Unfair, Deceptive, or Abusive Acts, N.Y. Gen. Bus. Law § 349)

96.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the preceding paragraphs of this Complaint.

97.    Caraway has made unlawful statements in commercial advertising and has promoted that Plaintiffs' products are toxic and harmful to consumers. Through Caraway's unlawful advertisements, Caraway has engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

98.    These statements are materially misleading and likely to influence purchasing decisions, including, but not limited to, the fact that they tell consumers that using Plaintiffs' cookware and bakeware will make them sick and release "toxic" fumes into their homes.

99.    Caraway's aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade, or commerce. Such conduct has deceived and materially misled, or has a tendency to deceive and materially mislead, the consuming public and has injured, and will continue to injure, Plaintiffs' businesses, reputation, and goodwill in violation of N.Y. Gen. Bus. Law § 349.

100.    As a result, Plaintiffs have suffered, and will continue to suffer, damages in an amount to be determined. Caraway's actions described above are deliberate and willful and constitute a knowing violation of Plaintiffs' rights. Even after the NAD found Caraway's advertisements were noncompliant, Caraway has persisted with its advertisements.

101.    New York law provides a private right of action to "any person who has been injured by reason of any violation of this section" and entitles Plaintiffs to seek injunctive relief and actual damages. N.Y. Gen. Bus. Law § 349(h). Plaintiffs are further entitled to recover an increased award of actual damages due to the willful and knowing nature of Caraway's conduct, attorneys' fees, costs incurred in this action, and civil penalties as allowable by law. *Id*.

102.    Plaintiffs have also suffered irreparable injury as a result of Caraway's deceptive trade practices, and, unless Caraway's deceptive trade practices are enjoined by the Court, Caraway will persist in its advertisements, which will continue to cause Plaintiffs irreparable injury and reputational damage.

103.    As a direct and proximate result of said conduct, Plaintiffs are entitled to general, compensatory, actual, special, and punitive damages; preliminary and permanent injunctive relief;

and attorneys' fees, costs, and pre-judgment interest.

## COUNT IV
### (False Advertising, N.Y. Gen. Bus. Law § 350)

104.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the preceding paragraphs of this Complaint.

105.    Caraway has made unlawful statements in commercial advertising and has promoted that Plaintiffs' products are toxic and harmful to consumers. Through Caraway's unlawful advertisements, Caraway has engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York and to the public at large.

106.    These statements are materially misleading and likely to influence purchasing decisions, including, but not limited to, the fact that they tell consumers that using Plaintiffs' cookware and bakeware will make them sick and release "toxic" fumes into their homes.

107.    Consumers do, in fact, rely on these statements when making their purchasing decisions. In fact, the testimonials from consumers that Caraway uses in its advertisements confirm this reliance.

108.    Caraway's aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of false advertising in the conduct of business, trade, or commerce. Such conduct has deceived and materially misled, or has a tendency to deceive and materially mislead, the consuming public and has injured, and will continue to injure, Plaintiffs' businesses, reputation, and goodwill in violation of N.Y. Gen. Bus. Law § 350.

109.    As a result, Plaintiffs have suffered (and will continue to suffer) damages in an amount to be determined. Caraway's actions described above are deliberate and willful and constitute a knowing violation of Plaintiffs' rights. Even after the NAD found Caraway's

advertisements were noncompliant, Caraway has persisted with its advertisements. Plaintiffs are entitled to recover an increased award of actual damages due to the willful and knowing nature of Caraway's conduct, attorneys' fees, costs incurred in this action, and civil penalties as allowable by law.

110.    Plaintiffs have also suffered irreparable injury as a result of Caraway's deceptive trade practices for which Plaintiffs have no adequate remedy at law, and, unless Caraway's deceptive trade practices are enjoined by the Court, Caraway will persist in its advertisements, which will continue to cause Plaintiffs irreparable injury and reputational damage.

111.    Caraway's aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade, or commerce, and has injured and will continue to injure Plaintiffs' businesses, reputation, and goodwill, in violation of N.Y. Gen. Bus. Law § 350.

112.    As a direct and proximate result of said conduct, Plaintiffs are entitled to general, compensatory, actual, special, and punitive damages; preliminary and permanent injunctive relief; and attorneys' fees, costs, and pre-judgment interest.

## COUNT V
### (Common Law Unfair Competition)

113.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the preceding paragraphs of this Complaint.

114.    Caraway engaged in, and continues to engage in, unfair competition by making false, misleading, and deceptive statements about Plaintiffs' products while disparaging the products of competitors. Caraway's misleading and deceptive statements have caused, and continue to cause, consumers to purchase its products over the products of competitors, including Plaintiffs.

115.    Caraway acted and continues to act in bad faith in making claims about its products

that it knew and knows to be materially false and deceptive.

