**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Groupe SEB, Inc. and Meyer Corporation, U.S.

Plaintiffs,

v.

Caraway Home, Inc.,

Defendant.

Civil Action No. 1:26-cv-01237 (AS)

**CARAWAY HOME, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 4

I.      THE PARTIES.................................................................................................... 4

II.     PLAINTIFFS' COOKWARE AND PTFE.......................................................... 4

III.    PLAINTIFFS' ALLEGATIONS ABOUT CARAWAY'S ADVERTISEMENTS .......... 5

LEGAL STANDARDS ................................................................................................... 7

I.      FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)............................ 7

II.     THE HEIGHTENED PLEADING STANDARD OF RULE 9(B) SHOULD
        APPLY HERE ................................................................................................... 8

III.    PLEADING STANDARD UNDER RULE 8(A) .............................................. 9

ARGUMENT ................................................................................................................. 9

I.      THE LANHAM ACT CLAIMS SHOULD BE DISMISSED............................ 9

        A.    Legal Standards Under The Lanham Act................................................ 9
        B.    Many Of Caraway's Advertising Claims Are Admittedly True Or Are
              Non-Actionable Puffery ...................................................................... 11
              1.    Bakeware Set Ad (Compl. ¶ 50) ............................................... 11
              2.    Worth Investing Ad (Compl. ¶ 55) ........................................... 12
              3.    Every Meal Ad (Compl. ¶ 46) ................................................... 12
              4.    Features & Benefits (Compl. ¶ 47) ........................................... 13
              5.    Trust Caraway Ad (Compl. ¶ 56)............................................... 13
              6.    Cookware Set Ad (Compl. ¶ 58)................................................ 14
              7.    Asthma Video Ad (Compl. ¶ 48) ............................................... 14

        C.    Plaintiffs Do Not Plausibly Allege Consumer Deception..................... 14
        D.    Plaintiffs Do Not Plausibly Allege That Caraway's Advertising
              Proximately  Caused Their Alleged Injuries......................................... 18

II.     PLAINTIFFS' CLAIMS UNDER THE NYGBL MUST BE DISMISSED .................... 21

        A.    Plaintiffs Did Not Adequately Plead Harm To The Public................... 21
        B.    The NYGBL Claims Fall With The Lanham Act Claims..................... 22

III.    PLAINTIFFS' COMMON LAW UNFAIR COMPETITION CLAIM SHOULD
        BE DISMISSED ............................................................................................. 23

        A.    Plaintiffs Improperly Purport To Bring This Claim Under the Laws of a
              Multitude of Unidentified States.......................................................... 23
        B.    Plaintiffs Fail To State A Claim For Common Law Unfair Competition
              Under New York Law............................................................................ 24

Table of Contents (continued)

Page

IV.    PLAINTIFFS' CLAIM FOR COMMON LAW TRADE LIBEL SHOULD BE
       DISMISSED ........................................................................................................ 25

V.     THE CLAIM FOR DECLARATORY JUDGMENT MUST BE DISMISSED ............. 28

CONCLUSION............................................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJB Enterprises, LLC v. BackJoy Orthotics, LLC*,
2017 WL 4400746 (D. Conn. 2017) ..................................................................................23

*Albion Eng'g Co v. Hartford Fire Ins. Co*,
779 F. App'x 85 (3d Cir. 2019) .......................................................................................26

*Alcon Vision, LLC v. Lens.com, Inc.*,
2022 WL 1665453 (E.D.N.Y. 2022)..................................................................................16

*Apple Indus., Inc. v. Merit Indus., Inc.*,
2008 WL 10665120 (E.D.N.Y. Feb. 29, 2008)...................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................7

*Bates v. Abbott Laboratories*,
727 F. Supp. 3d 194 (N.D.N.Y. 2024)............................................................................10, 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................7

*Blue Angel Realty, Inc. v. United States*,
2022 WL 94599 (S.D.N.Y. Jan. 8, 2022) ..........................................................................28

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
344 F.3d 211 (2d Cir. 2003)..............................................................................................22

*Cedar Communities At Staunton I, LLC v. A Place for Mom, Inc.*,
2026 WL 504820 (S.D.N.Y. Feb. 23, 2026)..................................................................11, 21

*Conopco, Inc. v. Campbell Soup Co.*,
95 F. 3d 187 (2d Cir. 1996)................................................................................................8

*Consumers Union of U.S., Inc. v. Theodore Hamm. Brewing Co*,
314 F. Supp. 697 (D. Conn. 1970).....................................................................................10

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018)..............................................................................9, 22

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
377 F. Supp. 3d 337 (S.D.N.Y. 2019)................................................................................19

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ...................................................................23

*Doe v. Uber Technologies, Inc.*,
  551 F. Supp. 3d 341 (S.D.N.Y. 2021)...........................................................9, 11, 13

*Dreijer v. Girod Motor Co.*,
  294 F.2d 549 (5th Cir.1961) ...................................................................................17

*Eminah Props. LLC v. Energizer Holdings, Inc.*,
  531 F. Supp. 3d 593 (E.D.N.Y. 2021) ....................................................................27

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016)................................................................27, 28

*Eyal R.D. Corp. v. Jewelex New York Ltd.*,
  784 F. Supp. 2d 441 (S.D.N.Y. 2011)..................................................................23, 24

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002)......................................................................................26

*Floors-N-More, Inc. v. Freight Liquidators*,
  142 F. Supp. 2d 496 (S.D.N.Y. 2001).......................................................................4

*Formulated Sols., LLC v. CKD, Inc.*,
  2005 WL 2413506 (E.D.N.Y. Sept. 29, 2005) .......................................................24

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  277 F. Supp. 2d 269 (S.D.N.Y. 2003).......................................................21, 26, 27

*Haller v. Usman*,
  2025 WL 605572 (S.D.N.Y. Feb. 25, 2025).........................................................28

*HipSaver Co., Inc. v. J.T. Posey Co.*,
  490 F. Supp. 2d 55 (D. Mass. 2007) ......................................................................10

*Incarcerated Ent., LLC v. Warner Bros. Pictures*,
  261 F. Supp. 3d 1220 (M.D. Fla. 2017)................................................................10

*interState Net Bank v. NetB@nk, Inc.*,
  348 F. Supp. 2d 340 (D.N.J. 2004) ........................................................................23

*JBrick, LLC v. Chazak Kinder, Inc.*,
  2023 WL 6158694 (E.D.N.Y. Sept. 21, 2023) .......................................................19

*Johnson v. Magnolia Pictures LLC*,
  2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019).......................................................28

*Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline
    Beecham Corp.*, 960 F.2d 294 (2nd Cir. 1992) ..........................................................15, 16, 18

*Kirby v. Wildenstein*,
    784 F.Supp. 1112 (S.D.N.Y. 1992) ...................................................................................26

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
    568 F. Supp. 2d 1369 (M.D. Fla. 2008) .............................................................................23

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ......................................................................................................18, 19

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018) .......................................................................14, 15, 16

*McKensie v. Artists Rights Socy', Inc.*,
    757 F. Supp. 3d 427 (S.D.N.Y. 2024) .................................................................................19

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
    938 F.2d 1544 (2d Cir. 1991) ...............................................................................................9

*Medidata Sol., Inc. v. Veeva Sys., Inc.*,
    2021 WL 467110 (S.D.N.Y. Feb. 9, 2021) ..........................................................................24

*Millenium Access Control Tech., Inc. v. On the Gate, LLC*,
    2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017) ...........................................................19, 20, 21

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
    457 F. Supp. 3d 207 (E.D.N.Y. 2020) ..................................................................... *passim*

*Noble Sec., Inc. v. ACCO Brands Corp.*,
    2018 WL 11542581 (S.D.N.Y. Mar. 31, 2018) ........................................................ *passim*

*NXIVM Corp. v. Sutton*,
    2007 WL 1876496 (D.N.J. June 27, 2007) ..........................................................................25

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    32 F.3d 690 (2d Cir. 1994) .................................................................................................19

