## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Groupe SEB USA, Inc. and Meyer Corporation, U.S., <br><br> *Plaintiffs*, <br><br> v. <br><br> Caraway Home, Inc., <br><br> *Defendant*. | Civil Action No. 1:26-cv-01237-AS-SN |

**MEMORANDUM OF LAW OF PLAINTIFFS GROUPE SEB USA, INC. AND MEYER CORPORATION, U.S. IN OPPOSITION TO MOTION OF DEFENDANT CARAWAY HOME, INC. TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

     A.    SEB and Meyer ................................................................................................ 3

     B.    PTFE's Popularity and Safety ........................................................................ 4

     C.    Caraway's Campaign of False and Misleading Advertising is Part of its DNA .................................................................................................................. 4

     D.    The NAD Proceedings ..................................................................................... 6

     E.    Caraway's False Advertising Harms Plaintiffs and Consumers. ..................... 8

ARGUMENT ......................................................................................................................... 9

I.     PLAINTIFFS HAVE STATED A CLAIM UNDER THE LANHAM ACT .................. 10

     A.    Caraway's Advertisements Are False ............................................................. 11

          1.    Plaintiffs Allege that Many of Caraway's Advertisements Are Literally False .................................................................................... 11

          2.    Plaintiffs Allege that Many of Caraway's Advertisements Are False by Necessary Implication, Rendering them Literally False ........... 12

          3.    Plaintiffs Have No Obligation to Provide Extrinsic Evidence at the Pleading Stage to Allege Implied Falsity ................................... 14

     B.    Caraway's Advertisements Are Not Puffery ................................................... 16

     C.    Plaintiffs Adequately Pled Proximate Causation and Injury ........................ 18

II.    PLAINTIFFS HAVE STATED A CLAIM UNDER NEW YORK'S GENERAL BUSINESS LAW .................................................................................................... 21

III.   PLAINTIFFS STATE A CLAIM FOR COMMON LAW UNFAIR COMPETITION ........................................................................................................ 23

IV.   PLAINTIFFS HAVE STATED A CLAIM FOR COMMON LAW TRADE LIBEL ...................................................................................................................... 24

V.    PLAINTIFFS HAVE STATED A CLAIM FOR DECLARATORY JUDGMENT ....... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albion Eng'g Co v. Hartford Fire Ins. Co.*,
  779 F. App'x 85 (3d Cir. 2019)..................................................................................................... 25

*Alcon Vision, LLC v. Lens.com, Inc.*,
  2022 WL 1665453 (E.D.N.Y. May 25, 2022)................................................................................ 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................................... 9

*Avis Rent A Car Sys., Inc. v. The Hertz Corp.*,
  782 F.2d 381 (2d. Cir. 1986) ........................................................................................................ 13

*Bates v. Abbott Lab'ys*,
  727 F. Supp. 3d 194 (N.D.N.Y. 2024) .......................................................................................... 17

*BellSouth Telecomms v. Hawk Commc'ns, LLC*,
  2004 WL 1085324 (N.D. Ga. Apr. 12, 2004)................................................................................ 16

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  344 F.3d 211 (2d Cir. 2003) .......................................................................................................... 21

*Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*,
  655 F. App'x 9 (2d Cir. 2016)....................................................................................................... 23

*Casper Sleep, Inc. v. Mitcham*,
  204 F. Supp. 3d 632 (S.D.N.Y. 2016) .......................................................................................... 22

*Cedar Cmtys. at Staunton I, LLC v. A Place for Mom, Inc.*,
  2026 WL 504820 (S.D.N.Y. Feb. 23, 2026) ........................................................................... 20, 26

*Chobani LLC v. Dannon Co., Inc.*,
  157 F. Supp. 3d 190 (N.D.N.Y. 2016) .......................................................................................... 17

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
  843 F.3d 48 (2d Cir. 2016) ............................................................................................................ 10

*Cisco Sys., Inc. v. Synamedia Ltd.*,
  557 F. Supp. 3d 464 (S.D.N.Y. 2021) .......................................................................................... 27

*Cnty. Waste & Recycling Serv., Inc. v. Twin Bridges Waste & Recycling, LLC*,
  150 N.Y.S.3d 893 (N.Y. Sup. Ct. Albany Cnty. 2021) ................................................................ 23

*DeBlasio v. N. Shore Univ. Hosp.*,
  213 A.D.2d 584 (2d Dep't 1995)................................................................................................... 25

*Doe v. Uber*,
  551 F. Supp. 3d 341 (S.D.N.Y. 2021) ................................................................................................ 17

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020) ........................................................................................ 16, 17

*Eminah Props. LLC v. Energizer Holdings, Inc.*,
  531 F. Supp. 3d 593 (E.D.N.Y. 2021) ............................................................................................. 27

*Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  590 F. Supp. 2d 1244 (N.D. Cal. 2008) .......................................................................................... 25

*ESPN, Inc. v. Quiksilver, Inc.*,
  586 F. Supp. 2d 219 (S.D.N.Y. 2008) ............................................................................................. 10

*Euro-Pro Operating LLC v. Euroflex Americas*,
  2008 WL 5137060 (S.D.N.Y. Dec. 8, 2008) ................................................................................... 19

*Formulated Sols., LLC v. CKD, Inc.*,
  2005 WL 2413506 (E.D.N.Y. Sept. 29, 2005)  ............................................................................... 24

*Gaetano Assocs. Ltd. v. Artee Collections, Inc.*,
  2006 WL 330322 (S.D.N.Y. Feb. 14, 2006) ................................................................................... 23

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  277 F. Supp. 2d 269 (S.D.N.Y. 2003) ........................................................................................ 22, 26

*HipSaver, Inc. v. Kiel*,
  537, 984 N.E.2d 755 (Mass. 2013) .................................................................................................. 26

*Int'l Code Council, Inc. v. UpCodes Inc.*,
  43 F.4th 46 (2d Cir. 2022) ................................................................................................... 14, 17, 18

*John P. Villano Inc. v. CBS, Inc.*,
  176 F.R.D. 130 (S.D.N.Y. 1997) .................................................................................................... 10

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*,
  960 F.2d 294 (2d Cir. 1992) ............................................................................................................ 15

*Kacocha v. Nestle Purina Petcare Co.*,
  2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ................................................................................. 17

*Kirby v. Wildenstein*,
  784 F. Supp. 1112 (S.D.N.Y. 1992) ................................................................................................ 26

*Kuklachev v. Gelfman*,
  600 F.Supp.2d 437 (E.D.N.Y. 2009) ............................................................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................................... 18, 20

iii

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018) ................................................................................ 14

*M7 Industria E Comercio De Compensados E Laminados Ltda. v. U.S. Structural*
    *Plywood Integrity Coal.*, 2026 WL 774792 (S.D.N.Y. Mar. 18, 2026) ............................... 10

*Millennium Access Control Tech, Inc. v. On the Gate, LLC*,
    2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017) ............................................................. 19, 20

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
    2017 WL 3129799 (S.D.N.Y. July 21, 2017) ..................................................................... 21

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*,
    457 F. Supp. 3d 207 (E.D.N.Y. 2020) .......................................................................*passim*

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
    102 A.D.3d 5 (2d Dep't 2012) ............................................................................................ 21

*Noble Sec., Inc. v. ACCO Brands Corp.*,
    2018 WL 11542581 (S.D.N.Y. Mar. 31, 2018) ............................................................. 17, 22

*In re Petrobras Secs. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015) ................................................................................ 16

*Pro. Sound Servs., Inc. v. Guzzi*,
    2003 WL 22097500 (S.D.N.Y. Sept. 10, 2003) ................................................................. 11

*Procter & Gamble Co. v. Quality King Distribs.*,
    Inc., 974 F. Supp. 190 (E.D.N.Y. 1997) ............................................................................ 25

