**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Groupe SEB USA, Inc. and Meyer Corporation, U.S., | |
| *Plaintiffs*, | Civil Action No. 1:26-cv-01237-AS-SN |
| v. | Judge Arun Subramanian |
| | Magistrate Judge Sarah Netburn |
| Caraway Home, Inc. | |
| *Defendant*. | |

**STIPULATION AND [PROPOSED] ORDER ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY-STORED INFORMATION**

Plaintiffs Groupe SEB USA, Inc. and Meyer Corporation, U.S., and Defendant Caraway Home, Inc. (collectively, the "Parties") hereby stipulate and agree, by and through their undersigned counsel, that the following specifications shall govern discovery of all Documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned Action. The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

**I.      DEFINITIONS**

A.      "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

B.      "Custodian" means an individual who has administrative control, ownership, or custody of potentially relevant electronic data.

1

C.     "Document" shall have the same meaning as set forth in Federal Rule of Civil Procedure ("FRCP") 34(a)(1)(A) and, when used herein, refers to both ESI and hard copy documents.

D.     "Electronically Stored Information" ("ESI") shall have the same meaning as set forth in FRCP 34(a)(1)(A) and refers to computer-generated information or data of any kind (including, but not limited to, Email, structured and unstructured Data, and data compilations), stored in or on any medium from which information can be obtained, such as computers, cellular telephones, file servers, disks, tape or other real or virtualized devices or media.

E.     "Email" means an electronic means for sending, receiving, and managing communications via different structured data applications (email client software), including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the file(s) created or received by such means.

F.     "Instant Messages" means communications involving immediate correspondence between two or more users sent via a chat application that are maintained in the ordinary course of business.

G.     "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available. A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of documents subject to OCR, a file containing the text resulting from the OCR.

H.     "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load

File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as identification of OCR or Extracted Text, should such data be available.

I.        "Media" means an object or device, including, but not limited to a disc, tape, computer, or other device on which data is or was stored.

J.        "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, and which describes the characteristics, origins, usage, or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

K.        "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image).

L.        "OCR" means optical character recognition technology that is capable of reading text-based or paper/hard copy documents and making such documents searchable using appropriate software.

M.        "Parties" collectively shall mean all named parties to the above-captioned Action, including any Party added or joined to any complaint filed in the above-captioned Action, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

N.        "AI" shall mean artificial intelligence or machine-learning technology, including Predictive Coding/Technology Assisted Review.

O.        "Predictive Coding/Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-

3

learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of the litigation regarding the responsiveness of a subset of documents and that extrapolate those judgments to the remaining document collection. For purposes of this Protocol, Predictive Coding/Technology Assisted Review is synonymous with computer-assisted review, computer-aided review, content-based advanced analytics, or other terms used to refer to search methodologies that rely on machine-based learning to identify responsive documents.

P.     "Production" includes any exchange of Documents or ESI between the Parties, whether voluntarily or in response to a formal or informal request.

Q.     "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI and includes strings of words and phrases joined by proximity and Boolean connectors.

R.     "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format ("TIFF") image is an example of a Static Image.

## II.     SCOPE

A.     **General.** Pursuant to FRCP 5(b)(2)(E), the Parties agree to serve written discovery electronically. The procedures and protocols outlined herein govern the Production of Documents and ESI by all Parties and shall be construed to secure the just, speedy, and inexpensive determination of this Action, consistent with FRCP 1 and the proportionality limitations of FRCP 26(b)(1). The Parties will take reasonable steps to comply with this agreed-upon Protocol. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party").

Except as specifically set forth herein, this Protocol does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Southern District of New York. Nothing in this ESI Protocol shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other privilege that may be applicable.

