MAYER | BROWN

Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
United States of America

T: +1 202 263 3000
F: +1 202 263 3300

mayerbrown.com

**Carmine R. Zarlenga**
Partner
T: +1 202 263 3227
CZarlenga@mayerbrown.com

September 30, 2026

BY ECF

Hon. Arun Subramanian
U.S. District Court for the Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

**Re:** ***Groupe SEB USA, Inc., et al. v. Caraway Home, Inc.,***
***Case No. 1:26-cv-1237*** **(S.D.N.Y.)**

Dear Judge Subramanian:

Plaintiffs Groupe SEB USA, Inc. ("SEB") and Meyer Corporation, U.S. ("Meyer") respectfully oppose Caraway Home, Inc.'s ("Caraway") September 28, 2026 letter-motion (ECF No. 52) to compel production of documents concerning alleged environmental risks of PTFE manufacturing under RFP Nos. 15, 47 (SEB), and 48 (Meyer). The motion should be denied because the requested discovery is irrelevant to any claim or defense in this action, unsupported by the cited case law, and disproportionate to the needs of this case.

## I. This Case Concerns Consumer Health and Safety, Not the Environment

Plaintiffs' Complaint alleges that Caraway's advertisements falsely state that PTFE-coated cookware is "toxic" and causes health issues *when consumers use those products* for cooking and baking. Compl. ¶¶ 42–62. Thus, *every* challenged advertisement concerns consumer exposure during household use: PTFE-coated cookware will "fill the air in your home with harmful, toxic fumes" (*id.* ¶ 43); is "harmful to your family's health" (*id.* ¶ 44); "harmful to pets and humans" (*id.* ¶ 45); contains "toxic chemicals" that "leach into your food" (¶ 49); and causes "cancer or respiratory issues" (¶ 59). As one Caraway ad succinctly explains, "it's about the very air you breathe *in your kitchen*." *Id.* ¶ 7 (emphasis added).

The challenged advertising does *not* concern the environmental footprint of industrial manufacturing, and *none* of the challenged advertisements refer to the "environment" or the product manufacturing process.[1] Likewise, in this action, Plaintiffs do not purport to prevent Caraway from making claims about the environmental effects of manufacturing PTFE-coated cookware. *See, e.g.*, *id.* at Prayer for Relief ¶¶ 4–5 (seeking to enjoin statements that products "release harmful toxins and chemicals into the air and food when heated"). Nevertheless, Caraway's letter selectively quotes portions of the Complaint using the word "toxic" to suggest

[1] The word "environment" appears only twice in the entire Complaint, both in non-operative quotations. *See* Compl. ¶ 5 (quoting advocates who call PFAS durable "in their environments"—a reference to chemical persistence, not environmental harm); *id.* ¶ 67 (quoting a 2012 NAD ruling between different parties that encompassed both environmental and non-environmental claims).

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England & Wales), Mayer Brown Hong Kong LLP (a Hong Kong limited liability partnership) and Tauil & Chequer Advogados (a Brazilian law partnership).

that this is a case about the environment, not an advertisement campaign attacking a category of products as unsafe to consumers who purchase those products.

Caraway's attempt to recast this litigation as an environmental dispute only confirms the weakness of its position. To avoid the consequences of its own voluntary choices—participating in NAD proceedings that found its advertising unsubstantiated, accepting those findings, and pledging to discontinue the challenged advertisements—Caraway now strains to misconstrue its own ads so that it can erect straw men to knock down. But the pleadings are clear: every allegation, every challenged advertisement, and the Prayer for Relief concern consumer health and safety during ordinary product use. The environment is not in this case.

## II. Environmental Manufacturing Discovery Is Legally Irrelevant Under Rule 26(b)(1)

Under Rule 26(b)(1), discovery must be "relevant to any party's claim or defense." Because every claim in this action targets false advertising about consumer safety (not the environmental footprint of PTFE manufacturing), Caraway's environmental discovery requests have no nexus to this case.