116.    Caraway's acts constitute false advertising and unfair competition under all other applicable jurisdictions.

## COUNT VI
### (Common Law Trade Libel)

117.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the preceding paragraphs of this Complaint.

118.    Since 2019, Caraway, directly and/or through its agents, has published, and continues to publish, false and defamatory statements about the PTFE-coated cookware and bakeware sold by Plaintiffs to third persons, as detailed above.

119.    These false and defamatory statements were made by Caraway with the intent to disparage the quality and safety of the PTFE-coated cookware and bakeware products sold by Plaintiffs. These false and defamatory statements play a material and substantial role in inducing customers not to purchase products sold by Plaintiffs.

120.    Caraway, directly and/or through its agents, published its false and defamatory statements with actual knowledge of their falsity or with serious doubts as to their truth, so as to have acted with actual or implied malice. Caraway intended for dissemination of its statements to result in harm to the interests of Plaintiffs and either recognized or should have recognized that the statements were likely to result in such harm.

121.    The false and defamatory statements alleged herein caused both general and special damages to Plaintiffs.

## COUNT VII
### (Declaratory Judgment)

122.    Plaintiffs repeat and incorporate herein each and every allegation set forth in the

preceding paragraphs of this Complaint.

123.    An actual and immediate controversy exists between the parties hereto in connection with Caraway's continued publication of prejudicial advertisements.

124.    Plaintiffs seek a declaration by this Court that this action constitutes an "exceptional case" due to the willful nature of Caraway's conduct and the lack of candor that has greatly prolonged the duration of the false and misleading advertisements' influence on the public.

125.    A declaration by this Court as outlined above would resolve all or a complete part of the controversy between the parties as to this count, determine the parties' rights and responsibilities, and be in the interest of justice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Caraway as follows:

1. Finding that, by the acts complained of above, Caraway has engaged in false advertising and commercial disparagement in violation of 15 U.S.C. § 1125(a);

2. Finding that, by the acts complained of above, Caraway has engaged in unfair, deceptive, or abusive acts and practices and false advertising under state law and unfair competition and trade libel under common law;

3. Finding that the acts complained of above were willful;

4. Enjoining Caraway and its agents, servants, employees, officers, and all persons in active concern and participation with Caraway from making false and/or misleading statements about SEB and Meyer PTFE-based non-stick cookware and bakeware products, including statements that are likely to lead consumers to believe that SEB's and Meyer's cookware and bakeware products release harmful toxins and chemicals into the air and food when heated;

5. Enjoining Caraway and its agents, servants, employees, officers, and all persons in active concern and participation with Caraway from making false and/or misleading statements about Caraway's products as compared to those of competitors, including that its cookware and bakeware products are safer and lead to superior health outcomes;

6. Requiring Caraway to engage in effective comprehensive corrective advertising, including advertising that informs consumers that SEB and Meyer non-stick cookware and bakeware products do not cause the release of harmful toxins and chemicals into the air and food when used;

7. Requiring Caraway to destroy all materials displaying false advertisements, including that traditional non-stick cookware and bakeware products are unsafe and harmful as compared to Caraway products (*e.g.*, the "toxic cookware" advertisements);

8. Declaring that this is an "exceptional case" due to the willful nature of Caraway's conduct and the lack of candor that has greatly prolonged the duration of the false and misleading advertisements' influence on the public;

9. Ordering Caraway to account to SEB and Meyer for all gains, profits, savings, and advantages obtained by Caraway as a result of its false advertising and unfair competition and to disgorge to SEB and Meyer restitution in the amount of such gains, profits, savings, and advantages;

10. Ordering Caraway to pay SEB and Meyer

  a. Treble actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

  b. Caraway's profits and cost savings from the sale of its products resulting from its false advertising and other unlawful practices;

    c.  Damages for corrective advertising to remedy Caraway's false advertising;

    d.  Pre-judgment and post-judgment interest; and

    e.  All costs of this litigation; and

11. Awarding SEB and Meyer such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

SEB and Meyer hereby demand a trial by jury.


DATED:  February 13, 2026           Respectfully submitted,


**MAYER BROWN LLP**


By:   */s/Daniel D. Queen*
        Daniel D. Queen
        1221 Avenue of the Americas
        New York, NY 10020
        Tel: (212) 506-2500
        dqueen@mayerbrown.com

        Carmine R. Zarlenga (*Lead attorney*)*
        Julyana C. Dawson*
        David B. Goldstein*
        1999 K Street, NW
        Washington, DC 20006
        Tel: (202) 263-3000
        Fax: (202) 263-3300
        czarlenga@mayerbrown.com
        jdawson@mayerbrown.com
        dgoldstein@mayerbrown.com

        Philip R. Recht*
        Max W. Hirsch*
        333 S. Grand Ave 47th Floor
        Los Angeles, CA 90071
        Tel: (213) 229-9500
        precht@mayerbrown.com
        mhirsch@mayerbrown.com

        *pro hac vice forthcoming*

34