*Pharmacychecker.com v. Nat. Ass'n of Boards of Pharmacy*,
    629 F. Supp. 3d 116 (S.D.N.Y. 2022) ...................................................................................9

*Pro. Sound Services, Inc. v. Guzzi*,
    349 F. Supp. 2d 722 (S.D.N.Y. 2004) ...................................................................................9

*Procter & Gamble Co. v. Quality King Distributors, Inc.*,
    974 F. Supp. 190 (E.D.N.Y. 1997) .................................................................................26, 27

*Procter & Gamble Co. v. Ultreo, Inc.*,
   574 F. Supp. 2d 339 (S.D.N.Y. 2008)..................................................................................19

*Publications Int'l, Ltd. v. Leapfrog Enters., Inc.*,
   2002 WL 31426651 (N.D. Ill. Oct. 29, 2002).......................................................................23

*Rapaport v. Iyer*,
   2025 WL 966275 (S.D.N.Y. Mar. 31, 2025) ........................................................................25

*Rexall Sundown, Inc. v. Perrigo Co.*,
   651 F. Supp. 2d 9 (E.D.N.Y. 2009) ......................................................................................18

*Ruder & Finn Inc. v. Seaboard Sur. Co.*,
   422 N.E.2d 518 (N.Y. 1981)..................................................................................................25

*Ryanair DAC v. Booking Holdings Inc.*,
   2024 WL 3732498 (D. Del. June 17, 2024)...........................................................................24

*Schering Corp. v. First DataBank Inc.*,
   2007 WL 1176627 (N.D. Cal. Apr. 20, 2007) .......................................................................25

*Seven-Up Co. v. Coca Cola Co.*,
   86 F.3d 1379 (5th Cir. 1996) .................................................................................................17

*SmileDirectClub, LLC v. Fulop*,
   2020 WL 1322838 (S.D.N.Y. Mar. 20, 2020) .......................................................................22

*Solmetex, LLC v. Dental Recycling of N. Am., Inc.*,
   2017 WL 2840282 (S.D.N.Y. June 26, 2017) .......................................................................24

*Soter Techs., LLC v. IP Video Corp.*,
   523 F. Supp. 3d 389 (S.D.N.Y. 2021)..............................................................................27, 28

*Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*,
   737 F. Supp. 3d 195 (S.D.N.Y. 2024)...................................................................................28

*Textile Deliveries, Inc. v. Stagno*,
   17 U.S.P.Q.2d 1953 (S.D.N.Y. 1990), aff'd, 52 F.3d 46 (2d Cir. 1995).................................8

*Torah Soft Ltd. v. Drosnin*,
   224 F. Supp. 2d 704 (S.D.N.Y. 2002)...................................................................................24

*Treefrog Devs., Inc. v. Nu-X Ventures, LLC*,
   2022 WL 17085925 (S.D. Cal. Nov. 17, 2022) .....................................................................23

*Tresona Multimedia, LLC v. Pre-Cleared Ltd.*,
   2026 WL 480858 (S.D.N.Y. Feb. 19, 2026).................................................................8, 15, 16

*Volunteer Firemen's Ins. Services, Inc. v. McNeil and Co., Inc.*,
   221 F.R.D. 388 (W.D.N.Y. 2004)..................................................................................8

*Weight Watchers Int'l v. Noom*,
   403 F. Supp. 3d 361 (S.D.N.Y. 2019)............................................................... *passim*

*YCF Trading Inc. v. Skullcandy, Inc.*,
   781 F. Supp. 3d 56 (E.D.N.Y. 2025) ..........................................................................25

**Statutes**

Colo. Rev. Stat. § 25-15-604(2)(f).................................................................................1

Conn. Gen. Stat. § 22a-903c.(d) ....................................................................................1

Lanham Act.................................................................................................. *passim*

Me. Stat. tit. 38 § 1614(5)(B-1)(2).................................................................................1

Minn. Stat. § 116.943(5)(a)(3) .......................................................................................1

NY Gen. Bus. Law § 349..................................................................................3, 21, 22

NY Gen. Bus. Law § 350..................................................................................3, 21, 22

R.I. Gen. Laws § 23-18.18-4(a) .....................................................................................1

Vt. Stat. Ann. tit. § 2494h(a)..........................................................................................1

**Other Authorities**

BBB National Programs, The Advertising Industry's Process of Voluntary Self-
   Regulation § 2.1 .......................................................................................................18

Fed. R. Civ. P. Rule 8 .............................................................................................9, 23

Fed. R. Civ. P. Rule 9 ...............................................................................................8, 9

Fed. R. Civ. P. Rule 12 ...................................................................................................7

H.B. 212(3)(C)(1), 57th Leg., 1st Sess. (N.M. 2025) ...................................................1

S.B. S1767, Reg. Sess. (N.Y. 2025) ..............................................................................1

Defendant Caraway Home, Inc. ("Caraway" or "Defendant"), by its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiffs Groupe SEB, Inc. ("SEB"), and Meyer Corporation, U.S. ("Meyer") (collectively, "Plaintiffs").

**PRELIMINARY STATEMENT**

Caraway proudly manufactures and sells a line of ceramic-coated cookware that is not just beautifully designed and functional but also free of forever chemicals (like per- and polyfluoroalkyl substances, or "PFAS") and other chemicals that are dangerous to human health, pets, and the environment. Caraway's marketing—including most of the ads cited in the Complaint—truthfully touts that its products are non-toxic, safe, healthy, and PFAS-free. Plaintiffs do not allege otherwise, and admit that "Caraway's products are probably safe." (Compl. ¶ 54.)

Many of Plaintiffs' products, on the other hand, are not PFAS-free; rather, they are coated in a type of PFAS known as PTFE (i.e., Teflon). (*Id.* ¶ 3.) Plaintiffs concede that "some types of PFAS can be harmful to humans" and, although they claim PTFE is "safe," they admit that it can degrade and release harmful fumes when overheated. (*Id.* ¶ 5; 32.) Despite Plaintiffs' allegation that "the science on PTFE is clear," multiple states have banned or have introduced legislation to ban the substance to protect consumers. (*Id.* ¶ 31.) Indeed, as of this filing, it is illegal for Plaintiffs to sell their PTFE-coated cookware in Minnesota, Maine, and Colorado. Minn. Stat. § 116.943(5)(a)(3); Colo. Rev. Stat. § 25-15-604(2)(f); Me. Stat. tit. 38 § 1614(5)(B-1)(2). Several other states are considering or soon implementing similar bans. *See*, *e.g.*, Conn. Gen. Stat. § 22a-903c.(d); R.I. Gen. Laws § 23-18.18-4(a); Vt. Stat. Ann. tit. § 2494h(a); H.B. 212(3)(C)(1), 57th Leg., 1st Sess. (N.M. 2025); S.B. S1767, Reg. Sess. (N.Y. 2025).

Acknowledging that consumers want to avoid toxic chemicals in their kitchens, Plaintiffs themselves manufacture and sell non-stick cookware that, like Caraway's products, do not contain

PFAS. Some of these brands are mentioned in the Complaint, like T-Fal, Farberware, and Rachael Ray. (Compl. ¶¶ 23, 24.) Just like Caraway, Plaintiffs have touted for years that their ceramic coated cookware is "non-toxic," "TOXIN FREE," "made without PFAS, PFOA, PTFE," "made without FOREVER chemicals," "SAFE FOR YOU," "your food isn't touching harmful chemicals," and "a healthy and safer alternative to ordinary nonstick cookware."



Based on their own advertisements, it is clear Plaintiffs agree with Caraway that there is a demand for cookware that has a ceramic non-stick coating, rather than cookware laden with forever chemicals. Nevertheless, in this lawsuit, Plaintiffs complain that Caraway's advertising (but apparently not their own) questions the safety of PTFE and, thereby, falsely disparages Plaintiffs'

PTFE-coated cookware. Putting aside the sheer hypocrisy of this claim, in light of Plaintiffs' own advertising, the Complaint fails to state a claim and must be dismissed.