*Raineri Const., LLC v. Taylor*,
    63 F. Supp. 3d 1017 (E.D. Mo. 2014) ................................................................................ 26

*Rexall Sundown, Inc. v. Perrigo Co.*,
    651 F. Supp. 2d 9 (E.D.N.Y. 2009) .................................................................................... 15

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
    2014 WL 4723299 (S.D.N.Y. Sept. 23, 2014) ................................................................... 26

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
    2016 WL 815205 (S.D.N.Y. Feb. 29, 2016) ................................................................. 23, 24

*Sanderson Farms, Inc. v. Tyson Foods, Inc.*,
    549 F. Supp. 2d 708 (D. Md. 2008) .................................................................................... 16

*Scutti Enters., LLC. v. Park Place Ent. Corp.*,
    322 F.3d 211 (2d Cir. 2003) ................................................................................................. 9

*SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*,
    2020 WL 1322838 (S.D.N.Y. Mar. 20, 2020) .................................................................... 22

*Solmetex, LLC v. Dental Recycling of N. Am., Inc.*,
  2017 WL 2840282 (S.D.N.Y. June 26, 2017) ..................................................................... 24

*Soter Techs., LLC v. IP Video Corp.*,
  523 F. Supp. 3d 389 (S.D.N.Y. 2021) ................................................................................ 27

*Sweigert v. Goodman*,
  2024 WL 4493768 (S.D.N.Y. Oct. 11, 2024) .................................................................... 10

*Teilhaber Mfg. Co. v. Unarco Materials Storage, a Div. of Unarco Indus., Inc.*,
  791 P.2d 1164 (Colo. App. 1989) ...................................................................................... 26

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007) .................................................................................... 11, 13, 16

*Trackman, Inc. v. GSP Golf AB*,
  2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024) ......................................................... 14, 15, 19

*Tresóna Multimedia, LLC v. Pre-Cleared Ltd.*,
  2026 WL 480858 (S.D.N.Y. Feb. 19, 2026) ...................................................................... 15

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
  677 F. Supp. 3d 186 (S.D.N.Y. 2023) ................................................................................ 19

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
  309 F. Supp. 2d 401 (E.D.N.Y. 2004) ............................................................................... 13

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
  403 F. Supp. 3d 361 (S.D.N.Y. 2019) ............................................................................... 17

**Statutes**

15 U.S.C. § 1117................................................................................................................. 27

N.Y. Gen. Bus. Law § 349............................................................................................. 21, 22

N.Y. Gen. Bus. Law § 350................................................................................................... 21

**Other Authorities**

Fed. R. Civ. P. 8............................................................................................................. 1, 10

Fed. R. Civ. P. 9............................................................................................................. 1, 10

Fed. R. Civ. P. 12............................................................................................................. 1, 9

Restatement (Second) of Torts, § 633................................................................................ 25

Plaintiffs Groupe SEB USA, Inc. ("SEB") and Meyer Corporation, U.S. ("Meyer," collectively with SEB, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Caraway Home, Inc.'s ("Caraway") motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

This lawsuit is about Caraway's business strategy of obfuscating the truth and disregarding the science and other relevant facts to trick consumers into buying its much more expensive products. True to form, Caraway's motion follows the same pattern by misstating the applicable law, ignoring Plaintiffs' well-pled allegations, and including a multiplicity of extraneous facts that have nothing to do with this motion.[1] Based on the applicable law and the allegations of the Complaint, Plaintiffs have done more than enough to satisfy their burden at this stage, and the Court should deny Caraway's motion for at least the following reasons:

***First***, Caraway misapplies the applicable legal standard at the motion-to-dismiss stage. To begin, the weight of authority in this Circuit is that false advertising claims under the Lanham Act are governed by Rule 8(a)'s notice pleading standard, not the heightened requirements under Rule 9(b). Moreover, throughout its motion, Caraway demands that Plaintiffs tender evidence, such as consumer surveys proving consumers were deceived. But, unlike many of the cases Caraway relies upon, this is not a motion for summary judgment. Discovery has not yet occurred, and witnesses have not testified. At this stage, Plaintiffs need only state a plausible claim for relief. The Complaint more than satisfies that standard—and indeed goes further, for instance, by including

---

[1] Caraway falsely accuses Plaintiffs of "sheer hypocrisy" by citing advertisements in which Plaintiffs purportedly made similar statements. ECF No. 35 ("Mem.") at 2. Of course, Caraway's reference to matters outside the Complaint are improper under well-established precedent governing Rule 12(b)(6) motions and irrelevant to whether Plaintiffs have stated a claim. Regardless, *none* of the images in Caraway's brief make remotely the same claims as the ads cited or shown in the Complaint.

NAD decisions finding that many of the same Caraway advertisements that are the focus of this lawsuit were baseless and should be halted.

*Second*, Caraway's arguments that its advertisements are "true" or amount to "puffery" fall flat. Importantly, Caraway ***completely ignores*** seven of the advertisements in the Complaint— *e.g.*, advertisements emphasizing that PTFE-coated cookware causes cancer, "[f]ill[s] the air in your home with harmful, toxic fumes," and makes consumers sick—and thereby concedes that Plaintiffs have stated a claim. Even for the cherry-picked advertisements Caraway does address in its motion, Caraway considers each in isolation of Caraway's broader campaign and focuses on particular portions of those advertisements while ignoring false statements in those same ads, *e.g.*, statements that PTFE is "harmful." Mem. at 12-13.

*Third*, Caraway wrongly argues that Plaintiffs must present specific allegations establishing that a particular threshold of consumers switched their purchasing preferences as a direct result of Caraway's advertisement. But a plaintiff need only plausibly allege a direct connection between the false advertising and an injury to a protected interest, which includes sales lost to a competitor due to the alleged disparagement. That is precisely what has happened here: Caraway has flooded the market with advertising falsely claiming that PTFE is toxic and carcinogenic, and consumers have responded by replacing their PTFE-coated products.

*Fourth*, Caraway's attempt to dismiss Plaintiffs' New York General Business Law claims based upon a purported absence of harm to the "public at large" is meritless. Caraway's false advertising campaign tells millions of consumers that their cookware will give them cancer, respiratory disease, and kidney dysfunction. It is difficult to imagine conduct more "consumer-oriented" or more injurious messaging to the public interest than that.

***Lastly***, Caraway's arguments against Plaintiffs' common law claims fare no better. Plaintiffs have pled that Caraway's campaign deceived consumers in a manner that diverted trade from Plaintiffs—which is sufficient to state an unfair competition claim. Likewise, Plaintiffs' allegations that Caraway targets "traditional non-stick cookware" and "PTFE-coated" products like Plaintiffs' are enough to establish trade libel. And contrary to Caraway's arguments, Plaintiffs' detailed allegations of lost sales and reputational harm and Caraway's knowing falsity are sufficient to state a claim, and at this stage, Plaintiffs need not name every customer who ceased buying their products.

In short, the Complaint goes above and beyond what a plaintiff must do at the pleading stage: it identifies, with specificity, numerous false and misleading advertisements that Caraway disseminated across its website, social media platforms, email marketing, and video commercials; it explains why those ads and campaign as a whole are false and damaged Plaintiffs' businesses; and it includes decisions from an independent third party that also concluded the advertisements were not truthful pursuant to a process to which Caraway agreed. These allegations are more than sufficient to state a claim under the Lanham Act, New York General Business Law, and common law. The Court therefore should deny the motion.

## STATEMENT OF FACTS

### A.    SEB and Meyer

Plaintiffs SEB and Meyer are the two largest sellers of cookware and bakeware in the United States. Compl. ¶¶ 19–20. Plaintiffs offer cookware and bakeware ranging from budget to premium product lines, trusted by amateur home cooks and professional chefs alike. *Id.* ¶¶ 2, 22. Much of Plaintiffs' cookware and bakeware features non-stick coating, generally made from a polymer commonly referred to as polytetrafluoroethylene, or "PTFE." *Id.* ¶¶ 3, 27.