B.   **Limitations and Non-Waiver.** The Parties and their attorneys intend by this Protocol to make the mutual disclosures promised herein. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine. All Parties preserve their attorney-client privileges, work-product protection, and other privileges. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

C.   **Reservation of Rights.** For the avoidance of doubt, the inclusion of any platform, program, application, or software in this Protocol as an example does not create any independent obligation or commitment to preserve or collect ESI from such platform, program, application, or software. The Parties reserve all rights to object to any demand to collect or produce ESI from any or all of the examples listed in this Protocol, subject to the provisions of Section IV.

D.   **Modification by Agreement.** Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI.

Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from this Protocol must obtain leave of Court to do so unless all affected Parties otherwise consent in writing. Before seeking Court intervention, all affected Parties shall meet and confer in good faith regarding any modification.

E. **Modification by Court Order.** Consistent with their obligations under Local Rule 37.2 and any appropriate modifications, the Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good-faith effort, the Parties may seek Court intervention in accordance with the Court's orders, local rules, and procedures.

## III. PRESERVATION OF ESI

The Parties agree to take reasonable and proportionate steps to preserve unique relevant Documents and ESI, in accordance with their obligations under applicable law.  By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.  The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, categories of information that have been or should be preserved, and whether any sources may be preserved in place rather than collected.  In light of the claims in this Action, preservation shall include, but is not limited to, to the extent relevant and proportionate, ESI concerning the challenged advertisements and marketing claims, PFAS/PTFE and "forever chemicals" messaging, claim substantiation, NAD proceedings and compliance efforts, consumer perception, sales and profits, corrective advertising, and alleged reputational harm.

Nothing in this Order is intended to require any Party to violate the requirements of any foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The Parties agree to advise the requesting Party if they believe that any custodian or data source in a discovery request is subject to such laws, and the Parties agree thereafter to meet and confer in an effort to resolve the issue.

## IV.     IDENTIFICATION OF RESPONSIVE ESI

The Parties shall meet and confer in good faith regarding the methods to be used and locations identified to search Documents and ESI for potentially responsive documents or filter out Documents and ESI that are not subject to discovery, and such meet and confers will include disclosures necessary for the Requesting Party to understand and assess the sufficiency and proportionality of the proposed search or filtering methodology, such as the nature of and processes of the search technology employed, the custodians and data sources and types to which it will and will not be applied, date ranges that may be used to filter Documents, file types subject to or excluded from the methodology, and whether different search methodologies will be applied to different types or sources of data.

The Producing Party shall retain the sole right and responsibility to manage and control searches of its data files, including the right to propose revisions to search-term methods or advanced-technology procedures in order to make them more accurate and/or cost-effective and will disclose those proposed search methods and any revisions prior to implementation. Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery.

A Producing Party need not collect or provide discovery from ESI sources that the Producing Party identifies as not reasonably accessible because of undue burden or cost, absent agreement of the Parties or further order of the Court. The Parties will identify and meet and confer over those sources of information that they propose should not be preserved or collected, such as the following:

1.      Backup data that is substantially duplicative of data that is more accessible elsewhere (utilized for disaster recovery purposes);

2.      Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

3.      Obsolete legacy data (i.e., information stored in an obsolete format);

4.      Residual, fragmented, damaged, or other data only accessible by forensics;

5.      Information stored in unallocated space in file systems on magnetic media;

6.      Online access data such as temporary internet files, history, cache, cookies, and the like;

7.      Server, system, or network logs; and

8.      Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment by the Party.

If any Producing Party identifies additional sources of not-reasonably-accessible ESI beyond those listed above that are believed to contain responsive information, it will notify the Requesting Party of that fact and those sources. Nothing in this paragraph shall relieve a Party of its obligation to produce otherwise readily accessible, responsive ESI that the Party knows to exist.

For the avoidance of doubt, sources of ESI shall not be excluded as inaccessible solely because such ESI resides in SaaS, social media, advertising, or other third-party platforms, if they are readily exportable or otherwise reasonably accessible to the Producing Party.

       i.        Search Terms:

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall meet and confer to provide reasonable assurances to the Requesting Party that the Producing Party's search terms and methodology used to apply them are reasonably calculated to identify responsive Documents and ESI. Prior to or during such meet and confer, the Producing Party shall make the disclosures identified above, including proposed custodians, data sources, date ranges, and search terms or categories.