Caraway suggests that the documents could be relevant to the truth of Caraway's advertisements because consumers "understand the full range of ways that such chemicals can be harmful," including to the environment, such that Caraway's claims that PTFE-coated pans are "toxic" could be true. But Plaintiffs do not contend that the advertising at issue made statements about *environmental* toxicity, as opposed to *human health* toxicity—such that consumers could have understood the relevant advertisements to concern the former. *See, e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) (falsity for Lanham Act false advertisement claim requires "evaluating 'the message conveyed in full context'"). The cases Caraway cites do not support a different conclusion. In *Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021), the plaintiffs *affirmatively alleged* that the standalone use of the term "non-toxic" on labels implied the products "will not be harmful to people, common pets, *or the environment*." *Id.* at *4 (emphasis added). No comparable allegation exists here, where Plaintiffs are competitors challenging false comparative health advertising, not consumers alleging that a product label deceives consumers about a product's environmental effects. *Bush v. Rust-Oleum Corp.*, 2021 WL 24842 (N.D. Cal. Jan. 4, 2021), is even further afield: the products there were expressly marketed as "earth friendly," and the plaintiff specifically alleged environmental deception. *Id.* at *2. No Caraway advertisement referenced in the Complaint uses "earth friendly," "eco-friendly," or any comparable representation.

Caraway also suggests that the discovery could be "relevant to causation and damages" because consumers are aware of "well known" environmental incidents concerning PFAS. But Caraway merely speculates, without evidence, that customers made purchasing decisions based on environmental concerns rather than Caraway's pervasive fear-based health advertising. *See, e.g.*, *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition") (internal quotation marks omitted). More importantly, there is no reason why Caraway would need discovery into the broader environmental effects of Plaintiffs' products and manufacturing processes to determine *consumer perceptions* of the environmental effects from PFAS. Caraway's references to contamination at a DuPont facility in West Virginia and an AGC Chemicals site in the United Kingdom (ECF No. 52 at 2) only underscore the point. This litigation has nothing to do with what happened at a non-party's manufacturing facility decades ago long

before Caraway even existed. Even if those incidents affect consumer perceptions in the way Caraway suggests, discovery of Plaintiffs' own manufacturing processes and environmental impacts have no bearing on that issue.

Caraway's reliance on state PFAS legislation (ECF No. 52 at 1) is similarly misplaced. Caraway's apparent justification for citing such legislation is that *one* of the Caraway advertisements depicted in the Complaint includes a clause stating that "[s]tates are starting to ban PFAS." *See* Compl. ¶ 49. But that quotation omits the remainder of the sentence—"forever chemicals that *leach into your food from many non-stick pans*"—that Plaintiffs actually challenge in their Complaint. *Id.* (alleging that advertisements improperly state that chemicals "will 'leach into your food'"). Regardless, despite Caraway's gratuitous citation of anti-PFAS laws, legislative policy choices about environmental precaution are not a license for a fishing expedition into the environmental impacts of manufacturing practices.

Finally, Caraway's invocation of potential counterclaims based on Plaintiffs' allegedly false "eco-friendly" advertising fares no better: no counterclaims have been filed, and discovery predicated on unfiled claims is improper, particularly with a motion to dismiss still pending. *E.g.*, *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *2–4 (S.D.N.Y. May 23, 2016) (denying motion to compel discovery relevant to defendants' "likely defenses and counterclaims"). Caraway cannot bootstrap environmental discovery into this case through counterclaims it has not yet asserted, a truth defense disconnected from Plaintiffs' actual claims, or an alternative-causation theory that is based on speculation and would not require discovery of Plaintiffs in any event.

## III. The Requested Discovery Is Disproportionate

Even if Caraway's requested discovery had marginal relevance (which it does not), it would be grossly disproportionate under Rule 26(b)(1). The RFPs[2] sweep in decades of global manufacturing materials and scientific studies with no connection to the consumer-facing advertising at issue.[3] Plaintiffs have already agreed to produce substantial document categories directly relevant to the safety of their PTFE-coated cookware under RFP Nos. 13, 15–17, and 33—productions that address the actual issues in this case. *See* Exhibit 1.

## IV. Conclusion

For the foregoing reasons, the Court should deny Caraway's letter-motion (ECF No. 52). The requested discovery is irrelevant, unsupported by the cited authority, and disproportionate. Plaintiffs respectfully request that no conference be convened on this issue.

Respectfully submitted,

*/s/ Carmine R. Zarlenga*
Carmine R. Zarlenga
Lead Counsel for Plaintiffs

[2] The relevant RFPs have been reproduced as Exhibit 1 to Caraway's letter-motion. *See* (ECF No. 52-1 at 2).

[3] Caraway complains that Plaintiffs have not provided "hit reports" to show the precise scope of overbreadth (ECF No. 52 at 3); but as Caraway knows, the parties have not agreed on custodians, a necessary precursor to hit reports. Regardless, the RFPs are unduly burdensome on their face.