*First*, most of Caraway's advertising cited in the Complaint merely states that Caraway's cookware is non-toxic, safe, healthy, and does not contain PFAS. Plaintiffs admit that these ads are true but argue that they falsely imply that Plaintiffs' PTFE-coated cookware is unsafe. But these ads do not mention Plaintiffs' products and in most cases do not even mention PTFE-coated cookware at all. These ads are simply not actionable.

*Second*, Plaintiffs fail to plead any facts to support their conclusory assertion that consumers are misled by Caraway's advertising. Notably missing from the Complaint are any allegations about consumer perception surveys or other extrinsic evidence that would establish that the advertising at issue is impliedly false.

*Third,* Plaintiffs have not adequately alleged how any of Caraway's ads, which do not name or refer to Plaintiffs' brands or their products, have proximately harmed each of the two Plaintiff companies, as opposed to the PTFE-coated cookware industry as a whole or PTFE/PFAS itself as a chemical. Indeed, the Complaint admits that PTFE-coated cookware makes up a large part of the non-stick cookware market of which Plaintiffs are but two competitors out of many.

*Fourth,* because Plaintiffs are competitors and not consumers, they cannot bring claims under New York's false advertising statutes (NYGBL §§ 349 & 350) because they have not adequately alleged harm to the public flowing from Caraway's advertising. Plaintiffs merely allege harm to themselves in the form of lost sales, which is not sufficient.

*Fifth*, Plaintiffs' common law claims both fail to state a claim. The tort of unfair competition only applies to claims of palming off or misappropriation—not to the kind of false advertising alleged here. The common law trade libel claim fails because it does not allege any

statements *specifically directed* at the Plaintiffs' products or specific facts demonstrating economic loss caused by those statements.

*Finally*, declaratory judgment is not a standalone cause of action and must be dismissed.

## STATEMENT OF FACTS[1]

### I.      THE PARTIES

According to the Complaint, Plaintiffs are sellers of cookware and bakeware to consumers throughout the United States. (Compl. ¶ 2.) SEB is a New Jersey corporation that sells cookware and bakeware products under multiple well-known brand names such as All-Clad and T-Fal. (*Id.* ¶¶ 19, 23). Meyer is a Delaware corporation, based in California, that also sells cookware and bakeware under multiple brands such as Anolon, Circulon, Farberware, Meyer, and Rachael Ray. (*Id.* ¶¶ 20, 22, 24.) Caraway is alleged to be a privately held Delaware corporation founded in 2019 that primarily sells ceramic-coated, stainless steel, and enamel cookware and bakeware products. (*Id.* ¶ 21.)

### II.     PLAINTIFFS' COOKWARE AND PTFE

Many of Plaintiffs' products feature a non-stick coating generally made from a polymer commonly referred to as PTFE. (*Id.* ¶¶ 3, 27.) In fact, as alleged, the most common non-stick coatings in the cookware industry are made primarily from PTFE, and PTFE-based coatings are widespread throughout the cookware and bakeware industry in the United States. (*Id.* ¶¶ 28–29.)

PTFE is a type of per- and polyfluoralkyl substance, or "PFAS," which is "an umbrella category encompassing thousands of different compounds—including PTFE[.]" (*Id.* ¶ 5.) PFAS chemicals are often referred to as "forever chemicals." (*Id.*) According to Plaintiffs, "some types of PFAS can be harmful to humans when used under ordinary conditions." (*Id.*) Although the

---

[1]      For purposes of this motion to dismiss, the well-pled facts alleged in the complaint are assumed to be true. *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 498 (S.D.N.Y. 2001).

Complaint claims that "PTFE is not" harmful when used under normal conditions, the Complaint admits that "if heated to extreme temperatures, PTFE can degrade into other molecules, some of which can contribute to temporary nausea when inhaled." (*Id.* ¶¶ 5, 32.) Plaintiffs further concede that PTFE-coated cookware and bakeware could pose risks that are not "measurable" when heated even to less extreme temperatures, i.e., between 500° Fahrenheit and 680° Fahrenheit. (*Id.*) Indeed, Plaintiffs do not actually deny that PTFE may pose health risks even under ordinary conditions; they simply contend that those risks have not been "shown," or they are not "measurable." (*Id.* ¶¶ 32, 34).

### III.    PLAINTIFFS' ALLEGATIONS ABOUT CARAWAY'S ADVERTISEMENTS

Plaintiffs' central claim is that Caraway's advertisements falsely "smear[] PTFE as a serious risk to consumer health." *(Id. ¶ 37.)* Plaintiffs allege that "Caraway tells consumers that traditional non-stick cookware will emit fumes into the air and release similar chemicals into food directly, even under ordinary use" and that "these fumes and chemicals are toxic, harmful, and dangerous." *(Id. ¶ 39.)* As a result, the Complaint alleges that Caraway's advertisements "scare consumers into believing that the use of traditional (PTFE-based) non-stick cookware and bakeware will expose consumers and their families to harmful substances and make them sick." (*Id.* ¶ 42.) Notably, the Complaint does not allege or cite to any advertisements that actually mention, picture, or refer to any of Plaintiffs' products—the claims are based entirely on the alleged disparagement of PTFE itself, which the Complaint alleges is "[b]y far the most common and effective non-stick coating[]" and is used in "[s]o much cookware and bakeware across the United States[.]" (*Id.* ¶¶ 28, 29.)

A majority of the cited advertisements consist of admittedly true statements about Caraway's own products, describing them as "non-toxic," "safe," "healthy," and "free of PFAS and PTFE," without any reference to other types of cookware, much less Plaintiffs' cookware:









(*Id.* ¶¶ 46, 47, 48, 50, 54, 55, 56, 58.) Importantly, the Complaint contains no allegations that any of the claims in the above-cited ads are false and, to the contrary, Plaintiffs admit that "Caraway's products are probably safe." (*Id.* ¶ 54.)

In addition, the Complaint also cites a few advertisements in which Caraway makes claims about the health risks of overheating PTFE-coated cookware, including the company's "Origin Story" which recounts a (truthful) experience of the founder when he "accidentally overheated a non-stick PTFE (i.e., Teflon®) coated pan and got sick with Teflon® Flu." (*Id.* ¶ 38.) Another Caraway ad states that "[w]hen overheated, these chemicals release toxic fumes that can be harmful to your family's health." (*Id.* ¶ 44.) And a third states: "When heated to high temperatures, these chemicals can release toxic fumes that can be harmful to pets and humans." (*Id.* ¶ 45.) Plaintiffs admit that these health risks do exist if PTFE is overheated, but allege that such

overheating is not likely to occur under normal use. (*Id.* ¶ 32.) Again, none of these ads mention Plaintiffs' products.

In a few ads cited in the Complaint, Caraway compares its products to generic "traditional PTFE-coated cookware" which is only "like the ones sold by Plaintiffs." (*Id.* ¶ 43; *see also* ¶ 45 ("Caraway's website hammers into consumers the idea that traditional nonstick cookware is harmful."); ¶ 49 ("These advertisements improperly suggest that traditional non-stick cookware contains 'toxic chemicals' that will 'leach into your food.'"); ¶ 52 ("Any reasonable consumer encountering these messages will come away with the impression that, by simply cooking or baking with traditional non-stick products, particularly PTFE-coated ones, they are exposing themselves and their families" to health risks)). Thus, the Complaint rests on the notion that consumers will come away from Caraway's advertising with a false belief that PTFE and "traditional PTFE-coated cookware" is dangerous when overheated and then infer that Plaintiffs' products are therefore dangerous for the same reasons.

## LEGAL STANDARDS

### I.    FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679.

7

**II.**     **THE HEIGHTENED PLEADING STANDARD OF RULE 9(B) SHOULD APPLY HERE**

False advertising claims under the Lanham Act (and related claims) should be subject to the heightened pleading standards of Rule 9(b) governing claims of fraud. *See*, *e.g.*, *Volunteer Firemen's Ins. Services, Inc. v. McNeil and Co., Inc*., 221 F.R.D. 388, 391–93 (W.D.N.Y. 2004); *Textile Deliveries, Inc. v. Stagno*, 17 U.S.P.Q.2d 1953, 1958 (S.D.N.Y. 1990), aff'd, 52 F.3d 46 (2d Cir. 1995).