3

### B.     PTFE's Popularity and Safety

Per- and polyfluoroalkyl substances, or "PFAS," is a broad category encompassing thousands of compounds that vary dramatically. Compl. ¶ 5. PTFE is one of those thousands of types of PFAS. *Id.* PTFE is combined with binders and resins for durability and applied to cookware and bakeware across the United States. *Id.* ¶¶ 28-29. PTFE-coated products offer other significant advantages to consumers: they can be cleaned faster and with less effort than any other commonly-used material, they are affordable, and they allow even the most amateur chefs to prepare meals without food sticking to the pan. *Id.* ¶¶ 29–30.

While some types of PFAS may be harmful in certain contexts, using PTFE-coated cookware and bakeware under normal conditions is not. *Id.* ¶ 5. PTFE does not pose any health risks or have any measurable risk of contaminating consumers' food, homes, or bodies. *Id.* ¶ 4. As the FDA has explained, almost no PTFE from non-stick cookware migrates to food. *Id.* ¶ 31. Even if microscopic quantities of PTFE are accidentally ingested, gastrointestinal absorption is effectively impossible, preventing toxicity from normal use. *Id.* No federal regulator has concluded that cooking with PTFE-coated cookware poses health risks; the Consumer Product Safety Commission has rejected calls for warning labels on PTFE-based non-stick cookware; the American Cancer Society has stated that there are no proven risks to humans using PTFE cookware; and the International Agency for Research on Cancer has found that PTFE has no toxicological impact and cannot be classified according to its carcinogenicity. *Id.* ¶¶ 33, 61.

### C.     Caraway's Campaign of False and Misleading Advertising is Part of its DNA

Despite the scientific evidence to the contrary, Caraway has always relied on the false premise that PTFE is dangerous. *Id.* ¶ 36. As part of its marketing, Caraway claims that its founder started the company after he allegedly got sick with "Teflon Flu" from overheating a "non-stick PTFE (aka Teflon) coated pan"—an anecdote that appears prominently on Caraway's website. *Id.*

4

That story strains credulity. "Teflon Flu" is a marketing buzzword that refers to temporary nausea symptoms that simply do not occur under ordinary use of traditional non-stick cookware. *Id*. ¶ 38. Nevertheless, beginning with that origin story, Caraway has focused its marketing on objectively false statements about PTFE-coated cookware: that traditional non-stick cookware will emit toxic fumes into the air, release harmful chemicals into food, and make consumers sick—often without further qualification. *See, e.g.*, *id*. ¶ 43 (ad shown at right).



The advertisements cited in the Complaint are merely examples of Caraway's pervasive campaign, which also include ads on the company's website, paid social media advertising, and in text-based posts, images, and video commercials, and emailed directly to consumers. *Id*. ¶¶ 40-41. The central false claim in Caraway's ads is that traditional non-stick cookware will degrade when heated, seeping PFAS (including PTFE) into food and air. *Id*. ¶ 42. Caraway falsely labels competitors' PTFE-coated products as "Toxic Cookware" that will "fill the air in your home with harmful, toxic fumes and forever chemicals," (*id*. ¶ 43), warns consumers that "[t]raditional non-stick pans" are dangerous because they "release toxic fumes that can be harmful to pets and humans" (*id*. ¶ 45), and claims that after just "150 seconds," a "traditional non-

stick pan" can "release dangerous chemicals" causing "cancer or respiratory issues" *(id.* ¶ 59). The Complaint clearly alleges that these claims are false. *Id.* ¶¶ 31-35.

Going hand-in-hand with its false and threatening premise, Caraway *simultaneously* offers as the solution its own products as "non-toxic," "PFAS-free," "safe," and "healthy"—sending the false message that consumers who do not switch to Caraway will be exposed to toxic, unsafe chemicals. *Id.* ¶ 54. Its ads urge consumers to "trust Caraway" to keep "you and your family safe from forever chemicals . . . PFAS, PTFE, and every other harmful acronym," creating the impression that consumers should pay more for Caraway products to avoid allegedly "toxic products." *Id.* ¶¶ 55-57.

### D.    The NAD Proceedings

Over 50 years ago, the advertising industry established the National Advertising Division ("NAD") and the National Advertising Review Board ("NARB") as an independent system of self-regulation designed to build consumer trust in advertising. *Id*. Ex. A at 1. The NAD reviews advertising to set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. *Id*. An NAD proceeding is participatory in nature and is self-regulatory. *Id*. Ex. A at 16.

In 2012, the NAD reviewed a complaint against GreenPan, a seller of ceramic cookware, for its misleading ads about PTFE-coated cookware. *Id.* As part of its ruling, the NAD reviewed GreenPan ads implicitly claiming, among other things, that its pans were "healthier, safer and better-performing than other non-stick cookware," and that "[a]ll PTFE non-stick coatings are unsafe." *Id.* ¶ 67. Just like Caraway, GreenPan suggested that PTFE somehow decomposed when heated, leading to health issues caused by direct exposure. *Id.* The NAD ruled that GreenPan's ads were unfounded and that overheating PTFE to the kind of temperatures that could cause decomposition was highly unlikely to ever occur through typical use. *Id.* ¶ 68.

6

In August 2025, the NAD reviewed *Caraway's* PTFE-related advertising. *Id.* ¶ 70; *id.* Ex. A at 10.[2] In that ruling, the NAD concluded that Caraway "did not meet its burden of providing a reasonable basis for claims that competing non-stick cookware is toxic." *Id.* The NAD further found that "PTFE is safe under typical use conditions" and that the evidence Caraway put forward to substantiate its claims was "a poor fit for the challenged claims" about the safety of PTFE-based non-stick cookware. *Id.* ¶ 10; *id.* Ex. A at 7–8, 10. The NAD recommended that Caraway discontinue claims that competing non-stick cookware is toxic and that Caraway stop telling its "Teflon Flu" origin story "in a context that would suggest that competitor cookware is toxic or is likely to cause Teflon Flu." *Id*. ¶ 10; *id*. Ex. A at 14. The NAD also recommended that Caraway avoid making certain claims that "convey[] the message that competitor non-stick cookware is toxic," including "no forever chemicals here" and "make everyday meals healthier without harmful chemicals." *Id*. ¶ 10.

Significantly, Caraway did not contest the NAD's findings and "agreed to comply with NAD's recommendation" that it take down non-compliant advertisements. *Id.* ¶ 11; *id.* Ex. B at 3. But in October 2025, the NAD asked Caraway to provide an update on its compliance efforts after the NAD received concerns about noncompliant claims continuing to appear in social media. *Id.* Ex. B at 2. As a result of the compliance inquiry, the NAD identified additional noncompliant social media posts, which Caraway only then removed. *Id*. at 3. The NAD cautioned Caraway to

---

[2] Caraway argues that Plaintiffs violated a NAD rule prohibiting parties to NAD proceedings from disseminating NAD/NARB decisions without prior written permission. Mem. at 18 n.4. This rule, of course, is irrelevant to whether Plaintiffs have stated a claim. Either way, the rule applies only to "the parties" to a proceeding, not non-parties like Plaintiffs. *See* BBB National Programs, The Advertising Industry's Process of Voluntary Self-Regulation § 2.1(I)(2) (Mar. 16, 2026); Compl. Ex. A at 1, Ex. B at 1. Moreover, the BBB publishes NAD decisions in full on its Online Archive (*see* BBB National Programs, Online Archive, available at https://bbbprograms.org/media/online-archive (last visited June 1, 2026)).

continue to monitor for compliance, especially given the impending holiday season. *Id*. Caraway again agreed to comply with the NAD's recommendation. *Id*. The NAD, relying on Caraway's representations, concluded that Caraway had made a good-faith effort to comply and closed the compliance proceeding. *Id*.