If, after disclosure of the Producing Party's proposed search method, search parameters, and search terms, and prior to the conduct of any searches, and after a reasonable meet and confer process, a Requesting Party believes in good faith that the Producing Party's proposals regarding search, retrieval and production would result in deficiencies in production, the Requesting Party may make prompt requests for different or additional search methods, parameters, or search terms, but such requests shall only be made after the Parties have met and conferred as to the alleged deficiencies identified by the Requesting Party. If the Parties cannot resolve their disagreements regarding the above search term methodologies, they shall promptly bring the dispute to the Court for resolution.

Before materially expanding any search-term set, the Requesting Party shall identify the perceived deficiency and the Producing Party shall, where reasonably practicable, provide information sufficient to evaluate proportionality, which may include hit counts, unique hit counts, targeted sampling, or other validation information that does not reveal privileged or work-product

protected material.  The Parties shall meet and confer in good faith to refine search terms that return excessive nonresponsive material or appear to miss material categories of relevant information.

ii.    AI Responsiveness Review:

The use of search terms will not preclude the Parties' use of other reasonable review tools, including Technology Assisted Review ("TAR"), large-language models (LLMs), deep-learning classifiers, embedding-based similarity analysis, predictive coding, clustering, concept searching, generative summarization models or other analytics. A Party intending to use AI responsiveness review shall notify the opposing Party before use and meet and confer in good faith regarding a protocol proportionate to the needs of the case, including validation or quality-control information sufficient to evaluate the reasonableness of the process without requiring disclosure of privileged, work-product-protected, or nonresponsive documents. The fact that a Document or ESI is responsive to a search term or identified as potentially responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, or is protected from disclosure by applicable privilege or work-product protection.

The Parties will not seek Court intervention on discovery matters without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

## V.    PRODUCTION PROTOCOLS

A.    **Production Format.** Parties must produce all ESI as Standard Image files with extracted text or Native Format files with extracted text. If any Party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

B.      **Standard Image.** Except as specified in Section V.C, all ESI capable of ready and accurate rendering as images shall be produced as TIFF/JPG images with accompanying document-level extracted text files (if applicable) in accordance with the specifications for the production of ESI, which are attached as "Appendix A." Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a Document in its Native Format, shall also be imaged so that such content is viewable on the image file. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

The Producing Party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from standard image productions, producing such ESI as it is maintained, with any formulas, redlines, comments, links, and other metadata intact, with the exception of privileged or redacted documents and other information. If a Party believes that ESI produced in Standard Image format is not accurately or completely rendered, or otherwise is needed in native format, the Parties agree to engage in discussion regarding production of discrete documents in native format.

C.      **Native Format**. All spreadsheets (*i.e.*, .XLS, .XLSX, .CSV, or similar), presentation files maintained in Microsoft PowerPoint format (.PPT, .PPTX, etc.), digital images, audio/video files, and other file types, including ESI files in MS Excel, QuickBooks, multimedia, and any format that is not reasonably feasible for imaging, shall be produced as-is, in native format with accompanying document-level extracted text files (if applicable) in accordance with the specifications for the production of ESI, which are attached as "Appendix A." ESI produced in native format must contain the Bates number in the file name. Additionally, native files should be

accompanied by an image placeholder that contains the language, "File Produced Natively," the Bates number, and confidentiality designation. The Producing Party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native productions, producing such native ESI as it is maintained, with any formulas, redlines, comments, links, and other metadata intact.