Although the majority view is to the contrary, *Tresona Multimedia, LLC v. Pre-Cleared Ltd.*, 2026 WL 480858, at *3 n. 2 (S.D.N.Y. Feb. 19, 2026) (noting majority view), the Second Circuit has not yet ruled on this issue. But the Second Circuit has ruled on a related issue. In *Conopco, Inc. v. Campbell Soup Co.*, 95 F. 3d 187, 191 (2d Cir. 1996), it held that the statute of limitations for fraud applies to false advertising claims under the Lanham Act because "it is clear that both intent and fraud play an important role in all Lanham Act claims." The Court explained "there is an intimate relationship between fraud and injury under the Lanham Act." *Id.* Thus, "virtually every district court in this Circuit that has addressed the question" has held "that a six-year fraud statute...is applicable in the context of misleading advertisement." *Id*. The same reasoning warrants application of Rule 9(b)'s heightened pleading standard for fraud in this case. *See Volunteer Firemen's*, 221 F.R.D. at 393 (citing *Conopco*); *Textile Deliveries,* 17 U.S.P.Q.2d at 1958 (applying Rule 9(b)).

Under Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Volunteer Firemen's*, 221 F.R.D. at 391 (citation omitted).

### III.     PLEADING STANDARD UNDER RULE 8(A)

If the heightened standards of Rule 9(b) do not apply, then under Rule 8(a) the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, Rule 8(a) "'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation...' 'Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.'" *Pharmacychecker.com v. Nat. Ass'n of Boards of Pharmacy*, 629 F. Supp. 3d 116, 127 (S.D.N.Y. 2022) (quoting *Iqbal*, 556 U.S. at 678).

### ARGUMENT

### I.     THE LANHAM ACT CLAIMS SHOULD BE DISMISSED

#### A.     Legal Standards Under The Lanham Act

In order to state a claim under the Lanham Act for false advertising or product disparagement, "a plaintiff must (1) demonstrate that the challenged statement is either literally false or, though literally true, likely to confuse or deceive consumers; (2) show that the defendant misrepresented an inherent quality or characteristic" of either defendant's or plaintiff's goods or services; "(3) show that the defendant placed the false or misleading statement in interstate commerce; and (4) prove that the plaintiff was injured as a result of the defendant's misrepresentation." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 539–40 (S.D.N.Y. 2018) (citation omitted); *Pro. Sound Services, Inc. v. Guzzi*, 349 F. Supp. 2d 722, 727 (S.D.N.Y. 2004). False advertising and product disparagement claims differ as to which party's products the advertisements target. *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1548 n.1 (2d Cir. 1991).

A defendant is permitted to use commendatory terms, such as non-toxic, safe, and healthy, to advertise its own products without incurring liability. In *Doe v. Uber Technologies, Inc.*, 551 F. Supp. 3d 341, 366–67 (S.D.N.Y. 2021), for example, the court held that Uber's statements that its

rides are "safe," were not actionable, as they conveyed only the seller's opinion that its product was superior. Similarly, in *Weight Watchers Int'l v. Noom*, 403 F. Supp. 3d 361, 370–71 (S.D.N.Y. 2019), the court held that "[s]tatements promoting a 'healthier you' fall comfortably within the category of non-actionable puffery, and do not plausibly support a claim of false advertising." And in *N. Am. Olive Oil Ass'n v. D'Avolio Inc*., 457 F. Supp. 3d 207, 224–225 (E.D.N.Y. 2020), the court held that defendants' critical statements about "supermarket olive oil"—such that it might not be "real" and is of "poor quality"—consisted merely of generalized or exaggerated statements that could not support a claim under the Lanham Act. *See also Bates v. Abbott Laboratories*, 727 F. Supp. 3d 194, 216 (N.D.N.Y. 2024) ("statements that the drinks represent 'complete' and 'advanced' nutrition are puffery"); *Noble Sec., Inc. v. ACCO Brands Corp.*, 2018 WL 11542581, at *6 (S.D.N.Y. Mar. 31, 2018) (holding that "general claim[s] of superiority...[are] not actionable under the Lanham Act," especially where Plaintiff's products are not mentioned in the advertisement).

In assessing whether multiple advertising claims are actionable, the Court must consider each one individually. *See Consumers Union of U.S., Inc. v. Theodore Hamm. Brewing Co*, 314 F. Supp. 697, 700 (D. Conn. 1970) (holding that "it would not be appropriate to discuss and rule on the challenged advertising as a unit; each type and form of publicity must be considered separately" where "the defendant employed several different types and forms of advertisements" and "[t]he scope of advertising has varied[.]"); *Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1230 (M.D. Fla. 2017) ("The court may not, however, consider multiple advertisements in an advertising campaign as a whole, as that approach assumes that consumers will be exposed to each advertisement."); *HipSaver Co., Inc. v. J.T. Posey Co*., 490 F. Supp. 2d 55, 67 (D. Mass.

10

2007) ("[B]ecause consumers will not be exposed to every advertisement in a campaign, th[e] inquiry focuses on individual advertisements, not marketing campaigns as a whole.").

### B.    Many Of Caraway's Advertising Claims Are Admittedly True Or Are Non-Actionable Puffery

The Court should dismiss the Lanham Act claims to the extent they rely on the following advertisements alleged in the Complaint, each of which makes non-actionable statements that are not alleged to be false or that are mere puffery. *Uber*, 551 F. Supp. 3d at 366–67; *Weight Watchers Int'l*, 403 F. Supp. 3d at 370–71; *Bates*, 727 F. Supp. 3d at 215–16; *Noble Sec., Inc.*, 2018 WL 11542581, at \*6; *N. Am. Olive Oil*, 457 F. Supp. 3d at 224–225; *see also Cedar Communities At Staunton I, LLC v. A Place for Mom, Inc.*, 2026 WL 504820, at \*3 (S.D.N.Y. Feb. 23, 2026) ("Without an alleged false statement, any injury suffered cannot be causally related to a legal violation.").[2]

### 1.    Bakeware Set Ad (Compl. ¶ 50)



This advertisement, allegedly distributed via email on September 16, 2025, accurately states that Caraway's bakeware does not contain forever chemicals—a fact that is undisputed in the Complaint. It also states that desserts "taste sweeter" which is puffery and not actionable. *See Weight Watchers Int'l*, 403 F. Supp. 3d at 370, 370–71. The advertisement makes no health or safety claims. It does not refer to any competitor's products. It does not even refer to PTFE or other non-stick coated cookware.

---

[2]    Each of the ads depicted in this section mirrors Plaintiffs' advertising of their own ceramic products, in which they use terms such as "non-toxic," and "made without PFAS, PFOA, PTFE." (See, e.g., *supra*, p. 3.)

### 2.      Worth Investing Ad (Compl. ¶ 55)



This advertisement, which was allegedly published on Facebook and Instagram, again accurately states that Caraway's kitchenware (pictured) is non-toxic—something the Complaint does not dispute and even half-heartedly concedes. (*See* Compl. ¶ 54 ("Caraway's products are probably safe")). Plaintiffs allege that this ad creates the false impression that consumers should "buy Caraway pans because they will avoid the 'toxic' products sold by Caraway's competitors, like Plaintiffs." (*Id.* ¶ 55). But the ad does not mention any competitors—let alone any of the brands sold by Plaintiffs. It does not mention PTFE or even other non-stick pans or coatings.

### 3.      Every Meal Ad (Compl. ¶ 46)



Allegedly promoted on Caraway's website, this advertisement promotes the non-toxic, chemical-free, and healthy nature of Caraway's products, which is not in dispute. It also accurately conveys that Caraway's product is free of harmful chemicals, which is undisputed. Plaintiffs allege that, through this ad, Caraway "promotes its own products as allegedly superior because its cookware does not have PTFE coatings." (Compl. ¶ 46). These generalized claims of superiority that do not even mention non-stick, let alone target any specific competing products, are not actionable under the Lanham Act. *See Noble Sec., Inc.*, 2018 WL 11542581, at *6; *N. Am. Olive Oil*, 457 F. Supp. 3d at 224–225.