Despite its promise, Caraway still has not taken down many of the relevant advertisements. *Id*. ¶ 12. Plaintiffs have even identified several new advertisements, first displayed in January 2026, that flagrantly violate the spirit and letter of the NAD proceedings and Caraway's obligations under state and federal law. *Id*. ¶ 12. Plaintiffs' complaint followed on February 13, 2026.

### E.    Caraway's False Advertising Harms Plaintiffs and Consumers.

Caraway's advertising scheme has reached, and harmed, Plaintiffs and millions of consumers across the country. *Id*. ¶ 75. For those convinced by Caraway's deceptive ads, PTFE-coated kitchen appliances are irreparably smeared as a toxic, carcinogenic product that have no business in the home and expose families to cancer, respiratory issues, gut disease, and kidney disease. *Id*. ¶ 75.

Caraway's false and misleading advertising campaign has been remarkably effective in scaring customers into buying its products. *Id*. ¶¶ 74, 76. After just a few short years in the market, Caraway has gone from an unknown start-up to a major competitor in the cookware and bakeware industry. *Id.* Caraway's false and misleading claims and comparisons have embedded themselves in the minds of consumers, convincing them that the only way to ensure their safety is to buy non-PTFE cookware and bakeware from Caraway. *Id.* And because Caraway's proposed substitute "safe" pans are substantially more expensive than PTFE-coated pans, Caraway has been able to charge higher prices for its ceramic-coated cookware and bakeware—harming consumers who are induced to overpay for products they do not need. *Id.* ¶¶ 9, 13.

At the same time, SEB and Meyer have suffered enormously. *Id*. ¶ 77. Since Caraway began its campaign of falsely depicting traditional non-stick cookware and bakeware as dangerous, sales of Plaintiffs' PTFE-coated products have plummeted. *Id*. ¶ 77. Moreover, Plaintiffs have been forced to engage in counter-measures to protect their businesses from Caraway's falsehoods, including (i) advertising to combat Caraway's false advertising and assure consumers of the safety of PTFE-coated cookware and bakeware, (ii) promoting accurate and independent scientific research on the safety of PTFE, and (iii) investing in efforts to hold Caraway accountable and recapture lost market share. *Id*. ¶ 78.

Caraway's decision to continue running false advertisements, despite the NAD's decision, has compounded the enormous financial harms that Plaintiffs have suffered. *Id*. ¶ 13. Even if Caraway were to pull down every false and misleading statement today, Plaintiffs' injuries will continue indefinitely. *Id*. ¶ 79. Consumers have already been poisoned by Caraway's advertising scheme, and a sizable portion of the public has been permanently convinced of the fictitious dangers of PTFE-coated cookware and bakeware. *Id*.

## **ARGUMENT**

At the pleading stage, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged" (*id*.), "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Scutti Enters., LLC. v. Park Place Ent. Corp.*, 322 F.3d 211, 214 (2d Cir. 2003). A court should not dismiss a claim under Rule 12(b)(6) "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Id.*

Caraway's motion begins with a false legal premise: that the heightened pleading standard of Rule 9(b) applies to Plaintiffs' false advertising claims. Mem. at 8–9. But as Caraway reluctantly concedes, "the majority view is to the contrary" of their argument. *Id*. at 8. The weight of authority within this Circuit holds that false advertising claims under the Lanham Act, unfair and deceptive and false advertising claims under New York General Business Law, and common law unfair competition and trade libel claims are governed by Rule 8(a)'s notice pleading standard. *See, e.g.*, *M7 Industria E Comercio De Compensados E Laminados Ltda. v. U.S. Structural Plywood Integrity Coal*., 2026 WL 774792, at \*14 (S.D.N.Y. Mar. 18, 2026); *John P. Villano Inc. v. CBS, Inc*., 176 F.R.D. 130, 131 (S.D.N.Y. 1997); *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 229 (E.D.N.Y. 2020) (Rule 8(a), not Rule 9(b), applies to GBL claims); *ESPN, Inc. v. Quiksilver, Inc*., 586 F. Supp. 2d 219, 225 (S.D.N.Y. 2008) (same, for common law unfair competition claims); *Sweigert v. Goodman*, 2024 WL 4493768, at \*4 (S.D.N.Y. Oct. 11, 2024) (same, for trade libel).

Even if the Court did apply Rule 9(b), the Court should still deny the motion, as the Complaint details the ads that are fraudulent (with screenshots), identifies the "speaker" (*i.e.*, where the ad is from), states when the ad was available, and explains why the ads are false. A complaint against Caraway detailing every false advertisement during the statute of limitations period would likely comprise hundreds of pages. Plaintiffs can compile such an onerous complaint if need be, but it is not required under the applicable law nor would it serve any purpose—as Caraway above others is most familiar with and has the best documentation of its own advertising.

## I.    PLAINTIFFS HAVE STATED A CLAIM UNDER THE LANHAM ACT

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v.*

10

*SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 65 (2d Cir. 2016).[3] Caraway only challenges the Complaint's allegations of falsity, causation, and injury. These arguments fail.

### A.    Caraway's Advertisements Are False

A plaintiff may establish falsity by alleging that the challenged advertisement is "literally false, *i.e.*, false on its face," or that it is impliedly false, meaning it is "nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). A statement is also "literally false" (rather than impliedly so) when it is "false by necessary implication," meaning that the advertisement's "words or images, considered in context, necessarily and unambiguously imply a false message." *Id*. at 158. In determining whether an advertisement is literally false by necessary implication, courts "must analyze the message conveyed in full context" and not "engage in disput[ed] dissection." *Id.* (citations omitted).

### 1.    *Plaintiffs Allege that Many of Caraway's Advertisements Are Literally False*

Caraway asserts that Plaintiffs' Lanham Act claims rest entirely "on an implied falsehood theory." Mem. at 14. Not so. The Complaint alleges that Caraway made "a series of objectively false statements about PTFE-coated cookware" (Compl. ¶ 39) and cites numerous advertisements that are literally false—all of which Caraway ignores. For example, the Complaint cites Caraway advertisements describing PTFE-coated cookware as "[t]oxic [c]ookware" and "[t]oxic [p]ans" (*id.* ¶¶ 43, 49) and calling PTFE a "harmful chemical[]" (*id.* ¶ 46). The Complaint also cites multiple Caraway ads stating that traditional non-stick products:

---

[3] Because the challenged elements are the same for both false advertising and commercial disparagement under the Lanham Act, the arguments in this section apply to both Counts I and II. *See Pro. Sound Servs., Inc. v. Guzzi*, 2003 WL 22097500, at *2 (S.D.N.Y. Sept. 10, 2003) (describing elements of product-disparagement claim under the Lanham Act).

11

- Are "[t]oxic [c]ookware" because they "[f]ill the air in your home with harmful, toxic fumes and forever chemicals" (*id.* ¶ 43),

- Contain "chemicals [that] can release toxic fumes that can be harmful to your family's health" (*id.* ¶ 45),

- "[R]elease toxic fumes that can be harmful to pets and humans" (*id.*),

- Are "[t]oxic [p]ans" that contain "chemicals that leach into your food" (*id.* ¶ 49),

- Contain "harmful chemicals, like Teflon, which can actually release into the air and your food" (*id.* ¶ 51),

- Contain "PTFE" that "enter[s] your home-cooked meals from the tools you use to prepare your food" (*id.* ¶ 59), and, most fictionally,

- "[R]elease dangerous chemicals" that cause "cancer or respiratory issues" after just "150 [s]econds" of use (*id.*).

Any claim that PTFE or PTFE coatings in cookware is harmful, dangerous, toxic, or carcinogenic is one that is untrue on its face. These are not ambiguous statements that require a reader to make any inferences. Rather, they are clear but false statements that purport to convey factual, scientifically valid information about the nature of PTFE and the health risks of using PTFE-coated cookware.