D.     **Load Files.** Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

1.     Field Separator  (ASCII 020)

2.     Text Qualifier þ (ASCII 254)

3.     Substitute Carriage Return or New Line in data ® (ASCII 174)

4.     Multi-value separator ; (ASCII 059).

All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the CC field contains semicolons between email addresses, the Tag field should also contain semicolons. Concordance-compatible image and data load files should be provided in a "Data" folder. Upon reasonable request, the Parties shall exchange sample load files or sample production sets to confirm technical compatibility before substantial productions begin. If this exchange occurs, the Requesting Party will have fourteen (14) days to respond with load file change requests. Nothing in this Protocol will limit the Parties from discussing load file changes throughout the course of the Action.

E.     **OCR**. Documents shall also be produced with the associated OCR, and with an image cross-reference file and a load file. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the

OCR process. To the extent that a document is redacted, the text files should not contain the text of the redacted portions. OCR should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. All text files shall be provided as a single document level text file for each item, not one text file per page. Text files should be provided in a "Text" folder.

F.      **Redacted Documents**. Any Documents redacted pursuant to Section V.V, *infra*, may be produced as either black and white Group IV single-page TIFF (300 DPI, 1 bit) or, if color is important to the Document, single-page color JPEGs. Redacted Documents will be produced with OCR text instead of extracted text.

G.      **Color Documents**. Except for PowerPoint and other Documents produced natively, Documents containing color need not be produced in color in the first instance. However, if good cause exists for the Requesting Party to request production of certain Documents in color, the Requesting Party may request production of such Documents in color by providing (1) a list of the Bates numbers of Documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

H.      **Hard Copy Documents**. The Parties shall scan hard copy Documents and produce them in an electronic format in keeping with the above-outlined requirements. The Parties have no duty to populate any of the agreed-upon metadata fields with respect to hard copy Documents that have no preexisting metadata. For hard copy Documents, only the following fields will be provided: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, PGCOUNT, PRODVOLUME, CONFIDENTIAL, REDACTED, and TEXT FILE.

I.    **Parent-Child Relationships**. The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any portions of the Email or attachments that must be withheld or redacted on the basis of privilege or work-product protection. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent Document shall be preserved. The child Document should be consecutively produced immediately after the parent Document. Each Document shall be produced with the production number for the first and last page of that Document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the Document family.

J.    **Modern Attachments**. To the extent technically feasible and proportionate to the needs of the case, electronically stored information ("ESI") that is linked to or associated with another document or communication through a modern collaboration platform (including, but not limited to, cloud-based document platforms, messaging platforms, and productivity applications) shall be collected, reviewed, and produced together with the parent document or communication in a manner that preserves the relationship between the parent item and the associated content. Such linked or embedded content (commonly referred to as "modern attachments") shall be treated as attachments for purposes of collection and production and shall not be omitted solely because the content is stored separately or referenced by hyperlink rather than physically attached.

K.    **Deduplication**. The Parties will use reasonable efforts to globally deduplicate Documents as necessary prior to producing them, meaning that exact duplicates of a Document (*i.e.*, all duplicates having the same MD5, SHA-1, or other agreed hash value as the original Document) will be removed to the extent reasonably possible by the Producing Party from the entire population of Documents to be produced. If a Producing Party globally deduplicates, it shall populate the All

Custodians field and, to the extent reasonably available, duplicate custodian and duplicate file-path information. However, Documents that are exact duplicates but are included in different families (*i.e.*, attached to different parents) will be produced with their respective family members to the extent these Documents are responsive and not protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection.

L.    **Email Threading**. The Parties may use email threading to reduce the overall amount of ESI and Documents produced by avoiding unnecessary production of duplicative emails. Threading identifies "inclusive" and "non-inclusive" emails. The text and attachments of a "non-inclusive" email are fully contained in an "inclusive" email. All "inclusive" emails and attachments will be produced to the extent they are responsive and not protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection. If a Producing Party uses email threading to suppress non-inclusive emails, it shall preserve thread information and provide the EmailThreadFamilyID metadata field if reasonably available.

M.    **Near-Deduplication.** The Parties may use near-deduplication or similarity analytics for review prioritization, quality control, and production efficiency. Near-duplicate documents shall not be suppressed from production solely because a similar document is produced unless the Parties agree in writing or the Court so orders.