### 4.    Features & Benefits (Compl. ¶ 47)



This description of the features and benefits of Caraway's cookware factually states that Caraway's products are non-toxic and are free from PTFE, PFOA, PFAS, lead, and cadmium. None of this is in dispute. The text does not mention any competing products, let alone the products sold by Plaintiffs. The Complaint alleges that this blurb conveys the message that Caraway's products are "superior" because they are not made with PTFE, but the blurb does not make any comparative claim of superiority and certainly not on the basis that it does not contain PTFE.

### 5.    Trust Caraway Ad (Compl. ¶ 56)

This advertisement promotes Caraway's products as being safe from forever chemicals, which is not in dispute. It does not refer to any competing products. The Complaint misrepresents the contents of this advertisement by stating that "Caraway claims that users should trust Caraway, and only Caraway." (Compl. ¶ 56.) However, this advertisement does not say "trust Caraway and only Caraway," it simply says "you can trust Caraway." (*Id.*) The claims in this advertisement are true or are at most commendatory statements that constitute puffery and are not actionable. *See Uber*, 551 F. Supp. 3d at 366–67.

### 6.    Cookware Set Ad (Compl. ¶ 58)



This advertisement was allegedly sent to consumers via email on September 13, 2025. This advertisement promotes Caraway's products as being non-toxic and PTFE free, which is true, and that it makes meals "safer, cleaner, and worry-free" without referencing any competing products. These statements are either true or nonactionable puffery. *Weight Watchers Int'l*, 403 F. Supp. at 368–71. Plaintiffs argue that "according to Caraway, cookware that contains PTFE-based coating *is* toxic, is not safe, and is not clean," but this advertisement does not make those statements. (*Id.* ¶ 58.) It is not actionable.

### 7.    Asthma Video Ad (Compl. ¶ 48)

Plaintiffs allege that a social media video advertisement contained a statement from a customer that "Caraway pans…are non-toxic, and as someone with asthma, that's very important to me, so that my kitchen and my air stay [as] clean as possible." (*Id.* ¶ 48.) This advertisement truthfully asserts that Caraway's pans are non-toxic, which is not disputed in the Complaint. And it asserts that the speaker has asthma and thinks it is important based on her personal experience to have a clean kitchen and clean air. There is no allegation that Caraway's pans do not provide a clean kitchen and clean air. The ad does not mention any competitor's products (much less the Plaintiffs' specific products) nor even PTFE or other non-stick coatings. This ad is not actionable. *See Noble Sec., Inc.*, 2018 WL 11542581, at *6.

### C.    <u>Plaintiffs Do Not Plausibly Allege Consumer Deception</u>

Plaintiffs' Lanham Act claims rest on an implied falsehood theory. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) ("'[P]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality'—a claim that 'invites a comparison of the

14

impression, rather than the statement, with the truth.'"). A statement is impliedly false when, considering the advertisement in its entirety, the audience "would recognize the claim as readily as if it had been explicitly stated." *Weight Watchers Int'l,* 403 F. Supp. 3d at 369 (citation omitted). To state a claim under a theory of implied falsehood, a party must present extrinsic evidence of consumer deception or confusion. *Id.* (citing *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2nd Cir. 1992)). Plaintiffs must "allege that consumers...were misled or confused by the challenged advertisement and *offer facts* to support that claim." *Tresona Multimedia, LLC*, 2026 WL 480858, at *6 (emphasis in original) (quoting *Lokai Holdings LLC*, 306 F. Supp. 3d at 639). Plaintiffs do not meet this requirement.

For example, the advertisements discussed in Section I.B., *supra*, make claims about the toxicity, health, and safety of Caraway's products, but Plaintiffs admit that those products "are probably safe." (Compl. ¶ 54; see also *Id.* Ex. A.) Plaintiffs allege that these ads "suggest" (*id.* ¶ 53), "create[] the impression" (*id.* ¶ 55), or portray "by implication" that traditional non-stick cookware is "unsafe" due to its use of PTFE (*id.* ¶ 57). Thus, the Complaint rests on the allegedly false *implication* of those true claims: "[Caraway's advertisements] send[] a clear (but false) message that consumers who do *not* switch to Caraway's products will be exposed to chemicals that are toxic, unsafe, and unhealthy." (Compl. ¶ 54.) Similarly, some of the cited advertisements make claims about the dangers of overheating PTFE-coated cookware:



(Compl. ¶ 44, 45.) But Plaintiffs admit that overheated cookware *does* pose health risks—they simply allege that those risks cannot be scientifically measured under so-called "normal" use. (*Id.* ¶ 31.) Therefore, Plaintiffs are claiming that the statements made in these advertisements, although literally true, have left a false impression on consumers about whether PTFE is dangerous under "normal" conditions. This is the epitome of an implied falsehood claim. *Lokai Holdings LLC,* 306 F. Supp. at 638.

The Complaint, however, is bereft of factual allegations about *any* consumers being misled, much less a statistically significant number of them. *See Johnson & Johnson,* 960 F.2d at 298 ("[W]here the plaintiff cannot demonstrate that a statistically significant part of the commercial audience holds the false belief…the plaintiff cannot establish that it suffered any injury…Without injury there can be no claim[.]"); *Alcon Vision, LLC v. Lens.com, Inc.*, 2022 WL 1665453, at *6 (E.D.N.Y. 2022) (dismissing a claim where the complaint failed to plead "non-conclusory facts that would allow [the Court] to draw a plausible inference that a statistically significant number of consumers were misled."). In *Tresona Multimedia, LLC*, 2026 WL 480858, at *6 the court granted defendant's motion to dismiss where plaintiff failed to plead facts demonstrating how defendant's

ads "caused customers to buy [defendant's products] as opposed to [plaintiff's]" and that "even if [plaintiff] did allege that customers were buying [defendant's product] as opposed to [plaintiff's], [plaintiff] [did] not allege how these decisions were because of [defendant's] [] statements as opposed to other reasons for purchasing [defendant's product]." Similarly, in *N. Am. Olive Oil*, 457 F. Supp. 3d at 224, the court dismissed the case where the plaintiff alleged that the defendant "falsely impl[ied] that any olive oil other than a UP certified product lacks quality and health benefits," which allegedly "cause[d] damage to Plaintiff's business reputation" because the allegations were "conclusory" and the "complaint lacks any nonspeculative allegations that support a suggestion that any consumer would be misled by these statements to NAOOA's detriment."

Here, Plaintiffs offer only speculative, conclusory assertions that Caraway's success and Plaintiffs' supposed loss must be due to Caraway's advertising. (*See, e.g.* Compl. ¶¶ 75–77.)[3] Plaintiffs may try to rely on the National Advertising Division ("NAD") decision attached as Exhibit A to the Complaint, but that decision does not establish plausible consumer deception. The NAD Decision only shows that the individuals who wrote the decision found that, based on the submissions made in that proceeding, Caraway had not adequately supported some of its advertising claims about PTFE. (Compl. Ex. A at 14–15.) This finding, however, does not provide

---

[3]    Plaintiffs also fail to plausibly allege facts demonstrating that losses of business or goodwill they may have experienced were caused by Caraway's advertisements, as opposed to other equally credible theories of causation, including (i) their identical advertisements of their own products as "non-toxic"; (ii) similar messages about PTFE-free products from other competitors, and (iii) the fact that the market is awash with negative news concerning PTFE-coated cookware and bakeware tied, among other things, to the banning of these products in a growing number of U.S. states. *See Seven-Up Co. v. Coca Cola Co.*, 86 F.3d 1379, 1388 (5th Cir. 1996) ("We have previously rejected inferences of causation based solely on the chronology of events, where the record contains undisputed testimony to the contrary or other equally credible theories of causation."); *Dreijer v. Girod Motor Co.*, 294 F.2d 549, 555–56 (5th Cir.1961) (rejecting an inference of causation based on "post hoc ergo propter hoc reasoning" where the evidence supported several other probable causes for the accident). The Complaint relies solely on "post hoc ergo propter hoc" reasoning, *i.e.*, Plaintiffs' sales declined after Caraway published the challenged advertising, and thus it falls far short of what is required to allege proximate causation.