### 2. Plaintiffs Allege that Many of Caraway's Advertisements Are False by Necessary Implication, Rendering them Literally False

In addition to statements that are false on their face, the Complaint contains statements that are literally false by necessary implication. Caraway's statements that traditional, PTFE-coated cookware or bakeware "releases" or "leach[es]" PTFE into the air or food when heated (*e.g., id.* ¶¶ 44, 45, 49, 59) conveys the unambiguous message that consumers will consume PTFE when using that cookware under ordinary household use (*id.* ¶¶ 52, 54)—even though they will not.

*Id.* ¶ 34. Likewise, even ads that do not directly claim that PTFE is dangerous and toxic necessarily imply that message. Any reader who sees Caraway claim that its "[c]ookware [s]et" is "[n]on-toxic and PTFE-free" will conclude that Caraway's products are "[n]on-toxic" *because* they are "PTFE-free," and that PTFE in cookware therefore is toxic. *Id.* ¶ 58; *see also id.* ¶ 47 (claiming Caraway products have a "NON-TOXIC COATING" because it is "[m]ade without PTFE").

Similarly, claims that Caraway products are superior because they are made "without forever chemicals" (*id.* ¶ 50) or are "non-toxic" (*id.* ¶¶ 48, 55) inherently send an unambiguous message that Caraway's competitors (including Plaintiffs) sell toxic products full of forever chemicals, which is false. These advertisements are especially vulnerable to this interpretation because, as the Complaint details, Caraway does not run its "non-toxic" ads in the abstract. Rather, Caraway scares the public with the false premise that non-stick cookware containing PTFE is toxic, then offers as its minor premise an unnecessary solution—marketing its cookware as comparatively safe and toxin-free, thereby reinforcing its message that PTFE in cookware is harmful. *Id.* ¶¶ 43-51. Taken in context, Caraway's fallacious syllogism is sufficient to allege falsity. *See Time Warner Cable, Inc.*, 497 F.3d at 158 ("If the words or images, *considered in context*, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required.") (emphasis added).

Caraway's justification of these ads misses the mark because Caraway's argument requires viewing its ads in isolation rather than as part of a larger picture. In support of its false premise, Caraway cites a Connecticut case from 1970, and two out-of-circuit cases. Mem. at 10-11. But Second Circuit caselaw is to the contrary: "Context of the advertisement is critical, for it is 'fundamental to any task of interpretation . . . that text must yield to context.'" *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 404 (E.D.N.Y. 2004) (quoting *Avis Rent A*

13

*Car Sys., Inc. v. The Hertz Corp.*, 782 F.2d 381, 385 (2d. Cir. 1986)). Having deliberately chosen to follow "their pans are toxic" advertising with assertions that Caraway pans are non-toxic, Caraway must face the consequences.

### 3.    *Plaintiffs Have No Obligation to Provide Extrinsic Evidence at the Pleading Stage to Allege Implied Falsity*

Even under an "impliedly false" framework that Caraway uses, the Complaint adequately alleges the requirements for implied falsity. A claim of implied falsity is stated when an advertisement "leaves 'an impression on the listener or viewer that conflicts with reality,'" even when those "false statements can be ambiguous." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 65 (2d Cir. 2022). Caraway's ads plainly each have *actually* left the false impression that cookware containing PTFE causes myriad health issues, which has caused consumers to switch their purchasing decisions. *See* Compl. ¶¶ 8, 9, 48, 50, 52, 57, 74-77.

Instead of disputing that premise, Caraway relies on a purported requirement that Plaintiffs do not "present extrinsic evidence of consumer deception or confusion." Mem. at 15. This argument is specious. While ***alleging*** consumer deception is a sub-element of implied falsity, a plaintiff need not plead admissible evidence to state a claim at this stage. "At the [pleading stage], plaintiffs need only state that there was confusion and offer facts to support that claim." *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 470 (E.D.N.Y. 2009) (rejecting defendants' argument that "plaintiffs can only establish their claim of false advertising through a survey" as "misconstru[ing] the standard"); *see also Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 n.2 (S.D.N.Y. 2018) ("[T]he absence of such survey data or other extrinsic evidence attached to or referenced in the complaint is not fatal at the pleading stage.").

The recent and thorough decision in *Trackman, Inc. v. GSP Golf AB*, 2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024), is instructive. The *Trackman* plaintiffs alleged that "consumers relied

on . . . implicitly false statements and were drawn to [defendant] as a direct result of them." 2024 WL 4276497, at \*16. Based on that allegation, the court held that, "[w]hile plaintiff will have to develop evidence of customer confusion in discovery to substantiate its claim, these allegations are enough, at this stage, to establish" consumer deception and therefore denied the defendants' motion to dismiss. *Id*. The same result is warranted here.

None of Caraway's cases call for a different result. Several of Caraway's cases involved rulings *after trial or summary judgment*—not rulings at the pleading stage. *See Johnson & Johnson-Merck Consumer Pharms. Co. v. Smithkline Beecham Corp*., 960 F.2d 294, 296 (2d Cir. 1992) (trial); *Rexall Sundown, Inc. v. Perrigo Co*., 651 F. Supp. 2d 9, 13 (E.D.N.Y. 2009) (summary judgment). And Caraway's other cases involved complaints that completely failed to connect the challenged advertisements and consumer purchasing decisions. *See Alcon Vision, LLC v. Lens.com, Inc*., 2022 WL 1665453, at \*5 (E.D.N.Y. May 25, 2022) (no rational connection between "Rx Only," "®", "™", and "©" symbols on a product and alleged consumer confusion); *Tresóna Multimedia, LLC v. Pre-Cleared Ltd*., 2026 WL 480858, at \*6 (S.D.N.Y. Feb. 19, 2026) (plaintiff did not allege "any evidence of consumer confusion" where the complaint merely "note[d] a complex legal area" and failed to explain "how [consumers' purchasing] decisions were because of [defendant's] . . . statements"); *N. Am. Olive Oil Ass'n*, 457 F. Supp. 3d at 223-24 (no well-pled allegations "suggesting why [the claim] is false").

Here, Plaintiffs offer more than just allegations of potential deception: the NAD's rulings on Caraway's advertising make clear that consumers will actually interpret Caraway's advertisements as claiming that ordinary use of PTFE-coated cookware will make them sick. *See* Compl. Ex. A. Specifically, the NAD considered Caraway's anti-PTFE advertising and found that "[i]n this context, conveying a message that Caraway nonstick cookware is healthier and safer than

competitor nonstick cookware is unavoidable." *Id.* at 13. Courts generally find the NAD's interpretation of the misleading nature messaging of advertising to be persuasive. *See, e.g., Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708, 718 n.7 (D. Md. 2008); *BellSouth Telecomms v. Hawk Commc'ns, LLC*, 2004 WL 1085324, at *12 (N.D. Ga. Apr. 12, 2004). Given the well-pleaded allegations in the Complaint, and the corroboration by the NAD, Plaintiffs have easily met their burden at this stage.

### B.    Caraway's Advertisements Are Not Puffery

Caraway also incorrectly contends that seven of the challenged advertisements are puffery. Puffery encompasses (1) "[s]ubjective claims about products, which cannot be proven either true or false," or (2) "exaggerated, blustering, and boasting statement[s]" so grossly exaggerated that "no reasonable buyer would take [them] at face value." *Time Warner Cable, Inc.*, 497 F.3d at 159–60. But when a "statement is a specific and testable representation" about a product, it is not puffery because it "falls easily within the realm of statements that can be proven true or false." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 347 (S.D.N.Y. 2020).