N.    **Databases**. For structured data, including Microsoft Access or other database software, the Parties shall meet and confer regarding the most reasonable and usable form of production, which may include existing reports, targeted exports, query results, reasonably usable flat files, or native database files where necessary and proportionate. If the Producing Party objects to the requested form, the Parties shall undertake reasonable efforts and, if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production.

Where a Party produces Microsoft Access or other database software files only in native format, the Producing Party shall provide a corresponding image (TIFF) placeholder that contains the language, "File Produced Natively," the Bates number, and confidentiality designation of the file.

O.      **Metadata Fields**. The Parties must produce metadata for each of the fields identified in the specifications for the production of ESI, which are attached as "Appendix A," to the extent such metadata exists or is reasonably extractable. To the extent that Metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any Party to extract, capture, collect, or produce such data except for those fields marked for Hard Copy Documents in Appendix A; provided, however, that where such Metadata is not produced on such grounds, the Producing Party shall disclose which fields it will not produce. If Metadata is redacted or withheld, the Producing Party will so inform the Requesting Party and record the redaction on any privilege log prepared by the Producing Party; redacted Metadata shall be preserved.

P.      **Track Changes and Comments**. To the extent that a Document or ESI contains tracked changes or comments, the Document or ESI should be imaged showing tracked changes and comments using standard functionality available from the software used to facilitate the Producing Party's review and production of Documents and ESI in this Action.

Q.      **Foreign Language**. Foreign language text files and Metadata should be delivered with the correct encoding to enable the preservation of the documents' original language. Production in the original language satisfies a party's obligation, with translations provided only on specific request and at the requesting party's cost.

R.      **Embedded Documents**. Embedded files in responsive Documents shall be extracted during processing and produced as separate Documents, to the extent practicable given

the application used. To the extent the Producing Party becomes aware in the ordinary course of discovery that extracted Documents cannot be produced, the Producing Party will notify the Requesting Party of the types of files and Custodian for which such extracted Documents cannot be produced. The Bates Number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A.

S.      **No Obligation to Convert Third–Party Subpoena Productions**. The Parties agree that any document production received from a third party in response to a subpoena shall be produced in the format in which it was received.

T.      **Encrypted Data**. To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data under separate cover.

U.      **Zero-Byte Files.** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the Requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the Requesting Party may request that the Producing Party produce the zero-byte file. The Requesting Party may provide a Bates number to the Producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

V.      **Redaction**. The Parties reserve the right to remove or redact (so long as the removing or redacting Party provides notice to the receiving Party of such removal and redaction and clear indication of such redaction in the document(s) containing the redaction) information from documents and files. The following shall be information presumptively entitled to redaction prior to production ("Permissible Redactions"): Social Security numbers (last four digits to remain

unredacted), bank account numbers (last four digits to remain unredacted), personal health information, dates of birth, home addresses, other personally identifiable information not material to any claim or defense, information protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection, and any other information as necessary to comply with privacy rights that are guaranteed by the Constitution of the State of New York, the United States Constitution, the Code of Federal Regulations, the Health Insurance Portability and Accountability Act of 1996, and other applicable laws and regulations. *See, e.g.*, 21 C.F.R. §§ 20.111, 20.63, and 314.80; 45 C.F.R. §§ 160 and 164; the General Data Protection Regulation (EU) 2016/679 (GDPR). The Parties shall confer regarding disagreements over any such redactions; in the event that the Parties are unable to resolve disputes over redactions, the Court shall resolve such dispute, with the Party making the redaction bearing the burden of establishing that the redaction is appropriate.