any factual support whatsoever to the element of consumer deception necessary to sustain a Lanham Act claim. The opinions expressed in the NAD Decision are, therefore, insufficient to meet Plaintiff's burden here which requires them to plead *facts* plausibly demonstrating that a "statistically significant part of the commercial audience" was deceived. *See Johnson & Johnson,* 960 F.2d at 298.[4]

"The Second Circuit has clearly stated that the purpose of [requiring] extrinsic evidence that a statement is misleading to consumers is largely to avoid having 'the judge determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive'…Simply substituting the findings of the NAD and NARB decision-makers for that of the district judge would not be consistent with the Second Circuit's guidance." *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 36 (E.D.N.Y. 2009) (citations omitted). Moreover, although an NAD decision may be considered on a motion to dismiss, it is ultimately "inadmissible hearsay that cannot be used to prove the truth of the matter asserted." *Id.*

> **D.**     **Plaintiffs Do Not Plausibly Allege That Caraway's Advertising Proximately Caused Their Alleged Injuries**

"[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 133 (2014). The threshold required to show injury differs based on the nature of the advertisements and the parties' roles as competitors.

---

[4]     Moreover, the NAD's procedural rules make clear that "[a] decision by NAD/NARB does not constitute a finding that any law has been violated." BBB National Programs, The Advertising Industry's Process of Voluntary Self-Regulation ("NAD Rules") § 2.1(A) (Mar. 16, 2026). Moreover, the Plaintiffs likely violated the NAD Rules by extensively referencing, quoting from, and attaching the NAD Ruling in their publicly-filed Complaint in this case. Rule 2.1(I) specifically prohibits the parties to NAD proceedings from "disseminat[ing] any decision or abstract to individuals or organizations that are not party to the challenge without the prior written permission of the NAD Vice President." The challenger-party in the NAD proceeding was the Cookware Sustainability Alliance, an organization dominated by Plaintiffs.

18

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 346–47 (S.D.N.Y. 2019). Where advertisements do not refer to competing products or make comparative claims, a plaintiff is required to make a showing of actual injury and causation. *JBrick, LLC v. Chazak Kinder, Inc.*, 2023 WL 6158694, at \*5 (E.D.N.Y. Sept. 21, 2023). Where advertisements either name the plaintiff (or plaintiff's product) specifically, or are made "in the context of a two-player market" where they could only be about the plaintiff, injury is presumed. *TrueCar, Inc.*, 377 F. Supp. 3d at 347. The Second Circuit has declined to extend the presumption of injury outside the context of a two-player market due to "the general rule in our Circuit against making presumptions of injury and causation favorable to the plaintiff." *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 696–97 (2d Cir. 1994); *McKensie v. Artists Rights Socy', Inc.*, 757 F. Supp. 3d 427, 437 n. 6 (S.D.N.Y. 2024).[5]

Here, Caraway's advertisements do not name Plaintiffs' brands or products directly. Nor is this a two-player market—both as a matter of basic arithmetic (there are three competing companies named in this lawsuit owning almost 10 different brands) and because the Complaint alleges a broader market of PTFE-coated cookware competitors. (Compl. ¶¶ 28–29.) Plaintiffs therefore must make a showing of actual injury and causation. *See Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) ("Because P & G is not entitled to a presumption of irreparable harm, it must demonstrate that it will be irreparably harmed."). Bare allegations of injuries, including lost sales, are not sufficient. *Millenium Access Control Tech., Inc. v. On the Gate, LLC*, 2017 WL 10445800, at \*11 (E.D.N.Y. Feb. 14, 2017) (Plaintiff's allegations "that '[a]s a direct and proximate cause of Defendants unlawful acts, [it] has suffered…damage to its

---

[5]      Because Plaintiffs do not allege facts demonstrating proximate causation, they also lack standing to bring this suit. *Lexmark*, 572 U.S. at 132. A plaintiff asserting false advertising under the Lanham Act must show both that it falls within the statute's "zone of interests" (i.e., injury to a commercial interest in sales or reputation) and that its injury was proximately caused by the alleged violation. *Id.* at 129–32.

business, reputation and goodwill…and the loss of sales and profits…" lacked specificity and were insufficient to state a plausible claim for relief). Here, Plaintiffs make only bare allegations that they have suffered harm to their reputations and goodwill, have suffered economic harms including lost sales, and have had to spend money on responsive advertising. (Compl. ¶¶ 77, 78, 85, 92, 94). As in *Millenium Access Control*, these allegations are insufficient to state a claim.

Even if Plaintiffs had plausibly alleged that they suffered injuries, they have not demonstrated how these injuries were caused by any of Caraway's advertisements pled in the Complaint. As discussed above, many of Caraway's advertisements do not mention other products at all, much less Plaintiffs' products. (Compl. ¶¶ 46, 48, 50, 54, 55, 56, 58.) The advertisements that do mention competing products simply refer to the products generically as either "traditional non-stick pan" or "non-stick cookware" or "PTFE coated pans" or "toxic pans." (*Id.* ¶¶ 38, 43, 44, 45, 49, 59.) None of Caraway's advertisements mention Plaintiffs' brands or Plaintiffs' products by name. Plaintiffs are not the only sellers of cookware that contains PTFE.[6] In fact, Plaintiffs admit that the most common non-stick coatings in the industry are made primarily from PTFE, and that PTFE-based coatings are widespread throughout the cookware and bakeware industry. (*Id.* ¶¶ 28, 29.)

In *N. Am. Olive Oil*, 457 F. Supp. 3d at 230–231, the court held that defendant's advertisements about "supermarket olive oils" were not sufficiently linked to the member brands of the Plaintiff, the North American Olive Oil Association. The court held that "the complaint fails to allege…that any statement concerning the nature, quality, and characteristics of supermarket olive oils has any bearing on NAOOA itself. Any allegation that an attack on unnamed

---

[6]     Other well-known sellers of cookware containing PTFE include Zwilling (*see* ZWILLING, https://www.zwilling.com/us/demeyere-alu-pro-5-10-inch-aluminum-non-stick-fry-pan-13626/40851-045-0.html (last visited Apr. 23, 2026)) and Cuisinart (CUISINART, *see* https://www.cuisinart.com/17-piece-chef%E2%80%99s-classic-nonstick-hard-anodized-set/66-17N.html (last visited Apr. 23, 2026)).

'supermarket olive oil,' which may, or may not have been produced by some unspecified member of the association, does not inexorably extend to an attack on the reputation of NAOOA." *Id.* at 223. In *Millenium Access Control*, 2017 WL 10445800, at \*11, the court similarly granted dismissal where "[t]he complaint [was] bereft of any factual allegations from which it may reasonably be inferred that MAC suffered any economic or reputational injury flowing directly from any of the purported misrepresentations in OTG's [advertisements], *i.e.*, that its alleged injuries were proximately caused by defendants' purported misrepresentations." And in *Cedar Communities At Staunton I, LLC*, 2026 WL 504820, at \*3, the plaintiff's claim failed where the complaint did not identify a "'single consumer who withheld or cancelled business with it' or any 'particular quantum of diverted sales or loss of goodwill and reputation' as a result of APFM's alleged falsities."

Here, where Caraway's comparative advertisements target only the generic category of non-stick pans and/or cookware containing PTFE (the use of which is "widespread" throughout the United States), Plaintiffs have not shown that Caraway's claims were sufficiently linked to Plaintiffs' brands. Plaintiffs' conclusory allegations that they were "proximately harmed" due to Caraway's advertisements, without more, is not sufficient to state a claim.