Each advertisement Caraway argues is "puffery" in fact makes objectively verifiable claims (both literally and by implication) about health and safety. *See* Mem. at 11-14. For instance, it is not mere "puffery" or truthful for Caraway to advertise that cookware with PTFE is unhealthy—for instance, by advertising that its cookware is "[f]ree from harmful chemicals like PTFE"; that consumers should trust Caraway to keep them "safe" from "PTFE[] and every other harmful acronym"; or that foods made with Caraway products "taste sweeter without forever chemicals." Compl. ¶¶ 46, 50, 56. Likewise, within the context of its broader advertising campaign attacking PTFE-coated cookware, Plaintiffs' advertisements contending that Caraway's products are "non-toxic" or "safer" (*id.* ¶¶ 48, 55, 58) reinforce these untrue statements. *See, e.g.*, *In re Petrobras Secs. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) ("Whether a representation is

16

'mere puffery' depends, in part, on the context in which it is made."). When advertisements like these leave clear impressions about verifiable, falsifiable facts, the puffery defense fails. *See, e.g.*, *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *17 (S.D.N.Y. Aug. 12, 2016) (advertisement showing "cartoon dog salivating while reaching for a crispy piece of bacon" was not puffery because bacon content of product was not subjective); *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 62 (2d Cir. 2022) (statement that defendant's products were "always up to date" was not puffery because it is "an explicit claim about the quality of its products"); *Duran*, 450 F. Supp. 3d at 347 (hair product label claiming "no flakes" was not puffery because the "statement is a specific and testable representation that the Product will not cause flaking").

Caraway's reliance on cases featuring only vague statements about a general quality of the products is unavailing. *See Doe v. Uber*, 551 F. Supp. 3d 341, 367-69 (S.D.N.Y. 2021) (statement that Uber rides are "safe" is puffery, but statement that Uber offers the "safest rides on the road" is not); *Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 215-16 (N.D.N.Y. 2024) (advertisement of "complete" and "advanced" nutrition was puffery); *Noble Sec., Inc. v. ACCO Brands Corp.*, 2018 WL 11542581, at *6 (S.D.N.Y. Mar. 31, 2018) (statements that product could be used "effortlessly" was puffery); *N. Am. Olive Oil Ass'n*, 457 F. Supp. 3d at 224 (statements that were "vague and lacking in precise meaning" were puffery); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 370-71 (S.D.N.Y. 2019) (general claims "promoting a 'healthier you'" were puffery). None of those statements resemble those at issue here, where Caraway made non-subjective claims about the health and safety of their own products and competing products. *See, e.g.*, *Chobani LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 201-02 (N.D.N.Y. 2016) (rejecting puffery defense where advertisements used "negative phrasing in connection with other statements and images that paint [competitor's] products as a safety risk"); and *Int'l Code Council, Inc.*, 43

F.4th at 60-61 ("[A]n advertiser treads a far different line when it not only lauds its own products, but directly attacks a competitor.").

### C.    Plaintiffs Adequately Pled Proximate Causation and Injury

Caraway's argument that Plaintiffs failed to sufficiently plead causation and injury is also wrong. To state a Lanham Act claim, a plaintiff need only allege injury to "a commercial interest in reputation or sales" that is "proximately caused" by the defendant's Lanham Act violation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). This requires alleging "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. Notably, "diversion of sales to a direct competitor [is] the paradigmatic direct injury from false advertising." *Id.* at 138.

Plaintiffs easily meet their burden by alleging lost sales of competing products, which is exactly the type of injuries that fall squarely within the Lanham Act's protective zone. Compl. ¶¶ 77, 83, 85–86. Specifically, Plaintiffs allege that Caraway's advertising campaign has caused their own sales to plummet. *Id*. ¶¶ 9, 77. Plaintiffs have also alleged reputational harm because Caraway's advertising has damaged the reputation and goodwill associated with Plaintiffs' products. *Id*. ¶¶ 75, 84, 92. These are "injuries to precisely the sorts of commercial interests the [Lanham] Act protects." *Lexmark*, 572 U.S. at 137.

Moreover, the Complaint plausibly alleges that Caraway's false advertising proximately causes these injuries. The causal chain is direct and unambiguous: Caraway falsely tells consumers that traditional non-stick cookware is "toxic" and will cause "cancer or respiratory issues"; consumers, believing these lies, buy Caraway's products instead of Plaintiffs'; and Plaintiffs lose sales as a result. Compl. ¶¶ 42–43, 52, 59, 74, 77. There is no discontinuity between injury to direct and indirect victims because Plaintiffs' injuries flow directly from consumers' reliance on

Caraway's false claims. What is more, the Complaint further alleges that Plaintiffs have been "forced to engage in counter-measures to protect their businesses from Caraway's falsehoods," including spending "a substantial amount on advertising" to combat Caraway's false claims (*id.* ¶ 78), which constitutes an additional cognizable injury.

Even if not entitled to a presumption of harm,[4] Plaintiffs have met their burden. Caraway contends that Plaintiffs have not adequately alleged injury because the Complaint only contains "[b]are allegations." Mem. at 19 (citing *Millennium Access Control Tech, Inc. v. On the Gate, LLC*, 2017 WL 10445800, at *11 (E.D.N.Y. Feb. 14, 2017)). But in *Millennium Access*, the defendant's alleged misrepresentations did not disparage anyone, but instead merely took credit for "advancing [a] new technology" and touted their own "knowledge and insight." *Id.* at *6. That is obviously not the case here, where Plaintiffs' allegations specifically connect Caraway's pejorative false statements to the damage and harm that Plaintiffs face. *See Trackman, Inc.*, 2024 WL 4276497, at *14 (S.D.N.Y. Sept. 24, 2024); *see also Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 201 (S.D.N.Y. 2023) (denying motion to dismiss where there was "no break in continuity between this purported deceptive advertising and [plaintiff's injury]").

*Trackman* is directly on point. There, the plaintiff—a golf simulator company—alleged that the defendants made misleading statements promoting the defendant's own competing platform by falsely suggesting they were licensed to offer "iconic, branded golf courses like St.

---

[4] Contrary to Caraway's arguments, there is no rule requiring a defendant to name the plaintiff in its false advertisements for the presumption to apply. Indeed, courts have applied the presumption of harm when a defendant makes misleading comparative claims against the products sold by "traditional," "ordinary," or "regular" counterparts without mentioning them by name, when the plaintiff is "the market-leader" in selling those products. *Euro-Pro Operating LLC v. Euroflex Americas*, 2008 WL 5137060, at *5 (S.D.N.Y. Dec. 8, 2008). The Court likewise can presume that Caraway's false advertisements have injured Plaintiffs.

Andrews" and "various PGA Tour Tournament Players Club courses." 2024 WL 4276497, at *4. The defendants' advertising did not mention the plaintiff by name. *Id.* at *4, 14–18. Nevertheless, the court denied the motion to dismiss and rejected the defendants' argument that the plaintiff failed to adequately plead injury. *Id.* at *18. The court reasoned that it was sufficient for the plaintiff to allege that the defendant's advertisements "diverted" "[u]sers who otherwise would have purchased [plaintiffs' products]." *Id.* (citation omitted). The court further held that this was "sufficient to establish harm because 'diversion of sales to a direct competitor [is] the paradigmatic direct injury from false advertising.'" *Id.* (quoting *Lexmark*, 572 U.S. at 138). So too here, where Plaintiffs allege that Caraway's false advertising has caused Plaintiffs' sales to "plummet" and diverted customers to Caraway's products. Compl. ¶¶ 9, 77.

In contrast, all of Caraway's cited cases involved circumstances where plaintiffs asserted non-existent or convoluted connections between the alleged false advertisements and resulting harms. *See N. Am. Olive Oil Ass'n*, 457 F. Supp. 3d at 223 (plaintiff did not manufacture or sell competing olive oil); *Millennium Access*, 2017 WL 10445800, at *6, *13 (complaint was "devoid of any factual allegations" regarding causation); *Cedar Cmtys. at Staunton I, LLC v. A Place for Mom, Inc.*, 2026 WL 504820, at *3 (S.D.N.Y. Feb. 23, 2026) (plaintiff's injury based on "speculative chain of events").