W. **Method of Transfer**. The Parties agree that documents produced will be made available via secure file transfer.

## VI. PRIVILEGE LOG

A. **Privilege Logs**. Initial Privilege Logs shall be metadata-based and, absent agreement of the Parties, shall include a short topic, category, or privilege-basis field sufficient to permit assessment of the privilege or protection asserted without revealing privileged or protected information. The log shall contain the following objective metadata to the extent available (as applicable to the Document types as shown in Appendix A):

1. A unique privilege log identifier that makes clear the familial relationship of Documents, i.e., parent/child.

2. BegDoc (if produced)

3.      EndDoc (if produced)

4.      BegAttach (if produced)

5.      EndAttach (if produced)

6.      Custodian

7.      AllCustodian (if applicable)

8.      FileName

9.      EmailSubject

10.      Author

11.      From

12.      To

13.      CC

14.      BCC

15.      DateSent

16.      DateReceived

17.      DateCreated

18.      DateLastModified

19.      Privilege or protection asserted (e.g., attorney-client, work product, common interest, or other applicable protection)

20.      Topic, category, or privilege basis sufficient to assess the claim without revealing privileged or protected information

B.      For email threads, notwithstanding Section V.L, the Producing Party may log only the most inclusive withheld Email in a wholly privileged thread, provided that the log entry identifies that it represents a thread and the Producing Party preserves lesser-included Emails. If the withheld

lesser-included Email is part of a thread that includes non-privileged and non-protected Emails, the Producing Party shall produce a redacted version of that thread where reasonably practicable.

C.      With respect to the "EmailSubject" and "FileName" fields, the Producing Party may substitute a description of the Document where the contents of these fields may reveal privileged or protected information. The Producing Party shall identify each instance in which it has modified the content of the "EmailSubject" or "FileName" field (*e.g.*, "[Metadata redacted/altered for privilege]").

D.      Should a Receiving Party, in good faith, have reason to believe a particular entry on a privilege log is responsive and does not reflect privileged information, the Receiving Party may request additional information, and the Producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege in compliance with FRCP 26(b)(5). The Parties shall meet and confer before seeking Court intervention concerning any privilege log challenge.

E.      In addition to the fields listed in Paragraph VI.A, the Producing Party shall (i) indicate in its privilege log which person(s) mentioned in the fields or otherwise related to the Document are attorneys through the use of an asterisk (*), and (ii) produce a key showing the firm name(s) and domain name(s) for the Producing Party's outside counsel, and, for all attorneys other than the Producing Party's outside counsel, showing the attorneys' job title(s) or role(s), to the extent reasonably available.

F.      To the extent the fields listed in Paragraph VI.A cannot be populated with objective metadata—including in the case of hard copy Documents—the Producing Party shall complete the fields manually to the extent the required information is reasonably available on the face of the Document.

G.    The following documents presumptively need not be included on a Privilege Log:

1.    Communications exclusively between a Party and its outside counsel regarding this Action dated after the commencement of this Action;

2.    Work product created by outside counsel, or by an agent of outside counsel other than a Party, regarding this Action and created after commencement of this Action;

3.    Communications after the commencement of this Action exclusively among a Party, in-house litigation counsel, outside counsel, and litigation-support vendors or consultants retained by counsel regarding this Action.

4.    Documents not responsive to the Requesting Party's substantive Document requests (as modified by the Producing Party's responses and objections to such requests).

H.    **Federal Rule of Evidence 502(d).** Pursuant to Federal Rule of Evidence 502(d), the disclosure of privileged or work-product-protected information in connection with this Action, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection in this Action or in any other federal or state proceeding. Upon notification by the disclosing party that privileged or protected material has been produced, the receiving party shall promptly return, sequester, or destroy the specified material and any copies, and shall not use or disclose the material pending resolution of any dispute over the privilege or protection claim. The disclosing party's right to challenge the privilege or protection asserted is preserved.