## II.    PLAINTIFFS' CLAIMS UNDER THE NYGBL MUST BE DISMISSED

### A.    Plaintiffs Did Not Adequately Plead Harm To The Public

In order for a competitor, rather than a consumer, to sustain a cause of action under sections 349 and 350 of New York's General Business Law, "the dispositive question [is]…whether 'the matter affects the public interest in New York.'" *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (citations omitted). In order to satisfy this standard, "[c]ommercial claimants…must allege conduct that has 'significant ramifications for the public at large.'" *Id.* In *Noble Sec., Inc.*, 2018 WL 11542581, at \*8, the court held that this standard was not

21

met where "the 'gravamen' of Plaintiffs' claim are Noble's injuries from lost sales of Noble Locks and damage to Noble Slot's reputation, not injuries to consumers."

Here, the gravamen of Plaintiffs' complaint is harm to their own commercial interest. While Plaintiffs make bare-bones allegations regarding the alleged public harm of consumers paying a higher amount for Caraway's pans (Compl. ¶ 55), this does not rise to the standard of public harm necessary to survive a motion to dismiss in this circuit. *See, e.g., Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003) (finding public harm where defendants "induced consumers to smoke and discouraged them from quitting smoking, thus significantly increasing their risk of illness and even death").

In fact, the sufficiency of Plaintiffs' style of public harm allegation was expressly rejected in *SmileDirectClub, LLC v. Fulop*, 2020 WL 1322838, at *4 (S.D.N.Y. Mar. 20, 2020), which held that an "allegation that 'consumers for whom other teeth straightening procedures are prohibitively expensive ... are steered away from [plaintiff's] affordable and effective treatment options' [did not] plausibly allege harm to the public at large" because "courts considering the public harm requirement distinguish conduct that endangers consumers from conduct that merely encourages them to purchase a product from a different business or an inferior product."

## B.    The NYGBL Claims Fall With The Lanham Act Claims

Plaintiffs' NYGBL § 349 and § 350 claims also fail for the same reasons the Lanham Act claims fail. *Davis*, 345 F. Supp. 3d at 540 ("The standards for bringing a NYGBL § 349 claim 'are substantially the same as those applied to claims brought under' § 43(a) of the Lanham Act. Further, an opinion that is not actionable under the Lanham Act is also not actionable under NYGBL § 349.") (internal citation omitted).

22

III.     **PLAINTIFFS' COMMON LAW UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED**

     A.     **Plaintiffs Improperly Purport To Bring This Claim Under the Laws of a Multitude of Unidentified States**

Plaintiffs' common law claim for unfair competition must be dismissed because it fails to specify which state's law should apply and instead suggests that a multitude of unidentified laws might be applicable: "Caraway's acts constitute false advertising and unfair competition *under all other applicable jurisdictions*." (Compl. ¶ 116 (emphasis added).) A plaintiff must "make a short and plain statement of its legal claim showing it is entitled to relief under a specific statute or legal theory, by asserting what state law entitles it to relief." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008); *AJB Enterprises, LLC v. BackJoy Orthotics, LLC*, 2017 WL 4400746, at *6 (D. Conn. 2017) (holding that by "claiming relief under three distinct standards from the common law of three alternative states, [the plaintiff] fail[ed] to provide [defendant] with fair notice of the claims against which it must defend, thus violating the requirements of Rule 8"); *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 847 n.5 (N.D. Cal. 2023) ("'[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.'"); *Publications Int'l, Ltd. v. Leapfrog Enters., Inc.*, 2002 WL 31426651, at *6–7 (N.D. Ill. Oct. 29, 2002) ("[P]laintiff must specify which states' common laws are at issue."). Caraway (and the Court) should not have to guess which laws Plaintiffs might want to apply to this claim or preemptively analyze the claim under different state laws all across the country.[7] The Court should dismiss Plaintiffs' common law unfair competition claim.

---

[7]     Even just looking at the laws of New York, New Jersey, and California (where the parties have their principal places of business), the elements of a claim for unfair competition are different: New York requires "bad faith" but New Jersey and California do not. *Compare Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011), *with interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 353 (D.N.J. 2004) and *Treefrog Devs., Inc. v. Nu-X Ventures, LLC*, 2022 WL 17085925, at *4 (S.D. Cal. Nov. 17, 2022). Other states have even more

### B.     Plaintiffs Fail To State A Claim For Common Law Unfair Competition Under New York Law

Applying New York law,[8] Plaintiffs cannot state a claim for unfair competition because such a claim is inapplicable to the facts alleged here. "New York courts recognize two theories of unfair competition: palming off and misappropriation." *N. Am. Olive Oil*, 457 F. Supp. 3d at 228. "In New York, 'the essence of unfair competition…is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Eyal R.D. Corp.*, 784 F. Supp. 2d at 447. In *Formulated Sols., LLC v. CKD, Inc.*, 2005 WL 2413506, at \*4 n.2 (E.D.N.Y. Sept. 29, 2005), for example, the plaintiffs mentioned "unfair competition" in two of their causes of action. The court noted that New York law "distinguishes product disparagement from common law unfair competition." *Id.* As the court stated, "[c]ommon law unfair competition is limited to misrepresenting the origin of goods—so-called 'palming off.'" *Id.* (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 1992 WL 170559, at \*4 (S.D.N.Y.1992)). Because the allegations in *Formulated Sols.* related to an allegedly disparaging marketing campaign, the court held that "product disparagement, also known as trade libel," was the correct claim, not "unfair competition." *Id.* at \*4; *see also Solmetex, LLC v. Dental Recycling of N. Am., Inc.*, 2017 WL 2840282, at \*3 (S.D.N.Y. June 26, 2017) ("The 'primary concern in

---

divergent elements. *See*, *e.g.*, *Ryanair DAC v. Booking Holdings Inc.*, 2024 WL 3732498, at \*31 (D. Del. June 17, 2024) (unfair competition is more akin to tortious interference).

[8]     Assuming that only one state's law should apply to this claim, that state should be New York. "In a tort case, the interest of each jurisdiction turns primarily on the domiciles of the parties and the locus of the tort." *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 719 (S.D.N.Y. 2002) (citing *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679 (N.Y. 1985)). "[T]he law of unfair competition is conduct regulating," and in such cases, "the locus of the tort will be the dominant consideration." *Torah Soft Ltd.*, 224 F. Supp. 2d at 720. Plaintiffs' allegations concern a national advertising campaign that was planned, directed, and emanated from Caraway's principal place of business in New York. Accordingly, the "locus of the tort" was New York, and New York law should apply. *Id.* at 719–20 (applying Israeli law to unfair competition counterclaim where the counterclaim defendant's conduct occurred in Israel); *Apple Indus., Inc. v. Merit Indus., Inc.*, 2008 WL 10665120, at \*3 (E.D.N.Y. Feb. 29, 2008) (Pennsylvania law applies to unfair competition claim where alleged conduct was committed in Pennsylvania by a Pennsylvania-based defendant); *Medidata Sol., Inc. v. Veeva Sys., Inc.*, 2021 WL 467110, at \*13 (S.D.N.Y. Feb. 9, 2021) (applying California law to unfair competition claim where defendant's alleged conduct occurred in California).

unfair competition is the protection of a business from another's misappropriation of the business' organization [or its] expenditure of labor, skill, and money…Product disparagement, on the other hand, generally involves no misappropriation and therefore must be plead as a claim for trade libel."); *N. Am. Olive Oil*, 457 F. Supp. 3d at 228–29 (dismissing "unfair competition claim" where allegations were that "Defendants' misrepresentations were made with the intent of maligning [plaintiff's] reputation," and no allegations of misappropriation of business assets was alleged).

Here, the Complaint alleges false advertising, not "misappropriation" of business assets. Thus, the unfair competition claim should be dismissed.

## IV.    PLAINTIFFS' CLAIM FOR COMMON LAW TRADE LIBEL SHOULD BE DISMISSED

Under New York law,[9] a plaintiff must allege "defendants' publication of a defamatory statement directed at the quality of their goods, which statement caused 'special damages.'" *YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 72–73 (E.D.N.Y. 2025) (quoting *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641 (2d Cir. 2015)). "Where, however, the statement is confined to denigrating the quality of the business' goods or services…malice and special damages [must also be] proven." *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981). Plaintiffs fail to allege any statement by Caraway that disparages Plaintiffs' products in particular, malice, special damages, or causation.