In short, Caraway's ads falsely state that products containing PTFE (like Plaintiffs') cause cancer and fill users' food and home with toxic fumes, causing Plaintiffs to sell fewer products. It is hard to imagine a more straightforward case of injury than that. Thus, the Complaint adequately pleads that Plaintiffs have suffered—and will continue to suffer—harm as a direct and proximate result of Caraway's false advertising campaign. Compl. ¶¶ 77–79, 84–86, 92, 94.[5]

---

[5] Caraway also half-heartedly argues that any injury to Plaintiffs could have been caused by factors other than Caraway's advertising, such as (i) Plaintiffs' own advertising of PTFE-free products,

## II.    **PLAINTIFFS HAVE STATED A CLAIM UNDER NEW YORK'S GENERAL BUSINESS LAW**

Plaintiffs' claims under Sections 349 and 350 of New York's General Business Law ("GBL") are also well-pled and survive dismissal.

Caraway first argues that Plaintiffs did not adequately plead harm to the public. Mem. at 21. But the Complaint alleges that Caraway "has engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York and to the public at large." Compl. ¶¶ 97, 105. It further alleges that Caraway's statements falsely "tell consumers that using Plaintiffs' cookware and bakeware will make them sick and release 'toxic' fumes into their homes." *Id.* ¶¶ 98, 106. And it alleges that "[c]onsumers do, in fact, rely on these statements when making their purchasing decisions" and that "the testimonials from consumers that Caraway uses in its advertisements confirm this reliance." *Id.* ¶ 107.

Those allegations more than satisfy the GBL, which merely requires establishing that "defendant's acts and practices . . . ha[d] a broad impact on consumers at large," as opposed to a "specific quantifiable harm to the public at large." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 14 (2d Dep't 2012) (citations omitted). And courts regularly have upheld GBL claims where, as here, they implicate consumer safety. *See, e.g.*, *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir. 2003); *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, 2017 WL 3129799, at *14 (S.D.N.Y. July 21, 2017) (challenged statements caused consumer confusion about "the relative quality, effectiveness, and reliability" of the parties' competing products and harmed the public).

---

(ii) similar messages from other competitors, or (iii) negative news about PTFE. Mem. at 17 n.3. But unsupported speculation about alternate causation is outside the pleadings and inappropriate at the motion-to-dismiss stage.

21

Unlike Caraway's cases,[6] Plaintiffs' claims go beyond its own business considerations. Plaintiffs are not, for instance, suing Caraway based on advertisements about how fast a product cooks food or how evenly it distributes heat. Instead, Caraway's ads tell consumers that using Plaintiffs' products will cause specific health problems, including cancer. Whether people get cancer from using their cookware is undoubtedly an issue of public concern. Caraway is frightening consumers into believing that products they use daily—products that have been found safe by the FDA and the Consumer Product Safety Commission for decades—will harm them and their families. This is precisely the type of consumer-oriented misconduct that "has significant ramifications for the public at large." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (internal quotation marks omitted).

Caraway also briefly argues that the GBL claims should be dismissed for the same reason as the Lanham Act claims. Mem. at 22. Of course, Plaintiffs' Lanham Act claims should survive for the reasons explained above. But more fundamentally, "the relevant question under § 349 is whether defendants are engaged in a deceptive act or practice and not whether they have plausibly engaged in false advertising under the Lanham Act." *See Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 644 (S.D.N.Y. 2016) ("there is nothing inconsistent about allowing plaintiff's [Section] 349 claim to proceed in its entirety while dismissing plaintiff's Lanham Act claim in substantial part"). Because Plaintiffs have plausibly alleged that Caraway used materially misleading statements, to consumers, and caused injury, the Court should not dismiss Caraway's GBL claims.

---

[6] *E.g., Noble Sec., Inc.*, 2018 WL 11542581, at *8 (complaint alleged only lost sales of lock devices); *SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*, 2020 WL 1322838, at *3–4 (S.D.N.Y. Mar. 20, 2020) (case concerned plaintiff's "direct-to-consumer clear aligner therapy").

### III.    PLAINTIFFS STATE A CLAIM FOR COMMON LAW UNFAIR COMPETITION

Caraway's argument that Plaintiffs "purport to bring this claim under the laws of a multitude of unidentified states" is also baseless. Mem. at 23. Caraway does not cite a single decision from within the Second Circuit holding that a complaint's reference to "all other applicable jurisdictions" warrants dismissal. In actuality, the Second Circuit has stated the opposite. *E.g.*, *Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) ("[C]hoice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage.") (collecting cases). Indeed, where a plaintiff brings both Lanham Act claims and related common-law torts, courts may avoid resolving the choice-of-law question on a motion to dismiss. *E.g.*, *Gaetano Assocs. Ltd. v. Artee Collections, Inc.*, 2006 WL 330322, at *4 (S.D.N.Y. Feb. 14, 2006) (denying motion to dismiss unfair competition claim despite failure to identify applicable state law because the "Lanham Act claim is sustained, and the scope of discovery will not be greatly affected by the existence of state common law claims").

Caraway also argues that, assuming New York law applies, common-law unfair competition is limited to "palming off" and "misappropriation," and the conduct alleged in the Complaint does not qualify. Mem. at 24-25. But in New York, misappropriation includes "the intangible but real relationship existing between a merchant and [its] usual customers." *Cnty. Waste & Recycling Serv., Inc. v. Twin Bridges Waste & Recycling, LLC*, 150 N.Y.S.3d 893, *8 (N.Y. Sup. Ct. Albany Cnty. 2021). Plaintiffs thus can, and do, establish misappropriation by "showing that defendants . . . deliberately posted false statements critical of the plaintiff's services." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016). And here, Plaintiffs allege that Caraway knowingly disseminated false claims about the safety of their products to gain a competitive advantage—appropriating Plaintiffs' customers through deception rather than fair competition. Compl. ¶¶ 14, 114–15.

23

Caraway argues that a "disparaging marketing campaign" cannot support an unfair competition claim under New York law. Mem. at 24–25. But that is contrary to New York common law, and Caraway's federal cases do not stand for any such proposition. *See Formulated Sols., LLC v. CKD, Inc.*, 2005 WL 2413506, at *4 n.2 (E.D.N.Y. Sept. 29, 2005) (interpreting unclearly-pled causes of action that "mention 'unfair competition'" to be claims for trade libel, but later "[a]ssuming that plaintiffs raised a claim of unfair competition by disparagement in the first cause of action"); *N. Am. Olive Oil Ass'n*, 457 F. Supp. 3d at 228–29 (dismissing misappropriation-based unfair competition claim because plaintiff "does not allege that it enjoyed specific renown in New York, or that it possessed goodwill that Defendants misappropriated."); *Solmetex, LLC v. Dental Recycling of N. Am., Inc.*, 2017 WL 2840282, at *4 (S.D.N.Y. June 26, 2017) (plaintiff merely claimed "an attempt to misappropriate" rather than "actual misappropriation").

Here, Caraway's campaign affirmatively deceives consumers about an entire category of products, "convincing them that the only way to ensure their safety is to buy non-PTFE cookware and bakeware from Caraway." Compl. ¶ 74. This is consumer deception resulting in trade diversion—the very conduct unfair competition is designed to address. *Romeo & Juliette*, 2016 WL 815205, at *8. And the Complaint specifically alleges that Caraway acted in bad faith, continuing its campaign even after the NAD found its claims unsubstantiated and Caraway agreed to discontinue the offending advertisements. Compl. ¶¶ 115, 13. That is more than sufficient to state an unfair competition claim.