## VII.    THIRD PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third parties

produce Documents in accordance with the specifications set forth herein. The Issuing Party shall timely notify other Parties when it receives non-party productions and shall promptly provide copies of such productions to the other Parties in the format in which they were received from the third party. If a non-party production is produced in its native format, the Parties shall promptly meet and confer regarding whether conversion, load-file creation, metadata supplementation, or targeted follow-up requests are reasonably necessary and proportionate. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**STIPULATED AND AGREED BY THE PARTIES:**

Dated: August 12, 2026

*/s/ Carmine R. Zarlenga*
Carmine R. Zarlenga* (Lead Trial Counsel)
Catherine Medvene
Julyana C. Dawson*
David B. Goldstein*
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3000
Fax: (202) 263-3300
czarlenga@mayerbrown.com
cmedvene@mayerbrown.com
jdawson@mayerbrown.com
dgoldstein@mayerbrown.com

Philip R. Recht*
Daniel D. Queen
Max W. Hirsch*
MAYER BROWN LLP
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
Tel: (213) 229-9500
precht@mayerbrown.com
dqueen@mayerbrown.com
mhirsch@mayerbrown.com

* admitted *pro hac vice*

*Attorneys for Plaintiffs*

Dated: August 12, 2026

*/s/ Michael C. Lynch*
Michael C. Lynch (Lead Trial Counsel)
Damon W. Suden
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
mlynch@kelleydrye.com
dsuden@kelleydrye.com

John E. Villafranco
Melissa E. Byroade
KELLEY DRYE & WARREN LLP
670 Maine Avenue SW
Suite 600
Washington, DC 20024
jvillafranco@kelleydrye.com
mbyroade@kelleydrye.com

Andrew David Bochner
BOCHNER PLLC
1040 Avenue of the Americas
Suite 15A
New York, NY 10018
Tel: (212) 930-8229
andrew@bochner.law

Robert A. Bilott
TAFT STETTINIUS & HOLLISTER LLP
50 E. RiverCenter Blvd.
Suite 850
Covington, KY 40111-1683
Tel: 859-331-2838
Fax: 513-381-6613
bilott@taftlaw.com

William James Jackson
JACKSON GILMOUR & DOBBS, PC
515 Post Oak Blvd., Suite 900
Houston, TX 77027
Tel: (713) 355-5050

23

Fax: (713) 355-5001
Email: bjackson@jgdpc.com

*Attorneys for Defendant*

**IT IS SO ORDERED.**

Dated: _____          _____

ARUN SUBRAMANIAN, U.S.D.J.

## APPENDIX A

## SPECIFICATIONS FOR THE PRODUCTION OF ESI

**Production Folders**

Production data should be organized in the folders listed below. Load files should be in the root folder of the production. There should be no more than 1,000 files per subfolder.

- IMAGES
- NATIVES
- TEXT

**Required Metadata and Database Fields**

- Metadata load file should be encoded in Unicode and provided in Concordance delimiters and format (.DAT):

| Value | Character | ASCII Number |
|-------|-----------|--------------|
| Column | ¶ | 20 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value (Do not follow with a space) | ; | 59 |
| Nested Value | \ | 92 |

- The first row of each metadata load file should contain the field names requested in the attached table or as specified in the ESI Protocol. **All requested fields should be present in the metadata load file regardless of whether data exists**. Field order must remain consistent in subsequent productions.
- Date format should be MM/DD/YYYY.
- All attachments should sequentially follow the parent document/email.

**Images**

- Single-Page images should be provided with an Opticon Image load file (.OPT).
- Format should be Black-and-white Group IV Single-Page TIFFs (300 DPI, 1 bit).
- If color images are required,[1] they must be provided in single-page, 300 DPI, minimum quality level of 75, 24-bit color images in JPEG format.
- TIFF/JPG images should be provided for all documents, and should show all information visible using native software (e.g., images of email messages should include the BCC and Attachments lines).

---

[1] If a producing party may rely on a color version of a document it produces, the color version will be provided. In addition, a receiving party may request a color replacement of an image when the loss of color detracts from the usability or limits the ability to interpret information.