---

[9]    Although the Complaint does not allege which state's law should apply, there is no conflict between the laws of New York, New Jersey or California (the home states of each party). *Schering Corp. v. First DataBank Inc.*, 2007 WL 1176627, at *10 n.8 (N.D. Cal. Apr. 20, 2007) ("[T]here [is] no substantive difference between the laws of California and New Jersey for a claim of trade libel"); *NXIVM Corp. v. Sutton*, 2007 WL 1876496, at *6 n.3 (D.N.J. June 27, 2007) (parties "agree[d] that New Jersey and New York law concerning product disparagement and tortious interference claims are virtually identical."). Therefore, New York law can be applied. *Rapaport v. Iyer*, 2025 WL 966275, at *4 (S.D.N.Y. Mar. 31, 2025) ("In the absence of substantive difference…a New York court will dispense with choice of law analysis; and if New York is among the relevant choices, New York courts are free to apply it.") (quoting *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004)).

*First*, Plaintiffs' allegations point to no statements by Caraway that disparage or defame Plaintiffs' products. Plaintiffs point only to advertisements concerning generic non-stick pans with PTFE coating. (Compl. ¶¶ 38, 43, 44, 45, 49, 59.). Courts dismiss trade libel claims where the advertisement at issue does not directly disparage the specific product sold by the plaintiff. *See N. Am. Olive Oil*, 457 F. Supp. 3d at 231 (the "complaint again fails to adequately allege that any of the statements made by Defendants were directed at NAOOA"); *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F. Supp. 190, 195–96 (E.D.N.Y. 1997) ("[T]he Advertisement does not contain any reference to Quality King…[t]herefore, Quality King's counterclaim of trade libel arising from the Advertisement fails to state a cause of action"); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) (allegedly defamatory statement must be "directed at the quality of a business's goods"); *see also Albion Eng'g Co v. Hartford Fire Ins. Co*, 779 F. App'x 85, 90 (3d Cir. 2019) ("New Jersey law…does not recognize a claim for implicit disparagement or defamation.").

*Second*, Plaintiffs fail to allege the requisite special damages. "'Special damages are limited to losses having pecuniary or economic value and must be *fully and accurately stated, with sufficient particularity to identify actual losses*.'" *Gucci Am., Inc.*, 277 F. Supp. 2d at 277 (emphasis in original) (quoting *Kirby v. Wildenstein*, 784 F.Supp. 1112, 1116 (S.D.N.Y. 1992)). Additionally, special damages must be the "'natural and immediate consequence of the disparaging statements' to be recoverable." *Gucci Am., Inc.*, 277 F. Supp. 2d at 277. It is well-settled that "'when loss of business is claimed, the persons who cease to be customers must be named *and* the losses itemized. ... Round figures or a general allegation of a dollar amount as special damages do not suffice. ... Where [the complainant] does not itemize but rather approximates its damages, in a

26

round figure…[t]he Court finds this is insufficient as a matter of law." *Id.* at 277–78 (quoting *Quality King Distribs., Inc.*, 974 F.Supp. at 198–99).

There is no specific articulation of damages here—round number or otherwise. The only allegation of pecuniary or economic harm is a vague and conclusory allegation that Plaintiffs "have seen their sales plummet" and that they have "spent a substantial amount on advertising to combat Caraway's…advertising." (Compl. ¶¶ 77, 78.) This is insufficient to allege special damages. *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021) (holding allegations of losses "in the amount of at least $1990" insufficiently particular to support a trade libel claim); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 292 (S.D.N.Y. 2016) (dismissing trade libel claim for failure to allege special damages where complaint alleged only that plaintiff "has and will continue to suffer significant monetary and reputational injury in amounts that will be proven at trial but that are believed to exceed $75,000"); *N. Am. Olive Oil*, 457 F. Supp. 3d at 231 (dismissing trade libel claim where plaintiff alleged only that "'[d]iscovery will further show special damages through money spent on corrective advertising'").

*Finally*, Plaintiffs also fail to allege, as they must, that Caraway's advertisements induced any customer to not buy plaintiffs' products. *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 609 (E.D.N.Y. 2021) ("A party alleging trade libel must establish that the communication was a substantial factor in inducing others not to conduct business with it and, unlike libel *per se*, must adduce proof of special damages in the form of lost dealings") (citation omitted). As discussed above, Plaintiffs merely allege that they "have seen their sales plummet," (Compl. ¶ 77), since Caraway began advertising its products. But "[i]f the special damage was a loss of customers…the persons who ceased to be customers, or who refused to purchase, must be named…[i]f they are not named, no cause of action is stated." *Enigma Software Grp. USA, LLC*,

27

194 F. Supp. 3d at 292 (citations omitted). Plaintiff's lone allegation is conclusory. Plaintiffs make no further attempt to specifically tie this alleged loss of sales to Caraway's advertising campaigns. Plaintiffs' common law trade libel claim should accordingly be dismissed. *Soter Techs.*, 523 F. Supp. 3d at 411 (dismissing trade libel claim where complaint "lack[ed] all but the most conclusory allegation that the alleged statements caused it to lose a sale.").

## V.    THE CLAIM FOR DECLARATORY JUDGMENT MUST BE DISMISSED

Plaintiffs' Count VII, for declaratory judgment, must be dismissed because "declaratory judgment is a remedy, not a cause of action." *Johnson v. Magnolia Pictures LLC*, 2019 WL 4412483, at *5 (S.D.N.Y. Sept. 16, 2019). Courts in this District do not permit declaratory judgment as an independent cause of action, even if parties may pursue a declaratory judgment as a remedy for viable claims. *Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, 737 F. Supp. 3d 195, 210 (S.D.N.Y. 2024) (dismissing declaratory judgment claim because "Plaintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action"); *Blue Angel Realty, Inc. v. United States*, 2022 WL 94599, at *14 (S.D.N.Y. Jan. 8, 2022) (noting that "declaratory judgments...are remedies, not causes of action") (citation and internal quotations omitted); *Haller v. Usman*, 2025 WL 605572, at *9 (S.D.N.Y. Feb. 25, 2025) (dismissing declaratory judgment claim because "[a] declaratory judgment is a remedy, not a cause of action").

## CONCLUSION

Based on the foregoing, Caraway respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety.

Date:   April 27, 2026
        New York, New York

KELLEY DRYE & WARREN LLP


By: */s/ Michael C. Lynch*
    Michael C. Lynch (Lead Trial Counsel)
    Damon Suden
    3 World Trade Center
    175 Greenwich Street
    New York, New York 10007
    Tel: (212) 808-7800
    mlynch@kelleydrye.com
    dsuden@kelleydrye.com

    John Villafranco*
    Melissa Byroade
    670 Maine Ave. SW
    Suite 600
    Washington, DC 20024
    jvillafranco@kelleydrye.com
    mbyraode@kelleydrye.com

    William Jackson*
    515 Post Oak Blvd.
    Suite 900
    Houston, Texas 77027
    wjackson@kelleydrye.com

    Robert A. Bilott*
    Taft Stettinius & Hollister LLP
    50 E. Rivercenter Blvd., Suite 850
    Covington, KY 41011 Tel: (513) 331-2838
    bilott@taftlaw.com

    Andrew D. Bochner
    Bochner PLLC
    1040 6th Ave, Suite 15B New York,
    New York 10018
    Tel. (212) 930-8229
    andrew@bochner.law

    * admitted *pro hac vice*

    *Attorneys for Defendant*
    *Caraway Home, Inc.*

29

**<u>TYPE-VOLUME CERTIFICATION</u>**

Pursuant to Local Civil Rule 7.1, I hereby certify that Caraway Home, Inc.'s Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint contains 8,560 words, which complies with the word-count limitations of Local Civil Rule 7.1(c). This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

Dated: New York, New York
　　　 April 27, 2026 　　　　　　　　　　　 */s/ Michael C. Lynch*　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　 Michael C. Lynch

30