## IV.    PLAINTIFFS HAVE STATED A CLAIM FOR COMMON LAW TRADE LIBEL

Caraway's arguments for dismissal of Plaintiffs' trade libel claim fail, too. *First*, it strains credulity for Caraway to argue that its advertising is not directed at Plaintiffs' products. Although Caraway does not name Plaintiffs by brand, its advertisements explicitly target all "traditional non-stick cookware" and "PTFE-coated" products of which Plaintiffs are the two largest sellers.

Compl. ¶¶ 19, 20, 39, 42-45; *see also id.* ¶ 118-20 (Caraway's statements about "the PTFE-coated cookware and bakeware sold by Plaintiffs" was "intended . . . to result in harm to the interests of Plaintiffs"). Libel claims, including trade libel and product disparagement, can proceed even when the plaintiff is not named, as long as the necessary implication of the false statement harms the plaintiff. *See Epiphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1253 (N.D. Cal. 2008) (statements that plaintiff's product was the "only" one with a certain capability "show a claim for disparagement by 'clear implication'" against unnamed competitor); *DeBlasio v. N. Shore Univ. Hosp.*, 213 A.D.2d 584, 584 (2d Dep't 1995) (affirming denial of motion to dismiss libel claim where plaintiff alleged the "persons reading [libelous statement] will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining").

Remarkably, Caraway cites no caselaw requiring that a libelous statement name the defendant directly, and cases it does offer are distinguishable. *See Procter & Gamble Co. v. Quality King Distribs.*, Inc., 974 F. Supp. 190, 194, 196 (E.D.N.Y. 1997) (dismissing trade libel counterclaim where advertisement merely "warned the public of the potentially harmful counterfeit shampoo" with no connection to defendant); *N. Am. Olive Oil Ass'n*, 457 F. Supp. 3d at 230-31 (statement about "numerous trade associations" was "too vague and nonspecific to plausibly allege that the average consumer/reader is aware of any olive oil trade association"); *Albion Eng'g Co v. Hartford Fire Ins. Co.*, 779 F. App'x 85, 88 (3d Cir. 2019) (false statements only concerned allegation that "[plaintiff] lied about [plaintiff's] products, not [defendant's]").

*Second*, Caraway's insistence that Plaintiffs identify, at the pleading stage, a list of every one of Plaintiffs' customers who were affected by Caraway's false and misleading advertisements is overstated. Pecuniary loss can be established where "the loss has resulted from the conduct of a number of persons whom it is impossible to identify." Restatement (Second) of Torts, § 633(2)(b).

Courts in this district, applying New York law, have also held that "a plaintiff need not plead specific damages if the nature of the plaintiff's business makes it difficult, if not impossible, to identify which customers have been lost." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *6 (S.D.N.Y. Sept. 23, 2014) (denying motion to dismiss even though plaintiff did not allege "how much money it lost or the number of customers that were diverted from its website").[7] This is precisely the case here. When Plaintiffs' would-be customers decide not to buy Plaintiffs' products because of Caraway's false advertising, Plaintiffs have no way of identifying them before discovery has occurred—but this does not erase Plaintiffs' harms from that advertising. Compl. ¶¶ 77–78, 121.

The cases Caraway relies upon are inapposite. *E.g.*, *Gucci*, 277 F. Supp. 2d at 277–78 (quoting requirement that special damages be "fully and accurately stated" from *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992), a summary judgment decision evaluating whether the plaintiff had adduced sufficient proof); *Cedar Communities*, 2026 WL 504820, at *3 (plaintiff "does not offer any facts showing that consumers rely on the allegedly misleading . . . statements" and "relies on its claims of injury through a speculative chain of events"). None of the cases presented a situation where the plaintiff adequately alleged widespread loss of customers across a broad market, but where the circumstances made it functionally impossible to name the specific customers it lost. *Cf. Romeo & Juliette*, 2014 WL 4723299, at *6.

---

[7] Other states likewise permit a plaintiff to proceed on a trade libel or product disparagement claim when they cannot name every lost customer because it would be impossible to do so given the diffuse and widespread nature of the false statements and the nature of the commerce at issue. *See, e.g., HipSaver, Inc. v. Kiel*, 537, 984 N.E.2d 755, 772 (Mass. 2013); *Raineri Const., LLC v. Taylor*, 63 F. Supp. 3d 1017, 1033 (E.D. Mo. 2014) *Teilhaber Mfg. Co. v. Unarco Materials Storage, a Div. of Unarco Indus., Inc.*, 791 P.2d 1164, 1168 (Colo. App. 1989).

*Third*, the Complaint adequately alleges that Caraway's statements induced customers not to purchase Plaintiffs' products. *See id.* (denying motion to dismiss where plaintiff pleaded that consumers who saw libelous statement would "conclude that plaintiff's services were substandard" and that "defendants' conduct resulted in 'lost sales and diminution of goodwill and business reputation'"). Caraway cites *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 609 (E.D.N.Y. 2021), and *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410-11 (S.D.N.Y. 2021), to argue that Plaintiffs must establish that Caraway's statements were "a substantial factor in inducing others not to conduct business with it." But those cases involved conclusory allegations without any alleged facts establishing how the plaintiff lost business. *See, e.g.*, *Soter Techs.*, 523 F. Supp. 3d at 411; *Eminah Props.*, 531 F. Supp. 3d at 608-09. Here, in contrast, the Complaint explains that Caraway's statements "embed[] themselves in the minds of consumers, convincing them that the only way to ensure their safety is to buy non-PTFE cookware and bakeware from Caraway," which induces customers not to purchase Plaintiffs' products. Compl. ¶¶ 74, 119. Accordingly, Caraway's arguments for dismissal of Plaintiffs' trade libel claim fail, too.

## V.    <u>PLAINTIFFS HAVE STATED A CLAIM FOR DECLARATORY JUDGMENT</u>

Finally, Caraway urges dismissal of Plaintiffs' declaratory judgment claim. Plaintiffs acknowledge that declaratory judgment is a remedy, not a standalone cause of action. But Count VII seeks a specific statutory remedy—a declaration that this is an "exceptional case" under 15 U.S.C. § 1117—entitling Plaintiffs to enhanced damages and attorneys' fees due to Caraway's willful misconduct. Compl. ¶ 124. To the extent the Court views this claim as duplicative, it should simply "construe[] that cause of action . . . as a request for declaratory relief in connection with Counts I and II of the Complaint" rather than dismiss it with prejudice. *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 474–75 (S.D.N.Y. 2021).

Dated: June 1, 2026
     Washington, D.C.

Respectfully submitted,

**MAYER BROWN LLP**


By:    */s/ Carmine R. Zarlenga*
       Carmine R. Zarlenga* (*Lead attorney*)
       Julyana C. Dawson*
       David B. Goldstein*
       1999 K Street, NW
       Washington, DC 20006
       Tel: (202) 263-3000
       Fax: (202) 263-3300
       czarlenga@mayerbrown.com
       jdawson@mayerbrown.com
       dgoldstein@mayerbrown.com

       Philip R. Recht*
       Daniel D. Queen
       Max W. Hirsch*
       333 S. Grand Ave 47th Floor
       Los Angeles, CA 90071
       Tel: (213) 229-9500
       precht@mayerbrown.com
       dqueen@mayerbrown.com
       mhirsch@mayerbrown.com

       *admitted *pro hac vice*

28

**<u>WORD COUNT CERTIFICATION</u>**

Pursuant to Local Civil Rule 7.1, I hereby certify that Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss contains 8,619 words, which complies with the word-count limitation of Local Civil Rule 7.1(c). This certification was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare this document.

Dated: New York, New York
        June 1, 2026

                                        */s/ Carmine R. Zarlenga*
                                        Carmine R. Zarlenga (*Lead attorney*)