- When a file is provided natively, a slip sheet must be supplied in the appropriate IMAGES folder and must contain BEGBATES, Confidentiality Designation, and "File Produced Natively."
- Image file names should match the page identifier for that specific image and end with the appropriate extension.
- File names cannot have embedded spaces, commas, ampersands, slashes, backslashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention (, & \ / # + % ! : * ? " < > | ~ @ ^).

**Native Documents**

Native file names should be named for the BEGBATES entry for that specific record.

**Text**

- Text should be provided for each file in separate text file (.txt) with document level text and a relative link to the file in the DAT load file. Extracted text or OCR text should not be contained directly within the DAT file.
- Text files should be named for the BEGBATES entry for that specific record.
- All records should have a text file even if the file has no text.
- All text should be processed and delivered in Unicode. If any other text encoding is present in the deliverable, please indicate that in separate communication. Text files for redacted documents should be the OCR text of the document as redacted.

The following metadata fields shall be produced if reasonably available. The Parties understand that they are under no obligation to manually compile or otherwise create the content described in the listed fields for Email and non-Email ESI. For scanned hard copy Documents, only the following accompanying metadata fields need to be produced: BegBates, EndBates, BegAttach, EndAttach, Custodian, PgCount, ProdVolume, Confidential, Redacted, and Text Link.

| Field Name | Field Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| BegBates | Beginning Bates number | Y | Y | Y |
| EndBates | Ending Bates number | Y | Y | Y |
| BegAttach | Beginning Bates number of the first document in an attachment range | Y | Y | Y |
| EndAttach | Ending Bates number of the last document in an attachment range | Y | Y | Y |
| Custodian | Name of the primary custodian the file was sourced from; this field is populated only for the "primary" custodian. | Y | Y | Y |
| All Custodians | Name(s) of any custodians of any deduplicated version(s) of the document. | Y | Y | |

| | | | | |
|---|---|---|---|---|
| FileName | Original file name | Y | Y | |
| FileExt | Native File extension | Y | Y | |
| LogicalPath | The directory structure of the original file(s) | Y | Y | |
| PgCount | Number of pages of a document | Y | Y | Y |
| EmailSubject | Subject of Email | Y | Y | |
| Author | Any value populated in the Author field of the Document properties | | Y | |
| From | Email author | Y | Y | |
| To | Email recipients | Y | Y | |
| CC | Email copyees | Y | Y | |
| BCC | Email blind copyees | Y | Y | |
| Importance | Email importance flag | Y | Y | |
| Date Sent | Date sent | Y | Y | |
| Time Sent | Time sent | Y | Y | |
| Date Received | Date received (MM/DD/YYYY | Y | Y | |
| Time Received | Time received | Y | Y | |
| Date Created | Date created | | Y | |
| DateLastModified | Last modification date (MM/DD/YYYY | Y | Y | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of Email or electronic file | Y | Y | |
| NativeFile | Native File Link | Y | Y | |
| EmailThreadFamily ID (if Email threading is used by Producing Party) | Unique identifier from Email threading algorithm to denote Emails from a single thread and all attachments | Y | Y | |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | Y | Y | Y |
| Redacted | Descriptor for Documents that have been redacted (<yes> or <no>) | Y | Y | Y |
| Withheld Placeholder | To the extent a Document family member is fully withheld on the basis of privilege and other Documents in that family are produced, this field must be populated with a "Y" | Y | Y | |
| Privilege | Populated if privilege is being asserted | Y | Y | Y |
| Attachname | File name of attachment | Y | | |
| Title | Any value populated in the Title field of the Document properties | | Y | |
| Subject | Any value populated in the Subject field of the Document properties | | Y | |
| LastEditedBy | Any value populated in the Last Edited By or Last Modified By field of the Document properties | | Y | |
| ProdVolume | Name of an export volume | Y | Y | Y |

| RecordType | Indicates type of ESI ("E-Mail", "E-Mail Attachment", "E-Doc", etc.) | Y | Y | |
| FileSize | Size in bytes of the native file | Y | Y | |